JENNIFER SHASKY CALVERY
Chief, Asset Forfeiture and
Money Laundering Section (AFMLS)
LINDA M. SAMUEL, Deputy Chief
DANIEL H. CLAMAN, Assistant Deputy Chief
WOO S. LEE, Trial Attorney
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263
Woo.Lee@usdoj.gov

ANDRÉ BIROTTE, JR.
United States Attorney
STEVEN R. WELK (Cal. Bar No. 149883)
Assistant United States Attorney
312 North Spring Street, 14th Floor
Los Angeles, California 90012
Telephone: (213) 894-6166
Steven.welk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CV 2: 11-3582-GW-SS |
| Plaintiff, | Hon. George H. Wu |
| vs. | UNITED STATES' OPPOSITION TO CLAIMANTS TEODORO NGUEMA OBIANG MANGUE'S AND SWEETWATER MALIBU, LLC'S MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT FOR FORFEITURE IN REM |
| ONE WHITE CRYSTAL-COVERED "BAD TOUR" GLOVE AND OTHER MICHAEL JACKSON MEMORABILIA; REAL PROPERTY LOCATED ON SWEETWATER MESA ROAD IN MALIBU, CALIFORNIA; ONE 2011 FERRARI 599 GTO, | |
| Defendants. | Hearing: April 12, 2012 (8:30 a.m.) |

## <u>Table of Contents</u>

**I.**     <u>**BACKGROUND**</u>……………………………………………….....1

        **A.** <u>**The Complaint Alleges Facts That Support Its Forfeiture Claims**</u>…………………………………………………..3

            **1.** <u>**The Complaint Describes Illegal Schemes Used by Nguema and the Inner Circle**</u>……………………………………...4

**II.**   <u>**LEGAL STANDARD ON A MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**</u>……………………………………...……...…..6

**III.**  <u>**ARGUMENT**</u> ………………………………………………8

     **A.** <u>**The Complaint Alleges Sufficient Facts Concerning the SUAs**</u>……………………………………..……….8

            **1.** <u>**The Complaint Alleges Sufficient Facts to Show Extortion**</u> …..8
            **2.** <u>**The Complaint Sufficiently Alleges Misappropriation, Theft or Embezzlement of Public Funds**</u> ……...……………………11

     **B.** <u>**The Government Alleges Sufficient Facts Demonstrating That Defendant Assets Were Involved in a Violation of 18 U.S.C. § 1957**</u> …………………………………..13
     **C.** <u>**The Government Sufficiently Alleges That the Defendant Assets Were Involved with a Violation Under 18 U.S.C. § 1956**</u>…………..14
     **D.** <u>**Claimants Other Stated Grounds for Dismissal Are Baseless**</u>……...16

            **1.**   <u>**Claimants Misunderstand the Knowledge Requirement**</u>…16
            **2.**   <u>**The Claimants' Demand That the Government Prove a Nexus Between Nguema's Criminal Conduct and the Defendant Assets is Incorrect and Not Supported By Law**</u> ……………………………………………18
            **3.**   <u>**Claimants' Use of External Evidence is Wholly Inappropriate**</u>…………………………...…………..24

        **IV.**    <u>**CONCLUSION**</u>…………………………………………25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Table of Authorities**

**Cases**

AE v. Cnty. of Tulare, 666 F.3d 631 (9th Cir. 2012)………………………………25

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009)………………………..…6

Bell Atlantic v. Twombly, 550 U.S. 544 (2007)………………………………..…6

Carrillo-Jaime v. Holder, 572 F.3d 747 (9th Cir. 2009)………………….............12

Evans v. U.S., 504 U.S. 255 (1992)…………………………………………...............9

Flying Food Gp. v. NLRB, 471 F.3d 178 (D.C. Cir. 2006) ………………...........20

Kourtis v. Cameron, 419 F.3d 989 (9th Cir. 2005) …………………………...23, 24

Nazir v. Cnty. of L.A., 2011 U.S. Dist. LEXIS 26820
(C.D. Cal. Mar. 2, 2011).........................……………………………………………7

Neubronner v. Milken, 6 F.3d 666 (9th Cir. 1993)………………………..…..7-8, 17

N.M. State Inv. Council v. Ernest & Young, 641 F.3d 1089 (9th Cir. 2011)……...6

In re Return of Seized Prop., 625 F.Supp. 2d 949 (C.D. Cal. 2009) …………….23

U.S.  v. 1982 Yukon Delta Houseboat, 774 F.2d 1432 (9th Cir. 1985)............20, 22

U.S. v. 2007 Custom Motorcycle, 2010 U.S. Dist. LEXIS 67891 (D. Ariz. Jul. 7,
2010)……………………………………………………………………………18

U.S. v. 2007 F-150 Pickup Truck, 2011 U.S. Dist. LEXIS 139986 (E.D. Cal. Dec.
6, 2011) ……………………………………………………….…………………20, 21

U.S. v. 5208 Los Francisco Way, 385 F.3d 1187 (9th Cir. 2004)……...………....19

U.S. v. $11,500, 2010 U.S. Dist. LEXIS 130421
(D. Or. Dec. 8, 2010)................................................................................18, 20-21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. v. $22,173, 716 F. Supp. 2d 245 (S.D.N.Y. 2010)…………………………..20

U.S. v. $22,173, 2010 U.S. Dist. LEXIS 33494 (S.D.N.Y. Apr. 5, 2010)…….....21

U.S. v. $22,474, 246 F.3d 1212 (9th Cir. 2001)……………………………..…..22

U.S. v. $30,670, 403 F.3d 1193 (11th Cir. 2001)……………………....……...22

U.S. v. $38,885, 2011 U.S. Dist. LEXIS 144477
(E. D. Cal. Dec. 15, 2011) ………………………………………………………..20

U.S. v. $40,000, 2009 U.S. Dist. LEXIS 115487
(N.D. Ill. Dec. 10, 2009) ……………………………………………………………22

U.S. v. $74,500, 2011 U.S. Dist. LEXIS 74375 (C. D. Cal. Jul. 11, 2011)………...7

U.S. v. $87,060, 23 F.3d 1352 (8th Cir. 1994) …………………………….......21

U.S. v. $97,667, 538 F.Supp.2d 1246 (C.D. Cal. 2007)………………...............18

U.S. v. $149,442.43, 965 F.2d 868 (10th 1992) …………..……………….21, 22

U.S. v. $184,416, 527 F. Supp. 2d 1103 (C.D. Cal. 2003)……………..……....17

U.S. v. $185,000, 455 F.Supp.2d 145 (E.D.N.Y. 2006) ……………………..…20

U.S. v. $223,178, 2008 U.S. Dist. LEXIS 37878
(C. D. Cal. Apr. 30, 2008)………………………………………………………..22

U.S. v. $242,484, 389 F.3d 1149 (11th Cir. 2004) ……………………….…...21

U.S. v. $1,700,000, 545 F.Supp. 2d 645 (E.D. Mich. 2008) ……………….…20

U.S. v. All Assets & Equip., 58 F.3d 1181 (7th Cir. 1995) …………….............22

U.S. v. All Funds on Deposit, 2007 U.S. Dist. LEXIS 52828 (S.D.N.Y. Jul. 16, 2007)……………………………………………………………………………19

U.S. v. All Funds and Prop., 661 F. Supp. 697 (S.D.N.Y. 1986)………....……..22

<u>U.S. v. All Funds in Credit Suisse</u>, 2005 U.S. Dist. LEXIS 44775 (C. D. Cal. Sep. 20, 2005)…………………………………………………………………6

<u>U.S. v. Approx. $1.67 million</u>, 513 F.3d 991 (9th Cir. 2008) ……………..20, 21

<u>U.S. v. Brown</u>, 186 F. 3d 661 (5th Cir. 1990)……………………...………..…14

<u>U.S. v. Bush</u>, 626 F.3d 527 (9th 2010)……………………………….……..…17

<u>U.S. v. Butler</u>, 102 F.3d 1191(11th Cir. 1997) ……………………………..…22

<u>U.S. v. Carrell</u>, 252 F.3d 1193 (11th Cir. 2001) ……………………..............22

<u>U.S. v. Christiansen</u>, 958 F.2d 285 (9th 1992)……….…………………….....11

<u>U.S. v. Cruzado-Laureano</u>, 404 F.3d 470 (1st Cir. 2005)…………….............15

<u>U.S. v. Jackson-Randolph</u>, 282 F.3d 369 (6th Cir. 2002) ……………….…...22

<u>U.S. v. Lazarenko</u>, 564 F.3d 1026 (9th Cir. 2009)…………………………….9

<u>U.S. v. Mobley</u>, 193 F.3d 492 (7th Cir. 1999)…. ……………………..……...22

<u>U.S. v. Mondragon</u>, 313 F.3d 862 (4th Cir 2002)…..…………….....7, 8, 11, 14, 18

<u>U.S. v. Nichols</u>, 416 F.3d 811 (8th Cir. 2005)………………………..……...15

<u>U.S. v. One 1993 Lexus LS 400</u>, 1993 U.S. Dist. LEXIS 13727 (N.D. Ill. Sep. 23, 1993) …………………………………………………………………..22, 23

<u>U.S. v. One GMC Yukon</u>, 2003 U.S. Dist. LEXIS 27082, at *6 (C.D. Cal. Dec. 4, 2003)………………………………………………………………..…6

<u>U.S. v Real Prop.</u>, 2011 U.S. Dist. LEXIS 69230 (E.D. Cal. Jun. 28, 2011)………………………………………………...19, 21

<u>U.S. v. Rogers</u>, 321 F.3d 1226 (9th Cir. 2003)…………………………....…13

<u>U.S. v. Rutgard</u>, 116 F.3d 1270 (9th Cir. 1997)………………………...…....17

<u>U.S. v. Santiago</u>, 227 F.3d 902 (7th Cir. 2000) ……………………………………..22

<u>U.S. v. Saunders</u>, 929 F.2d 1466, 1472 (10th Cir. 1991)…………………………15

<u>U.S. v. Stone</u>, 2006 U.S. App. LEXIS 31795
(9th. Cir. Dec. 22, 2006)...............................................................................11

<u>U.S. v. Thomas</u>, 913 F.2d 1111 (9th Cir. 1990) ……………………………….........22

<u>U.S. v. Two Real Props</u>, 2009 U.S. Dist. LEXIS 89702 (S.D. W. Va. Sept. 29, 2009)……………………………………………………………………...22

<u>U.S. v. Two Parcels of Real Property</u>, 92 F.3d 1123 (11th Cir. 1996)........21, 22, 23

<u>U.S. v. U.S. Currency</u>, 2006 U.S. Dist. LEXIS 73527 (E.D. Wis. Sep. 27, 2006).22

<u>Yamaguchi v. U.S. Dep't of the Air Force</u>, 109 F.3d 1475 (9th 1997)…………….6

**<u>Statutes</u>**

18 U.S.C. § 981(a)(1)(A)………………………………………………....……*passim*

18 U.S.C. § 981(a)(1)(C)…………………………………………………….*passim*

18 U.S.C. § 981(c)(1)……………………………………………………....7

18 U.S.C. § 983(a)(3)(D) ……………………………………………....7, 19

18 U.S.C. § 983(c)(2) ………………………………………………….7, 19

18 U.S.C. §  1956(a)(1)(B)……………………………………………2, 14, 15

18 U.S.C. §  1956(c)(7)…………………………………………………*passim*

18 U.S.C. §  1957……………………………………………2, 8, 13, 14

**<u>Rule</u>**

Fed. R. of Civil Procedure 12(b)(6) ……………...…………………………24

Fed. R. Civ. P. Supp. Rule G(2) .................…….....…………………………….*passim*

"Rule G(8)"(b)(ii)……………...……………………………………………………19

Plaintiff United States of America, through its undersigned attorneys, submits this memorandum in opposition to Claimants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture ("Supp. Rule") filed by Teodoro Nguema Obiang Mangue ("Nguema"), the Minister of Agriculture and Forestry for the Republic of Equatorial Guinea ("E.G."), and Sweetwater Malibu, LLC ("Sweetwater") (collectively "Claimants").  The Defendants Michael Jackson Memorabilia ("Defendant Memorabilia"), Real Property Located on Sweetwater Mesa Road ("Defendant Real Property"), and 2011 Ferrari 599 GTC ("Defendant Ferrari")(collectively "Defendant Assets") constitute the fruits of an international criminal scheme orchestrated by Nguema to engage in public corruption in E.G. and then hide, spend, and launder the resulting criminal proceeds through the use of a web of shell companies, intermediaries and straw owners in the United States.  The United States' First Amended Verified Complaint for Forfeiture In Rem ("Complaint") alleges facts that, if accepted as true, "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial, " Supp. Rule G(2).  Indeed, the Complaint's allegations, if proven, establish all of the elements of the charged forfeiture claims.

# I.  <u>BACKGROUND</u>

The Complaint asserts three distinct claims for forfeiture.  Each of the Government's claims allege that the Defendant Assets are subject to forfeiture because

they constitute the proceeds of "specified unlawful activity" ("SUA"), as defined in in 18 U.S.C. § 1956(c)(7), or because they constitute property involved in a money laundering transaction involving the proceeds of an SUA.

The Government's First Claim for Forfeiture alleges that the Defendant Assets constitute the proceeds of an SUA, namely—offenses against a foreign nation involving (i) "extortion," and (ii) the "misappropriation, theft or embezzlement" of public funds, and, therefore, are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) (explaining that property which constitutes the proceeds of an SUA, as defined in 18 U.S.C. § 1956(c)(7)(B)(ii) and (iv), is subject to civil forfeiture).

The Government's Second Claim for Forfeiture alleges that the Defendant Assets were involved in a money laundering transaction—specifically, a monetary transaction or attempted transaction "in criminally derived property of a value greater than $10,000" in violation of 18 U.S.C. § 1957—and, therefore, are also subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) (explaining that property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957 is subject to forfeiture).

The Government's Third Claim for Forfeiture alleges that the Defendant Assets were involved in a different U.S. criminal offense of money laundering—specifically, the subject of a financial transaction or attempted transaction which "involve[d] the proceeds of [an SUA]" knowing that the transaction was designed in whole or in part to conceal or disguise the source, ownership, or control of the criminal proceeds in violation of 18

U.S.C. § 1956(a)(1)—and, therefore, are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) (explaining that property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 is subject to civil forfeiture).

### A.    The Complaint Alleges Facts That Support Its Forfeiture Claims.

According to the Complaint, for the past three decades, Teodoro Nguema Obiang Mbasogo ("President Obiang"), E.G.'s President, and his close family and associates, have concentrated political and economic control of E.G. into the hands of a small inner circle of political elites (the "Inner Circle").  (Compl. ¶ ¶ 18, 22).  Nguema, President Obiang's oldest son, (Compl. ¶ 23), and other members of this Inner Circle, abused their unbridled control over E.G.'s political machinery to amass unprecedented personal wealth by misappropriating E.G.'s vast public resources,[1] and by extorting businesses and individuals in E.G.  (Compl. ¶ 24).

Nguema is one of the sponsors and beneficiaries of this corruption.  Between 2001 through June 2011, Nguema spent over $100 million—much of it in the United States— on personal expenses, despite making less than $100,000 per year as an E.G. public official and having no other substantial, legitimate sources of income.  In 1993, at the age of 24, Nguema's father awarded him a public concession to harvest timber from 25,000 hectares of forests owned by the government.[2]  (Compl. ¶ 34).  The following year

---

[1]  In the 1990s, oil was discovered in E.G.  Today, E.G. is the third-largest producer of oil and gas in Sub-Saharan Africa, (Compl. ¶ 26).
[2]  Prior to the discovery of oil in E.G., timber was E.G.'s principal export. (Compl. ¶ ¶ 26, 27).

Nguema's father granted him a second public concession to harvest an additional 11,000 hectares from E.G.'s forests. (Compl. ¶ 34). At the age of 30, Nguema's father made him Minister of Agriculture and Forestry, a post he still holds today. (Compl. ¶ 35).

Nguema's accumulation of millions of dollars in assets, including the Defendant Assets, as well as his acquisition of luxury homes and million-dollar vehicles on three continents, is grossly inconsistent with any income Nguema earned legitimately as a public official. (Compl. ¶¶ 37, 40). Between April and June 2006, a period of less than three months, Nguema spent $68 million on two assets—the Defendant Real Property and a $38.5 million Gulfstream G-V Aircraft. (Compl. ¶ 43).[3]

1.   **The Complaint Describes Illegal Schemes Used by Nguema and the Inner Circle.**

Nguema abused the power of the state, his relationship with his father, and his public office to orchestrate a criminal campaign aimed at extorting businesses and misappropriating public funds. (Compl. ¶ 51). Nguema uses these corrupt schemes to supplement his only legitimate income, his government salary. Id. Nguema demands that companies, including forestry companies, pay him personally in exchange for the performance of official acts, including the signing of timber export licenses and the

---

[3] Nguema, over a period of years acquired, among other things: a $6.5 million home in Bel Air (Compl. ¶ 36); $3.2 million in Michael Jackson memorabilia, including the Defendant Memorabilia (Compl. ¶ 45); two racing boats for over $2 million (Compl. ¶ 42); and twenty-four automobiles with a total declared value of $9.68 million including a $2 million Maserati, two Bugatti Veyron sports cars for which he paid $2 million and $1.3 million, respectively, and eight Ferraris (including the Defendant Ferrari). (Compl. ¶ 40).

granting of forestry concessions.  (Compl. ¶ ¶ 52, 53).  Businesses that do not pay him personally are subject to retaliation.  (Compl. ¶ ¶ 52, 53, 56).

Members of the Inner Circle, including Nguema, also steal public funds through misappropriation, embezzlement and theft.  (Compl. ¶ 60).  This is accomplished through direct diversion from government accounts, and through schemes that involve submitting inflated "bids" for public contracts, in which corruption payments are built directly into the contracts.[4]  Id.  E.G. state funds were also diverted directly by members of the Inner Circle, including Nguema, for their personal use.[5]

Nguema manipulated a web of shell companies, nominees, and intermediaries to harbor, hide and launder the proceeds of his criminal enterprise inside the United States. Nguema used these funds to purchase and maintain numerous assets in this country, including the Defendant Assets.  For example, Nguema formed and used Sweetwater to hold title to the Defendant Real Property.  (Compl. ¶ ¶ 92, 93).  Similarly, in acquiring the Defendant Memorabilia, Nguema wired funds to purchase these assets in the names of various nominee companies and instructed the auction house to alter its records to

---

[4] In the 2000s, as E.G. awarded large construction projects, Nguema and other members of the Inner Circle exploited this opportunity to further misappropriate funds by tendering fraudulently inflated contracts, bids, and invoices to the government through various nominee companies and entities they controlled.  (Compl. ¶ ¶ 38, 69).

[5] Nguema and his parents held personal accounts at Riggs National Bank ("Riggs") in Washington, D.C.  (Compl. ¶ 62).  One account was known as the Oil Account because it contained payments made by oil companies to E.G.  Id.  Only Nguema's family members (those who were part of the Inner Circle) had signature authority on this account.  (Compl. ¶ 63).  Money from this account was disbursed to individuals and entities associated with the Inner Circle.  (Compl. ¶ 64).

delete any references to him in their invoices and to use the name of a nominee instead.

(Compl. ¶ ¶ 78, 80, 85, 89).

## II.   LEGAL STANDARD ON A MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).

In deciding a motion under Fed. R. Civ. P. 12(b)(6), the Court must "take all of the factual allegations in the Complaint as true," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), and "construe them in the light most favorable to plaintiffs." N.M. State Inv. Council v. Ernest & Young, 641 F.3d 1089, 1094 (9th Cir. 2011); U.S. v. One GMC Yukon, 2003 U.S. Dist. LEXIS 27082, at *6 (C.D. Cal. Dec. 4, 2003). Indeed, the Federal Rules mandate that the Court accept the Complaint's material factual allegations as true "even if doubtful in fact," Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). The Complaint "may not be dismissed based on [the] court's assessment that the plaintiff will fail to find evidentiary support . . . to the satisfaction of the factfinder." Id. at 563, n. 8. "A district court weighing a motion to dismiss asks not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id.; One GMC Yukon, 2003 U.S. Dist LEXIS 27082, at *7; see also U.S. v. All Funds in Credit Suisse, 2005 U.S. Dist. LEXIS 44775, at *6 (C.D. Cal. Sep. 20, 2005)("complaint must be read in the light most favorable to plaintiff.").

The sufficiency of a forfeiture complaint is governed by Supp. Rule G(2), which requires the Government to "state sufficiently detailed facts to support a reasonable belief

that the government will be able to meet its burden of proof at trial."  Supp. Rule G(2).

Although the United States' burden at trial is to "establish [forfeitability] by a

preponderance of the evidence," 18 U.S.C. § 983(c)(1), the Civil Asset Forfeiture Reform

Act[6] ("CAFRA") makes clear that "[n]o complaint may be dismissed on the ground that

the Government did not have adequate evidence at the time the complaint was filed to

establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D).  Thus, the

Complaint need only plead sufficient facts that "the claimant will be able, without

moving for a more definite statement, to commence an investigation of the facts and to

frame a responsive pleading."  U.S. v. Mondragon, 313 F.3d 862, 864 (4th Cir. 2002); see

also Advisory Comm. Note Supp. Rule G (Rule G(2)(f) should be read consistent with

Mondragon).

In assessing the Complaint's sufficiency, the "Court must look to the totality of

the circumstances," U.S. v. $74,500, 2011 U.S. Dist. LEXIS 74375, at *6 (C.D. Cal. Jul.

11, 2011), including the circumstantial evidence alleged, see, e.g., Nazir v. Cnty. of L.A.,

2011 U.S. Dist. LEXIS 26820, at * 30-31 (C.D. Cal. Mar. 2, 2011).  This is especially

apt, in a case such as this one, where the Complaint alleges facts which are "peculiarly

within [the responding party's] knowledge or are readily obtained by him."  See

Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993) (applying "relaxed" pleading

---

[6] Pub. L. No. 106-185, 114 Stat. 202 (2000), codified in part at 18 U.S.C. §
983.

7

standard to facts that are "peculiarly within the defendant's knowledge").  <u>See</u> Compl. at ¶¶ 50-77.

### III.   <u>ARGUMENT</u>

Contrary to Claimants' assertions, (Motion to Dismiss at 8-9), the Complaint's allegations—which must be accepted as true—establish a reasonable belief that the Government will be able to demonstrate forfeitability at trial.  In this action, the First Claim seeks forfeiture of the Defendant Assets under 18 U.S.C. § 981(a)(1)(C), while the Second and Third Claims seek forfeiture of these same assets as property involved in or traceable to a money laundering violation pursuant to 18 U.S.C. § 981(a)(1)(A).  The Complaint contains detailed allegations describing both the SUAs and the money laundering violations that establish the Defendant Assets' forfeitability and  for the Claimants to be able to "commence an investigation of the facts and to frame a responsive pleading."  <u>See</u> <u>Mondragon</u>, 313 F.3d at 864.

#### A. <u>The Complaint Alleges Sufficient Facts Concerning the SUAs.</u>

The Complaint alleges that the Defendant Assets constitute the proceeds of an SUA— "extortion" and the "misappropriation, theft or embezzlement of public funds"— and were involved in money laundering transactions involving the SUA's proceeds.

##### 1. <u>The Complaint Alleges Sufficient Facts to Show Extortion.</u>

Pursuant to 18 U.S.C. § 981(a)(1)(C), assets, which constitute the proceeds of an SUA, as defined in 18 U.S.C. § 1956(c)(7)(B), are subject to forfeiture.  Section

1956(c)(7)(B)(ii) provides that, "[a]n offense against a foreign nation involving . . . extortion . . ." is an SUA.  The statutory term "extortion" is "generally presumed to have its common-law meaning."  <u>Evans v. U.S.</u>, 504 U.S. 255, 260 (1992); <u>U.S. v. Lazarenko</u>, 564 F.3d 1026, 1038-39 (9th Cir. 2009).  "At common law, extortion was an offense committed by a public official who took by colour of his office money that was not due to him for the performance of his official duties."  <u>Evans</u>, 504 U.S. at 260.  This definition was expanded to include "acts by private individuals pursuant to which property is obtained by means of force, fear, or threats."  <u>Evans</u>, 504 U.S. at 260; <u>Lazarenko</u>, 564 F.3d at 1039.  Importantly, the Claimants do not dispute that "extortion" is illegal in E.G.  (Compl.  ¶¶ 58-59).

The Complaint alleges sufficient facts demonstrating that the Defendant Assets were acquired with the "proceeds" of the Inner Circle's extortion.  For instance, it alleges that Nguema benefitted from corrupt schemes to extract illegal payments from businesses, including timber companies, in E.G.  (Compl.  ¶¶ 52-59).  Indeed, Claimants' contention that the Complaint devotes only two paragraphs to Nguema is flatly wrong.  The Complaint, as outlined below, describes with specificity Nguema's criminal schemes in E.G.  <u>See</u> (Compl. ¶¶ 52, 53, 54, 56, 66, 67, 68, 69, 70).

Nguema, for instance, demanded that timber companies pay him in exchange for the performance of official functions, including the approval of timber export licenses and logging concessions.  (Compl. ¶¶ 52-53).  Timber harvested in E.G. cannot be

exported without a license signed personally by Nguema. (Compl. ¶ 52). The Complaint further alleges that Nguema demands that businesses pay him personally before any licenses are issued. (Id.). In addition, Nguema demanded that companies provide him with gifts and free services. (Compl. ¶ 54.) Nguema allegedly required one firm to provide him free construction services in connection with his Malabo home. (Id.). In another scheme, Nguema collected money from companies by concocting fraudulent public service campaigns, including one where he alleged falsely that donations would be used to improve housing conditions for E.G.'s poor, when, in fact, much of these funds were diverted for his personal benefit. (Compl. ¶ 56).

The Complaint also alleges how the Inner Circle, of which Nguema was a key part, (Compl. ¶ 23), and whose corrupt schemes benefited Nguema directly, (Compl. ¶ ¶ 51, 66), illegally demanded payments and wrested control over assets from companies in E.G. For instance, one firm, which was awarded a government contract, was required to permit the Inner Circle's members to use the firm's equipment and personnel for their personal benefit for free. (Compl. ¶ 55). When the firm complained, the E.G. government refused to pay the firm for the work it had allegedly undertaken and imprisoned its employees. Id. Similarly, another business owner was allegedly required to provide personally to an E.G. official fifty percent of his firm's equity. (Compl. ¶ 57).

Despite these and other facts alleged in the Complaint, Claimants contend the Government's allegations are "naked." (Motion to Dismiss, at 12). But, Claimants do

10

not—because they cannot—identify what, if any, further facts the United States is required to plead "to commence an investigation of the facts and to frame a responsive pleading."  See Mondragon, 313 F.3d at 864.  Indeed, the Complaint, as outlined above, describes with sufficient detail the elements of an "extortion" charge:  (i) the identity of the targets; (ii) the identity of the perpetrators; (iii) the specific nature of the demands; (iv) the manner in which the demands were made; and (v) the nature of the perpetrators' threats.  (Compl. ¶¶ 52-57).

## 2.  **The Complaint Sufficiently Alleges Misappropriation, Theft or Embezzlement of Public Funds.**

Section 1956(c)(7)(B)(ii) provides that "[a]n offense against a foreign nation involving … the misappropriation, theft or embezzlement of public funds . . ." is also an SUA the proceeds of which are subject to civil forfeiture pursuant to Section 981(a)(1)(A).  Courts look to the common law in defining the scope of these terms. See Evans, 504 U.S. at 260.  "Misappropriation is defined as '[t]he application of another's property or money dishonestly to one's own use.'"  U.S. v. Stone, 2006 U.S. App. LEXIS 31795, at *602-03 (9th Cir. Dec. 22, 2006)).  "Embezzlement" involves the "fraudulent appropriation to his own use or benefit, of property or money entrusted to him by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character."  U.S. v. Christiansen, 958 F.2d 285, 287 (9th Cir. 1992).  "Theft" is defined as the "taking of property or an exercise of control over property without consent with the criminal

intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent."  Carrillo-Jaime v. Holder, 572 F.3d 747, 750 (9th Cir. 2009).  Again, Claimants do not dispute that these offenses are also illegal in E.G.

The Complaint alleges sufficient details indicating that the Defendant Assets were acquired with the proceeds of "misappropriation, theft or embezzlement."  The Complaint, for instance, alleges that Nguema and the Inner Circle submitted, and received payment for, inflated bids on public contracts—an allegation that Claimants do not challenge.  (Compl. ¶ ¶ 38, 68, 69).  These bids and invoices were fraudulently inflated.  (Compl. ¶ 69).  The bids from such companies included built-in mark-ups of to 400 percent or more.  (Compl. ¶ 69).  Indeed, the Complaint alleges that Nguema, in an affidavit, admitted that members of the Inner Circle take a "sizeable part" of government contracts.  (Compl. ¶ 70).  Specifically, he stated that:

> Cabinet Ministers … in Equatorial Guinea are by law allowed . . .  in consortium with a foreign company . . . [to] bid for government contracts . . . .  **But, in any event, it means that a cabinet minister ends up with a sizeable part of the contract price in his bank account.**  (emphasis added).

Nguema and the Inner Circle also diverted public funds for their personal use. Nguema, for instance, represented to a company in 2005 that he could—and would— divert $40 million in public funds to that company if it purchased an aircraft for him.[7]

---

[7] Claimants contend that because the American company declined to go along with Nguema's scheme, these facts do not "advance the Government's theory."  (Cl. Motion at 17).  Not true.  The Complaint alleges that Nguema believed that he could divert state funds, and represented that this was his intent in 2005—a time period in

(Compl. ¶ 67).  Nguema also received money from other Inner Circle members, who diverted state funds from government accounts.[8] (Compl. ¶ 66).  In addition, the Inner Circle also misappropriated state-owned land.  During the 1990s, large tracts of state-owned land were allegedly transferred to Inner Circle members.[9]  (Compl. ¶ 71).

## B. The Government Alleges Sufficient Facts Demonstrating That Defendant Assets Were Involved in a Violation of 18 U.S.C. § 1957.

Pursuant to 18 U.S.C. § 981(a)(1)(A), the Government's Second Forfeiture Claim is premised on Defendant Assets' involvement with, or traceability to, a violation of 18 U.S.C. § 1957.  Section 1957(a) prohibits engaging in or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from a SUA, or traceable to such property.  The elements of a Section 1957 violation are:  (1) an actual or attempted monetary transaction; (2) that takes place in the United States; (3) involving SUA proceeds; and (4) in an amount greater than $10,000.  See U.S. v. Rogers, 321 F.3d 1226, 1229 (9th Cir. 2003).  In Section 1957, "Congress []

---

close proximity to the time he acquired the Defendant Real Property.  Clearly, this is highly material in assessing whether the Government can demonstrate a "reasonable belief" that it will be able to show at trial that Nguema misappropriated state funds, the very conduct in which he expressed an intention to engage in order to purchase a $40 million aircraft.

[8] Money from a Riggs E.G account was diverted to several persons, associated with the Inner Circle.  (Compl. ¶ 64).  The only individuals with signing authority on this account were Nguema's father, brother, and cousin.  (Compl. ¶ 63).

[9] One foreign company paid Nguema's mother $365,000 to lease a 50-acre compound.  (Compl. ¶ 73).  Another company reported that 18 of the 28 leases it had signed in E.G. were with individuals connected to the E.G. government or Nguema's family.  Id.

criminalize[d] the mere spending of criminally derived property . . . ." U.S. v. Brown, 186 F. 3d 661, 670 (5th Cir. 1990).

The Complaint contains ample facts regarding each of these elements. The Complaint alleges specific "monetary transactions" in an amount greater than $10,000.[10] As set forth in Section III.A above, the Complaint describes the various SUAs—extortion, misappropriation, theft and embezzlement—which generated those funds. The funds were then used to purchase the Defendant Assets in the United States.[11] Thus, all of the elements of Section 1957(a) have been properly alleged.

## C. The Government Sufficiently Alleges That the Defendant Assets Were Involved with a Violation Under 18 U.S.C. § 1956.

Pursuant to 18 U.S.C. § 981(a)(1)(A), the Government's Third Forfeiture Claim is premised on Defendant Assets' involvement with, or traceability to, a violation of 18 U.S.C. § 1956(a)(1)(B). Section 1956(a)(1)(B) prohibits attempting or engaging in a financial transaction with the knowledge that the property involved represents the proceeds of an SUA, when the transaction involves property that was in fact proceeds of an SUA, and the transaction is designed to conceal or disguise the nature, source,

---

[10] See Compl. ¶ 83 ($872,112 wired from E.G. by Nguema to American Business Bank ("ABB") on January 31, 2011); ¶ 87 ($119,974 wired from E.G. to ABB on April 15, 2011), ¶ 89 ($379,692 wired from E.G to ABB on or about August 22, 2011); ¶ 96 (five wires each in the amount of $5,908,000 from E.G. to First American Trust in April 2006); ¶ 98 ($25,131, $39,912); and $14,929.65 wired from E.G. to Pacific Western Bank on or about November 11, 2010). The Complaint specifically identifies these transactions. As such, the burden on Nguema of "commenc[ing] an investigation of [these transactions]" is minimal. Mondragon, 313 F.3d at 864.

[11] See Compl. ¶¶ 76, 83, 87, 89 (purchase of Defendant Memorabilia), 96 (purchase of Defendant Real Property), 98 (purchase of Defendant Ferrari).

ownership, or control of the proceeds of the SUA or to avoid a transaction reporting requirement.  The elements of money laundering under § 1956(a)(1)(B) are:  (1) an actual or attempted financial transaction; (2) involving SUA proceeds; and (3) knowledge that the transaction involves the proceeds of some unlawful activity and that the transaction was designed in whole or in part to conceal the nature, location, source of ownership, or control of the proceeds of an SUA.  See, e.g., U.S. v. Cruzado-Laureano, 404 F.3d 470, 483 (1st Cir. 2005).  The Complaint pleads ample facts in support of these elements.

"[A] typical money laundering transaction" is one where the defendant "use[s] a third party to make [asset] purchases and thereby conceal[s] the buyer['s] identit[y]." U.S. v. Saunders, 929 F.2d 1466, 1472 (10th Cir. 1991).  In U.S. v. Nichols, 416 F.3d 811 (8th Cir. 2005), for instance, the court explained that money laundering convictions have been upheld even where the purchaser of an asset "made no attempt to conceal from the seller of the [asset] his own identity." Id. at 822.  The court explained:

> The point is . . .  by changing the proceeds of unlawful activity from the form of money—through the use of undisclosed business accounts—into the form of an automobile, it made it more difficult for the true owner of the money to trace what had happened to the funds.

Id. at 822-23.  This is precisely such a case.

The Complaint's allegations make clear that Nguema's use of shell companies and intermediaries to open bank accounts, transfer funds, and acquire assets designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control

of SUA proceeds.  Nguema, for instance, created several shell companies, including Beautiful Vision, Inc., Unlimited Horizon, Inc., and Sweetwater, and opened U.S. bank accounts in those companies' names.  (Compl. ¶¶ 76, 92).  Nguema wired funds to accounts at banks held in the names of these companies or  other intermediaries to pay for his personal expenses, including the upkeep of the Defendant Assets.  (Compl. ¶ 76).

Nguema's companies and intermediaries were also used to conceal his acquisition of assets.  The Defendant Real Property was titled in the name of Sweetwater.  (Compl. ¶ 92).  In purchasing the Defendant Memorabilia, Nguema's intermediary told the vendor, "[m]ake sure that [Nguema's] name does not appear anywhere, he should be invisible," and "where a name needs to be, my name is there.  This is very important."  (Compl. ¶ 78).  Nguema even asked that the invoices for the Defendant Memorabilia be falsified to list someone else as the buyer.  (Compl. ¶¶ 80, 82, 85, 89).  Similarly, in wiring funds to purchase the Defendant Memorabilia and the Defendant Ferrari, Nguema funneled money from E.G. through third parties, including Eloba Construccion, Oluy Amadeo, and Somagui, rather than in his own name.  (Compl. ¶¶ 87, 98).

**D. Claimants Other Stated Grounds for Dismissal Are Baseless.**

**1.    Claimants Misunderstand the Knowledge Requirement.**

Claimants contend that the Second and Third Claims, which are based on violations of money laundering statutes, 18 U.S.C. §§ 1956, 1957, fail to plead facts to show that Nguema had sufficient "knowledge."  Section 1956 requires that a defendant

must know "of a design to conceal aspects of the transaction."  <u>U.S. v. Bush</u>, 626 F.3d 527, 536 (9th Cir. 2010).  Section 1957 has no such requirement.  <u>Id.</u>  Section 1957 merely requires that the defendant "know [] that the property was acquired illegally."  <u>U.S. v. Rutgard</u>, 116 F.3d 1270, 1292 (9th Cir. 1997).

Nguema participated directly in the underlying criminal activities.  Thus, accepting the factual allegations in the Complaint as true (as Claimants concede the Court must do) Nguema obviously knew about his own conduct.[12]  This is especially true where, as is the case here, the individual (i.e., Nguema) who committed the crimes, and the person who laundered the proceeds of these crimes, are the same.  Indeed, insofar as knowledge is concerned, the information necessary to "commence an investigat[ion]" is "peculiarly within [Nguema's] knowledge or [is] readily obtained by him."  <u>See</u> <u>Neubronner</u>, 6 F.3d at 672.[13]  The Complaint, as described in Section III.C, describes sufficiently how Nguema knowingly used a host of shell companies and surrogates to acquire assets, move funds and open bank accounts.

---

[12] <u>See</u> <u>U.S. v. $184,416</u>, 527 F. Supp. 2d 1103, 1120 (C.D. Cal. 2003) (complaint should state sufficient facts that the defendant "will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.") (internal quotation marks omitted).

[13] Even in connection with those schemes perpetrated by other members of the Inner Circle, Nguema's close ties to these individuals, combined with the fact that he was a beneficiary of their corrupt schemes, suggests strongly that Nguema "knew" of their illicit conduct.  Many of these schemes were perpetrated by Nguema's family.  In any event, knowledge can be inferred from the Complaint's extensive allegations and any further examination goes to the evidence's weight— which is more appropriately an issue for trial, not a motion to dismiss.

## 2.   The Claimants' Demand That the Government Prove a Nexus Between Nguema's Criminal Conduct and the Defendant Assets is Incorrect and Not Supported by Law.

Claimants argue that the Complaint inadequately demonstrates a nexus between the Defendant Assets and Nguema's criminal activity because the Complaint does not "trace [illicit] funds to the Claimant." (Motion to Dismiss at 14-15, 16). Claimants contend erroneously that the United States is required at the pleading stage to show, on a step-by-step basis, how Nguema funneled money from specific illegal transactions through "originating" financial institutions, into U.S. financial institutions, and, finally, into the Defendant Assets. (Motion to Dismiss at 14). These contentions lack merit.

First, Claimants, without citing any legal authority, mischaracterize the applicable pleading standard here. Under Rule G(2)(f), the Complaint need only allege sufficient facts so that "the claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." See Mondragon, 313 F.3d at 864. The United States is not required to demonstrate a nexus at the pleading stage. [14] Claimants' overreaching position simply cannot be squared with the plain language of 18 U.S.C. § 983(a)(3)(D), which Claimants notably fail to cite. Section 983(a)(3)(D) provides explicitly that:

---

[14] U.S. v. $97,667, 538 F. Supp. 2d 1246, 1254 (C.D. Cal. 2007) (rejecting claimant's argument that insufficient facts had been pled regarding a "substantial connection," as "at this stage of the litigation . . . Plaintiff need only support a reasonable belief that it can meet its burden at trial"); U.S. v. $11,500, 2010 U.S. Dist. LEXIS 130421, at *3 (D. Ore. Dec. 8, 2010)(government need not plead facts demonstrating a "substantial connection between the seized property and the offense" at the "pleadings stage"); U.S. v. 2007 Custom Motorcycle, 2010 U.S. Dist. LEXIS 67891, at *7 (D. Ariz. Jul. 7, 2010).

**No complaint may be dismissed on the ground that the Government [does] not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property**.

18 U.S.C. § 983(a)(3)(D)(emphasis added); See Supp. Rule G(8)(b)(ii); U.S. v. 5208 Los Francisco Way, 385 F.3d 1187, 1193 (9th Cir. 2004).  The sufficiency of the Complaint "is governed by Rule G(2)['s]" "reasonable belief" standard; not the "preponderance" standard required at trial.  Supp. R. G(8)(b)(ii); Supp. R. Advisory Committee Note.

Indeed, "the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture."  18 U.S.C. § 983(c)(2).  Rewriting Title 18 to read otherwise, as Claimants urge, (Motion to Dismiss at 15), does violence to the statute's plain language.  Section 983(c)(2), as explained by the Ninth Circuit, "would be meaningless if the government were required to meet the preponderance standard merely to commence an action."  5208 Los Francisco Way, 385 F.3d at 1193.  While the United States will be required to show forfeitability at trial, "[t]he government need not satisfy its burden of proof at the pleading phase."  U.S. v Real Prop., 2011 U.S. Dist. LEXIS 69230, at *12 (E. D. Cal. Jun. 28, 2011).  Indeed, even if the Government were required to trace Nguema's criminal proceeds into the Defendant Assets (which it is not), this is an issue for trial, not the pleading stage.  Claimants would have this Court conclude that the Government must demonstrate tracing even to enter the courthouse door.  But, this is not the law.[15]  The

---

[15] See, e.g., U.S. v. All Funds, 2007 U.S. Dist. LEXIS 52828, at * 23 (S.D.N.Y. Jul.

"Government is not required to allege in the Complaint all of the facts and evidence at its

disposal."  U.S. v. $22,173, 716 F. Supp. 2d 245, 248 (S.D.N.Y. 2010).

Second, even if the United States were required to show such a "nexus" at the

pleading stage, which it is not, Claimants' contention that the United States is required to

trace directly on a step-by-step basis the flow of Nguema's illegal money into the

Defendant Assets from specific transactions is incorrect.  Federal courts, including the

Ninth Circuit, have considered, and consistently rejected, Claimants' argument.[16]  Nothing

in Rule G, nor the Federal Rules, requires that level of specificity.  It is well established

that the Government, even at trial, is "not required to show a relationship between the

proceeds of a [] crime and a specific [criminal] transaction."[17]  Rather, courts adopt a

"common sense view to the realities of normal life applied to the totality of the

16, 2007)("[S]ince the issue on this motion is one of pleading; not proof at trial, it is not necessary to pass on the government's ultimate burden  of proof regarding traceability of the defendants-in-rem."); see also Flying Food Gp. v. NLRB, 471 F.3d 178, 183 (D.C. Cir. 2006)("[P]laintiff is not required to negate an affirmative defense in his complaint").

[16] U.S. v. Approx. $1.67 million, 513 F.3d 991, 999 (9th Cir. 2008) ("need not prove that the money in question comes from a specific transaction."); U.S.  v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985) ("no need to tie [asset] to proceeds of a particular identifiable illicit drug transaction.") (emphasis in original).

[17] U.S. v. $38,885, 2011 U.S. Dist. LEXIS 144477, at * 11 (E. D. Cal. Dec. 15, 2011) (U.S. "need not show a relationship between the proceeds [of a crime] and a specific [criminal] transaction." ); U.S. v. 2007 F-150 Pickup Truck, 2011 U.S. Dist. LEXIS 139986, at *8 (E.D. Cal. Dec. 6, 2011); U.S. v. $11,500, 2010 U.S. Dist. LEXIS 768681, at *4 ("at the pleading stage, [U.S.] need not identify the particular drug offense to which the currency was connected"); U.S. v. $242,484, 389 F.3d 1149, 1160 (11th Cir. 2004)(en banc) (U.S. "does not need to show a relationship between the property and a particular drug transaction—only  that the property was related to some illegal drug transaction"); U.S. v. $87,060, 23 F.3d 1352, 1354 (8th Cir. 1994)(U.S. "need not trace the property to a specific drug transaction"); U.S. v. $22,173, 2010 U.S. Dist. LEXIS 33494, at *8 (S.D.N.Y. Apr. 5, 2010); U.S. v. $1,700,000, 545 F.Supp. 2d 645, 649 (E. D. Mich. 2008) ("direct evidence tracing . . . is not required")(emphasis in original)  U.S. v. $185,000, 455 F.Supp.2d 145, 149 (E.D.N.Y. 2006)(U.S. "need not prove that there is a substantial connection between the property and any specific drug transaction").

circumstances," including circumstantial evidence.[18]  The Ninth Circuit explained, "We have found that circumstantial evidence generally connecting [defendant assets] to [criminal activity] suffices to establish probable cause."  $\underline{1.67\ million}$, 513 F.3d at 999. Indeed, Claimants fail to cite even a single case where the United States was required to satisfy the novel pleading standard Claimants now insist this Court adopt. [19]

Finally, although not required at the pleadings stage, the Complaint nonetheless provides significant details tying the Defendant Assets to criminal conduct.  Indeed, an examination of the case law demonstrates that when, as is the case here, claimants are alleged to have:  (i) "generally engaged in [specific criminal] business over a period of time"—namely, extortion and the misappropriation, embezzlement or theft of public funds, (Compl. ¶¶ 50-75);  (ii) "have no visible source of substantial [legitimate] income"[20]—other than a modest government salary (Compl. ¶¶ 37, 40, 49, 51); (iii) use

---

[18] $\underline{\$242,484}$, 389 F.3d at 1160;  $\underline{2007\ Ford\ F-150\ Pickup\ Truck}$, 2011 U.S. Dist. LEXIS at * 8-9; $\underline{U.S.\ v.\ \$149,442.43}$, 965 F.2d 868 (10th Cir. 1992) ("circumstantial evidence" relevant in determining forfeitability).

[19] Furthermore, insofar as the United States' Second and Third Claims seek the forfeiture of Defendant Assets because they were "involved" in money laundering pursuant to 18 U.S.C. § 981(a)(1)(A), rather than because they constitute the "proceeds" of criminal activity, Claimants "tracing" arguments are irrelevant.  For purposes of Section 981(a)(1)(A), the U.S. need only show a "substantial connection" between Defendant Assets and Nguema's criminal activity.  18 U.S.C. § 981(c)(3).  "Several courts have held that real property is 'involved in' a money laundering offense if laundered funds are used to make payments toward purchase of the property and to pay for improvements."  $\underline{Real\ Prop.}$, 2011 U.S. Dist. LEXIS 69230, at *14.

[20] $\underline{U.S.\ v.\ \$22,474}$, 246 F.3d 1212, 1218 (9th Cir. 2001)(claimant's failure to show legitimate source of income was material); $\underline{U.S.\ v.\ \$223,178}$, 2008 U.S. Dist. LEXIS 37878, at *15 (C. D. Cal. Apr. 30, 2008) (claimant's failure to "prove legitimate sources of income" is material); $\underline{U.S.\ v.\ \$30,670}$, 403 F.3d 1193, 1201 (11th Cir. 2001)(owner had "no other legitimate source of income" or "no visible source of substantial [legitimate] income" was material); $\underline{Two\ Parcels}$, 92 F.3d at 1128; $\underline{\$149,442.43}$, 965 F. 2d at 878

cash for large purchases[21]—such as Nguema's expenditure of $68 million in a three-

month period in 2006, (Compl. ¶¶ 31, 40-48, 78-98);  and (iv) "are nominee owners [of

straw companies]"[22]—like Nguema who controls several shell companies in the United

---

(noting absence of legitimate "alternative source of income"); U.S. v. All Assets & Equip., 58 F.3d 1181, 1189 (7th Cir. 1995) (noting lack of legitimate "verifiable income"); 1982 Yukon Delta Houseboat, 774 F.2d at 1435 (noting "lack[] of a [legitimate] source of funds"); U.S. v. Two Real Properties, 2009 U.S. Dist. LEXIS 89702, at *10 (S. D. W. Va. Sept. 29, 2009) ("[F]actors that weigh in favor of property being either a direct product of [illicit activity] or traceable to [it] as proceeds include where . . .  verifiable income cannot possibly account for the level of wealth displayed") (quoting U.S. v. $147,900, 2009 U.S. Dist. LEXIS 26393, at *7 (M.D.N.C. 2009)); U.S. v. $40,000, 2009 U.S. Dist. LEXIS 115487, at *32 (N.D. Ill. Dec. 10, 2009) ("notable incongruence between [] income and the [property] in his possession evidence of connection between the property and criminal activity); U.S. v. One 1993 Lexus LS 400, 1993 U.S. Dist. LEXIS 13727 at *5 (N.D. Ill. Sept. 23, 1993)(claimants' salaries were "not sufficient for payments on expensive assets").

   [21] U.S. v. Jackson-Randolph, 282 F.3d 369, 377 (6th Cir. 2002) ("evidence of extreme wealth or extravagant spending is admissible" to show possible criminal conduct); U.S. v. Carrell, 252 F.3d 1193, 1201 (11th Cir. 2001) (fact that owner "used cash for large purchases" was relevant); U.S. v. Mobley, 193 F.3d 492, 495-96 (7th Cir. 1999) (evidence of extravagant expenses and fur coats was relevant in showing that defendant had source of unlawful income); U.S. v. Butler, 102 F.3d 1191, 1198 (11th Cir. 1997) (concluding that defendant's unexplained wealth amounted to evidence of probable cause); All Assets & Equip., 58 F.3d at 1189 (lack of legitimate "verifiable income cannot possibly account for the level of wealth displayed" was evidence that "wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds")(internal quotation marks omitted); $149,442.43, 965 F.2d at 878 (noting "numerous significant expenditures …during years in question"); U.S. v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990) ("expenditures far exceeding [his] legitimate income" or the "making of uncommonly large cash purchases" is evidence of criminal conduct); U.S. v. U.S. Currency, 2006 U.S. Dist. LEXIS 73527, at *27 (E. D. Wis. Sep.27, 2006) ("level of wealth displayed" relevant in showing that wealth is a direct product of illicit activity or traceable thereto).

   [22] Two Parcels, 92 F.3d at 1128; Carrell, 252 F.3d at 1201 (existence of "nominee owners" evidence of probable cause); U.S. v. Santiago, 227 F.3d 902, 907 (7th Cir. 2000)(fact that defendant used "nominees" to hold assets relevant in assessing nexus between assets and criminal activity); U.S. v. One 1993 Lexus LS 400, 1993 U.S. Dist. LEXIS 13727 at *4 (N. D. Ill. Sep. 23, 1993)(noting "history of using nominees" to own assets); U.S. v. All Funds and Prop., 661 F.Supp. 697, 701 (S.D.N.Y. 1986) (noting use of "nominee" to maintain bank accounts).

States alone, (Compl. ¶ ¶ 76, 92), further evidence of "tracing" is not necessary at the

pleading stage.  See U.S. v. Two Parcels, 92 F.3d 1123, 1128 (11th Cir. 1996).[23]

      In the face of such overwhelming precedent, Claimants only response is to deny

generally the Complaint's allegations and claim that Nguema—as a factual matter—

earned his income legitimately.  These arguments are misplaced.  "When ruling on a

motion to dismiss, [a court] must disregard facts that are not alleged on the face of the

complaint or contained in documents attached to the complaint."  Kourtis v. Cameron, 419

F.3d 989, 994 (9th Cir. 2005).  The Complaint alleges that Nguema's father—more than 11

years before Nguema acquired the Defendant Assets—issued his "inexperience[d]," 24-

year-old son a public concession to harvest timber.  But, nothing in the Complaint

remotely suggests, as Claimants would have the Court conclude, that Nguema utilized

those concessions profitably, let alone knew the first thing about how to manage or

operate a timber logging operation; earned a "substantial" legitimate income from them;

and, furthermore, diligently conserved, saved, or invested those purported earnings over a

ten-year period in order to purchase the Defendant Assets.  Rather, the opposite is true.

---

[23] Furthermore, Claimants contend that the Complaint fails to allege any facts tying the Defendant Assets to the Inner Circle's misconduct.  This is wrong.  The Complaint alleges explicitly that Nguema benefited directly and financially from the Inner Circle's misconduct.  (Compl. ¶ ¶ 17, 49, 61, 63, 66).  Indeed, "Some of the money obtained by other members of the Inner Circle has made its way to Nguema."  (Compl. ¶ 66).   In addition to receiving direct transfers of money from other members of the Inner Circle— such as the $200,000 he received in 2002, (Compl. ¶ 66), Nguema also told one U.S. bank that the source of his wealth was "family inheritance." (Compl. ¶ 49).  See In re Return of Seized Prop., 625 F. Supp. 2d 949, 953 (C.D. Cal. 2009)(forfeiture complaint adequate where asset's owners were alleged to be "members or associates of [a criminal] organization" and assets were used, or traceable to proceeds used or intended to be used, for illegal activities by that larger organization).

The Complaint alleges unambiguously that Nguema had no legitimate source of income other than his public salary.  (Compl. ¶¶ 37, 40, 49, 51).  Furthermore, the Complaint specifically alleges that Nguema earned vast sums through illegal activity, allegations which, for purposes of this motion, must be accepted as true.  Indeed, insofar as Claimants dispute any of the Complaint's factual allegations, the Federal Rules afford him ample opportunity to present evidence of his purportedly legitimate income through discovery, in later pleadings, and, ultimately, at trial.

### 3.  **Claimants' Use of External Evidence is Wholly Inappropriate.**

Claimants also contend, incorrectly, that the Complaint is deficient because the U.S. Attorney's Office for the District of Columbia ("USAO") stated in a letter six years ago that it did not have a basis to forfeit or seize certain assets at that time—specifically, April 18, 2005.  In support of this argument, Claimants append a copy of that six-year-old letter to their motion.  In seeking dismissal of a complaint under Rule 12(b)(6), Claimants cannot rely, as they do here, on evidence external to the pleadings.  Kourtis, 419 F.3d at 994.  The letter states that the USAO did not have a sufficient basis to forfeit assets at that time; this Complaint was filed almost six years later, during which time an investigation was initiated into Nguema's conduct.  (Compl., Verif.).  Nothing in the Complaint suggests otherwise.  Indeed, Claimants do not, and cannot, cite any legal authority suggesting that the Government is precluded from filing this action because of any statements made in the USAO's letter.  In any event, to the extent Claimants seek to

distort these facts to challenge this Complaint, a motion to dismiss is not the appropriate

vehicle with which to mount such a factual challenge.

## IV. <u>CONCLUSION</u>

For all of the reasons stated above, the United States respectfully requests that

this Court deny Claimants Motion to Dismiss.[24]

DATED: March 12, 2012               JENNIFER SHASKY CALVERY, Chief
                                    LINDA M. SAMUEL, Deputy Chief
                                    DANIEL H. CLAMAN, Assistant Chief
                                    Asset Forfeiture & Money Laundering Section
                                    CRIMINAL DIVISION


                                    <u>/S/ *Woo S. Lee*_____</u>
                                    WOO S. LEE
                                    Trial Attorney
                                    United States Department of Justice

                                    ANDRÉ BIROTTE, JR.
                                    United States Attorney
                                    STEVEN WELK
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

---

[24] If this Court grants Claimants' motion to dismiss, the Government respectfully requests this Court's leave to amend the Complaint. <u>See, e.g.</u>, <u>AE v. Cnty. of Tulare</u>, 666 F.3d 631, 636 (9th Cir. 2012) ("A district court abuses its discretion by [dismissing with prejudice and] denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.").