1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Duane R. Lyons (Bar No. 125091)
2    duanelyons@quinnemanuel.com
     Brian M. Wheeler (Bar No. 266661)
3    brianwheeler@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
5  Facsimile:   (213) 443-3100

6  FISHER & KREKORIAN
     Kevin Fisher (Bar No. 131455)
7    rkf@fkslaw.net
   2121 Park Drive
8  Los Angeles, California 90026
   Telephone:   (310) 862-1225
9  Facsimile:   (310) 388-0805

10 FOREMAN DEGEURIN & DEGEURIN
     Mike DeGeurin (*Admitted Pro Hac Vice*)
11   mdegeurin@foremandegeurin.com
   300 Main Street, Third Floor
12 Houston, Texas 77002
   Telephone:   (713) 655-9000
13 Facsimile:   (713) 655-1812

14 Attorneys for Claimants
   Teodoro Nguema Obiang Mangue
15 and Sweetwater Malibu, LLC

16                    UNITED STATES DISTRICT COURT

17                   CENTRAL DISTRICT OF CALIFORNIA

18                          WESTERN DIVISION

19 UNITED STATES OF AMERICA,          CASE NO. CV 11-03582-GW
20               Plaintiff,
                                      Hon. George H. Wu
21         vs.
                                      **CLAIMANTS TEODORO**
22 ONE WHITE CRYSTAL-COVERED          **NGUEMA OBIANG MANGUE'S**
   "BAD TOUR" GLOVE AND OTHER         **AND SWEETWATER MALIBU,**
23 MICHAEL JACKSON                     **LLC'S REPLY IN SUPPORT OF**
   MEMORABILIA; REAL PROPERTY         **MOTION TO DISMISS FIRST**
24 LOCATED ON SWEETWATER              **AMENDED VERIFIED**
   MESA ROAD IN MALIBU,               **COMPLAINT FOR FORFEITURE**
25 CALIFORNIA; ONE 2011 FERRARI       ***IN REM***
   599 GTO,
26                                     Hearing Date: April 12, 2012
                 Defendants.           Time: 8:30 a.m.
27                                     Place: Courtroom No. 10

28

04579.23529/4658891.10

                                      CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

1

# **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3

4

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

5

PRELIMINARY STATEMENT ...................................................................................1

6

ARGUMENT....................................................................................................................1

7    I.      THE GOVERNMENT HAS NOT MET THE REQUISITE HEIGHTENED PARTICULARITY-IN-PLEADING STANDARD...............1

8

9       A.     Civil Forfeiture Complaints Are Subject To Heightened Pleading Requirements.........................................................................................1

10            1.     There Is No "Peculiary with the [Claimant's] Knowledge" Exception To The Supplemental Rules' Particularity-In-Pleading Requirement....................................................................3

11

12            2.     The Government's Reliance On And Characterization Of *Mondragon*, Which Confirms The Particularity-Pleading Requirement, Is Misleading At Best.............................................5

13

14       B.     The Government Must Demonstrate That It Had Probable Cause To *Institute* The Forfeiture Action, Which Requires A Nexus Between The Alleged Criminal Acts and the Property to be Forfeited ...........................................................................................7

15

16

17            1.     Because Probable Cause Must Have Existed At The Time The Complaint Was Instituted, The Government Cannot Use Later-Obtained Evidence......................................................11

18

19       C.     Conclusory Allegations, Unwarranted Deductions Of Fact, And Unreasonable Inferences Are Not Accepted As True...........................12

20            1.     Claimant's Spending Is Not Unlawful And Does Not Support An Inference Otherwise .................................................15

21

22            2.     The Government Concession That The Minister Had Lawful Timber Concessions Negates Its Desired Inference ......17

23

CONCLUSION................................................................................................................19

24

25

26

27

28

-i-

# TABLE OF AUTHORITIES

**Cases**          **Page**

1982 Yukon Delta Houseboat,
    774 F.2d 1432 (9th Cir. 1985) ................................................................ 9

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) .............................................................. 13, 14

Cholla Ready Mix, Inc. v. Civish,
    382 F.3d 969 (9th Cir. 2004) ............................................................. 13

Clegg v. Cult Awareness Network,
    18 F.3d 752 (9th Cir. 1994) ............................................................... 13

Neubronner v. Milken,
    6 F.3d 666 (9th Cir. 1993) .............................................................. 3, 4

Real Property Known as 2291 Ferndown Lane,
    No. 3:10-c 2011 U.S. Dist. LEXIS 62776 (W.D. Va. Jun. 14, 2011) ................. 15

Salinas v. United States,
    522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) ......................... 16

United States v. $80,010 in U.S. Currency,
    303 F.3d 1182 (9th Cir. 2002) ............................................................ 2

United States v. $97,667.00 in U.S. Currency,
    538 F. Supp. 2d 1246 (C.D. Cal. 2007) ............................................... 8

United States v. $38,000.00 Dollars in U.S. Currency,
    816 F.2d 1538 (11th Cir. 1987) ...................................................... 3, 10

United States v. $39,000 In Canadian Currency,
    801 F.2d 1210 (10th Cir. 1986) ....................................................... 2, 13

United States v. $49,576.00 U.S. Currency,
    116 F.3d 425 (9th Cir. 1997) ............................................................. 10

United States v. $405,089.23 U.S. Currency,
    122 F.3d 1285 (9th Cir. 1997) ................................................. 7, 8, 11, 15

United States v. $506,231 in U.S. Currency,
    125 F.3d 442 (7th Cir. 1997) ......................................................... 8, 10

United States v. $186,416.00 in U.S. Currency,
    527 F. Supp. 2d 1103 (C.D. Cal. 2007) ............................................... 6

United States v. $186,416.00 In U.S. Currency,
    590 F.3d 942 (9th Cir. 2010) ....................................................... 6, 8, 11

United States v. $191,910.00 in U.S. Currency,
    16 F.3d 1051 (9th Cir. 1994) ......................................................... 7, 11

United States v. $493,850.00 in U.S. Currency,
    518 F.3d 1159 (9th Cir. 2008) ........................................... 7, 8, 11, 12

United States v. All Assets Held at Bank Julius Baer & Co.,
    571 F. Supp. 2d 1 (D.D.C. 2008) ............................................ 2

United States v. Dobbs,
    63 F.3d 391 (5th Cir. 1995) .................................................. 16

United States v. Funds in the Amount of $9,800,
    952 F. Supp. 1254 (N.D. Ill. 1996) ......................................... 10

United States v. Garcia-Emanuel,
    14 F.3d 1469 (10th Cir. 1994) (Section 1956(a)(1) ............................ 16

United States v. Mondragon,
    313 F.3d 862 (4th Cir. 2002) ............................................. 5, 6

United States v. Nichols,
    416 F.3d 811 (8th Cir. 2005) ................................................ 17

United States v. One Parcel of Real Prop. With Bldg., Appurtenances, &
    Improvements Known as 304-390 W. Broadway, S. Boston, Mass.,
    964 F.2d 1244 (1st Cir. 1992) ............................................... 2

United States v. One Partially Assembled Drag Racer,
    899 F. Supp. 1334 (D.N.J. 1995) ................................. 4, 5, 8, 9, 11

United States v. Pole No. 3172, Hopkinton,
    852 F.2d 636 (1st Cir. 1988) ................................................ 4

United States v. Real Prop. Known As 22249 Dolorosa St.,
    Woodland Hills, Cal.,
    167 F.3d 509 (9th Cir. 1999) ............................................... 10

United States v. Rockelman,
    49 F.3d 418 (8th Cir. 1995) ................................................ 16

United States v. Sanders,
    929 F.2d 1466 (10th Cir. 1991) ......................................... 16, 17

United States v. Stephenson,
    183 F.3d 110 (2d Cir. 1999) ................................................ 16

United States v. U.S. Currency, $30,060.00,
    39 F.3d 1039 (9th Cir. 1994) ........................................ 7, 11, 17

United States v. U.S. Currency in Sum of One Hundred
    Eighty-Five Thousand Dollars ($185,000),
    455 F. Supp. 2d 145 (E.D.N.Y. 2006) ........................................ 9

## **Statutes**

18 U.S.C. § 1956(a)(1)(B)(i) ................................................... 8

18 U.S.C. § 1957(a) ................................................................................................ 8

18 U.S.C. § 981(a)(1)(A) ....................................................................................... 8

18 U.S.C. § 981(a)(1)(C) ....................................................................................... 8

18 U.S.C. § 983(c)(1) ............................................................................................. 2

Fed. R. Civ. P.Supp. R. E(2)(a) ............................................................................. 2

Fed. R. Civ. P.Supp. R. G(2)(f) ............................................................................. 2

U.S. Const. art. I, §§2-3, art. II, §1 ..................................................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Nothing in the Government's Opposition alters the conclusion that the instant forfeiture complaint must be dismissed.  Instead of providing particularized allegations in support of its fanciful claims that Minister Nguema engaged in wide-reaching extortion and theft from his home country of Equatorial Guinea, the Government has done little more than make conclusory statements.  Indeed, the First Amended Complaint ("FAC") fails to identify a single victim of this supposed extortion by name.  Rather, the Government repeatedly accuses Minister Nguema of "demanding payments from companies doing business in E.G." by requiring they pay him "taxes" or "personal fees" without any further specificity.  These conclusory allegations are insufficient to support a forfeiture claim.  Indeed, the Government's Opposition is replete with misleading stub quotes, citations to disapproved cases and generous use of ellipses in a misguided attempt to suggest that its conclusory allegations are sufficient.  However, as set forth below, the well established rule in the Ninth Circuit is that forfeiture complaints must plead particularized factual allegations of both wrongdoing and the property's substantial connection to the activity subject to the specific forfeiture statute it invokes to satisfy the requirement of probable cause.  Try as it might, the Government cannot point to any Ninth Circuit authority which suggests otherwise.  Because the FAC fails to meet those requirements it must be dismissed.

### Argument

## I.    THE GOVERNMENT HAS NOT MET THE REQUISITE HEIGHTENED PARTICULARITY-IN-PLEADING STANDARD

### A.    Civil Forfeiture Complaints Are Subject To Heightened Pleading Requirements

There is no dispute that the Supplemental Rules impose heightened pleading standards as a safeguard against the "disfavored," "drastic nature of the [forfeiture]

-1-

1  remedy."  See United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1068

2  (9th Cir. 1994) ("Government confiscation of private property is disfavored in our

3  constitutional system."), superseded in part on other grounds as stated in United

4  States v. $80,010 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002) (holding

5  CAFRA superseded prior burden-shifting provision and placed greater onerous on

6  the Government instead of the claimant); United States v. One Parcel of Real Prop.

7  With Bldg., Appurtenances, & Improvements Known as 304-390 W. Broadway, S.

8  Boston, Mass., 964 F.2d 1244, 1248 (1st Cir. 1992) (holding "stringent pleading

9  rules applicable in the forfeiture context mirror the drastic nature of the remedy. . . .

10  "[S]ince forfeitures are strong medicine, disfavored in our jurisprudence, it seems

11  fitting to condition the medicine's availability on a proper regard for the

12  requirements of the law.").

13        At the core of the heightened pleading standard for forfeiture cases is the

14  Supplemental Rules' particularity-in-pleading requirement.  See United States v. All

15  Assets Held at Bank Julius Baer & Co., 571 F. Supp. 2d 1, 16 (D.D.C. 2008) (". . .

16  Rule G (and its predecessor Rule E(2)) creates a heightened burden for pleading on

17  the plaintiff.  The additional burden of pleading requiring added specifics is thought

18  appropriate because of the drastic nature of those remedies.") (internal quotations

19  and citations omitted); United States v. $39,000 In Canadian Currency, 801 F.2d

20  1210, 1217-18 (10th Cir. 1986) ("heightened protections" in civil forfeiture context

21  requires "that a complaint state the circumstances on which the claim is based with

22  more particularity than is generally necessary.").  Under the Supplemental Rules, the

23  complaint must plead "*sufficiently detailed facts*" with "*particularity*" to support a

24  reasonable belief that the Government will be able "to establish, by a preponderance

25  of the evidence, that the property is subject to forfeiture."  Fed. R. Civ. P. Supp. R.

26  E(2)(a) and G(2)(f) (emphasis added); 18 U.S.C. § 983(c)(1).

27

28

1.     <u>There Is No "Peculiary with the [Claimant's] Knowledge"</u>
<u>Exception To The Supplemental Rules' Particularity-In-Pleading</u>
<u>Requirement</u>

Relying on <u>Neubronner v. Milken</u>, 6 F.3d 666 (9th Cir. 1993), the Government essentially contends that it need not plead with particularity because certain facts it alleges are within the Minister's knowledge or could be obtained by him.  (Opp. at 7-8.)  This argument is wholly without merit and utterly misstates the strictures of the burden of proof.  "In an actual forfeiture proceeding, the Government bears the burden of going forward, and must show probable cause that the property subject to forfeiture is involved in criminal activity. . . .  It is the Government that is attempting to deprive a person of property.  It is therefore the Government's burden to satisfy the initial pleading requirements by specifically alleging the circumstances underlying the claim."  <u>$39,000</u>, 801 F.2d at 1217.  Indeed, the Supplemental Rule "contains *no exceptions* to [the particularity-in-pleading] requirement."  <u>United States v. $38,000.00 Dollars in U.S. Currency</u>, 816 F.2d 1538, 1548 (11th Cir. 1987) (reversing district court and remanding with instruction to dismiss the Government's complaint for failure to comply with the Supplemental Rule's pleading requirements) (emphasis added).

The Government's reliance on <u>Neubronner</u> is sorely misplaced.  As a preliminary matter, <u>Neubronner</u> is not a forfeiture case, but rather a civil fraud case.  In <u>Neubronner</u>, the court affirmed the district court's dismissal with prejudice of plaintiff's complaint on the grounds that plaintiff failed to specifically plead necessary facts.  6 F.3d at 673.  The Government's citation to <u>Neubronner</u> for the supposed proposition that a relaxed pleading requirement applies to facts that are peculiarly within the responding party's knowledge is misleading at best.  The <u>Neubronner</u> court merely noted that it has been "held that the general rule that allegations of *fraud* based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge" because

1  "[i]n such situations, plaintiffs cannot be expected to have personal knowledge of

2  the relevant facts."  6 F.3d at 672 (emphasis added).  The court did not purport to

3  announce a rule applicable to all particularity-in-pleadings cases and certainly did

4  not suggest that the Government's burden in civil forfeiture cases would be lessened

5  to that of an ordinary plaintiff in a fraud case.  In fact, in <u>Neubronner</u>, the court even

6  refused to apply this concept in that particular case.  Instead, the court ruled that the

7  plaintiff failed to satisfy even the "relaxed version of Rule 9(b)" and held that "this

8  exception does not nullify Rule 9(b); a plaintiff who makes allegations on

9  information and belief must state the factual basis for the belief."  <u>Id.</u>

10       Thus, the court's comments about a relaxed pleading standard in civil fraud

11  cases is classic dictum that cannot nullify the import of the particularity-in-pleading

12  requirement in civil forfeiture cases.  Certainly the Government is not to be held to a

13  lower standard than a civil plaintiff when it seeks to impose such a drastic remedy as

14  forfeiture.  Rather, as civil forfeiture cases consistently recognize, the burden must

15  squarely be placed on the Government to plead facts with particularity.  <u>See</u>, <u>e.g.</u>,

16  <u>United States v. Pole No. 3172, Hopkinton</u>, 852 F.2d 636, 638-39 (1st Cir. 1988)

17  (rejecting Government's theory that facts in an affidavit be deemed incorporated

18  into the "patently inadequate" complaint "because the claimants knew or should

19  have known its contents:"  "[W]e reject a rule that would require district courts

20  generally to look at the knowledge of the claimants in determining the sufficiency of

21  a forfeiture complaint.  It is hardly a heavy burden to impose on the government the

22  requirement that it express in the complaint the facts which it has already disclosed

23  to the claimants.  Nor can the government claim to be surprised by this requirement:

24  Rule E(2) leaves little room to doubt that a higher than normal standard of

25  particularity is in order, and several courts have emphasized the need for

26  particularity in the complaint itself."); <u>United States v. One Partially Assembled

27  Drag Racer</u>, 899 F. Supp. 1334, 1342 (D.N.J. 1995) (granting motion to dismiss and

28  rejecting the Government's argument that it "need not plead its evidence, especially

where the surrounding facts are peculiarly within the opposing party's knowledge:"
"Although the government need not prove its entire case at the pleading stage, it
must plead facts rather than conclusory allegations, even where the claimant is
already in possession of those facts.  The reason for this, once again, lies in the
purpose of the increased particularity standard in civil forfeiture actions.").[1]

2. The Government's Reliance On And Characterization Of
*Mondragon*, Which Confirms The Particularity-Pleading
Requirement, Is Misleading At Best

The Government further attempts to obfuscate the applicable law in its
citations to United States v. Mondragon, 313 F.3d 862 (4th Cir. 2002).  In five
separate places in the Government's brief, it misleadingly cites Mondragon and
includes an incomplete, disingenuous quote.  (Opp. at 7, 8, 11, 14 n.10, 18 ("Thus,
the Complaint need only plead sufficient facts that 'the claimant will be able,
without moving for a more definite statement, to commence an investigation of the
facts and to frame a responsive pleading.'") (quoting Mondragon, 313 F.3d at 864).)
The full quote, however, confirms the preessential particularity-in-pleading
requirement:

> A civil forfeiture complaint against property allegedly connected to
> drug trafficking ***must meet the particularity in pleading requirement***
> of Supplemental Rule E(2)(a).  Rule E(2)(a) requires the complaint to
> "state the circumstances from which the claim arises ***with such***

_____

[1] "Rule E(2)(a) has a compelling purpose.  Civil forfeiture is a powerful tool in
the government's battle against crime, and its use is circumscribed by important
Fourth and Fifth Amendment rights.  It must be carried out scrupulously within
constitutional bounds.  Accordingly, '[t]he requirements of Rule E(2)(a) are more
than a mere technicality; they are a means of upholding this drastic remedy against a
possible due process challenge and of preventing the seizure of the defendant
property for long periods of time when, in fact, the government had no claim to the
property.'  The Court must apply Rule E(2)(a) with this important purpose in mind."
Assembled Drag Racer, 899 F. Supp. at 1340 (citations omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*particularity* that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." <u>Mondragon</u>, 313 F.3d at 864 (citation omitted) (emphasis added).

The Government cannot merely bury its head in the sand and pretend the particularity-in-pleading standard does not exist simply because it knows it has failed to meet that standard.[2]  Indeed, the ultimate holding in <u>Mondragon</u> provides little support to the Government.  Although the court in <u>Mondragon</u> affirmed the district court's denial of claimant's motion to dismiss, it did so through a view of CAFRA limited to pleading requirements for the burden at trial and ignores the probable cause requirement—this is at odds with the Ninth Circuit's view.  <u>See</u> <u>infra</u> Part B.  In fact, the Ninth Circuit specifically rejected the <u>Mondragon</u> court's view when it declined to follow <u>Mondragon</u> and rebuffed this limitation.  <u>See</u> <u>United States v. $493,850.00 in U.S. Currency</u>, 518 F.3d 1159, 1168-1169, n.3 (9th Cir. 2008) (declining to extend <u>Mondragon</u> and a First Circuit case, which each limited its discussion of CAFRA to pleading requirements for the government's burden of proof at trial, and holding the probable cause requirement survived CAFRA).

---

[2]   In addition to also misleadingly citing <u>United States v. $186,416.00 in U.S. Currency</u>, 527 F. Supp. 2d 1103 (C.D. Cal. 2007), for this same incomplete standard while omitting the particularity-in-pleading requirement, the Government also failed to indicate that the Ninth Circuit reversed and remanded this decision in 590 F.3d 942 (9th Cir. 2010).  Coincidentally, this Ninth Circuit decision conveniently omitted by the Government supports Claimants nexus and probable cause arguments.  <u>See</u> <u>infra</u> Part I.B.

-6-

CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

**B.** **The Government Must Demonstrate That It Had Probable Cause To _Institute_ The Forfeiture Action, Which Requires A Nexus Between the Alleged Criminal Acts and the Property to be Forfeited**

The Government also misapprehends the nexus requirement at this stage and conflates it with its tracing burden at trial. Claimants do not contend that the forfeiture Complaint must specifically trace criminally-derived funds to the property in order to avoid dismissal of its complaint. Rather, at this stage, the Government must plead sufficiently detailed facts with particularity to support a reasonable belief it will be able to meet its burden at trial. Here, no such facts have been plead with particularity and therefore no basis exists to support a reasonable belief the Government will be able to do so at trial. More importantly, however, this case should not survive the pleading stage because the Government has failed to demonstrate it had *probable cause* to *institute* the forfeiture action in the first instance because it refuses to even allege a nexus between the property and the specified criminal conduct alleged. See United States v. $405,089.23 U.S. Currency, 122 F.3d 1285, 1291 (9th Cir. 1997) (without the requisite nexus between the defendant property and the criminal conduct, "the Government cannot establish probable cause for its forfeiture proceeding").

For the Government to meet its burden of establishing probable cause, it must demonstrate it had "reasonable grounds to believe" that the property it seeks forfeiture of was related to "the activity subject to the specific forfeiture statute it invokes"—the Government must "demonstrate a *nexus*" between the seized property and the specified conduct—A belief that the property is "involved in *some* illegal activity is not enough," nor are "suspicions of general criminality." See $191,910.00, 16 F.3d at 1071; United States v. U.S. Currency, $30,060.00, 39 F.3d 1039, 1041 (9th Cir. 1994); United States v. $493,850.00 in U.S. Currency, 518

1   F.3d 1159, 1169 (9th Cir. 2008); <u>$405,089.23</u>, 122 F.3d at 1291; <u>United States v.</u>

2   <u>$506,231 in U.S. Currency</u>, 125 F.3d 442, 451 (7th Cir. 1997).[3]

3     Not unlike the "proceeds traceable" language in Section 881, forfeiture under

4   Section 981, pursuant to the Government's First Claim, likewise requires the

5   Government show the property to be forfeited "is *derived from proceeds traceable*

6   *to a violation of* . . . any offense constituting 'specified unlawful activity.'" 18

7   U.S.C. § 981(a)(1)(C) (emphasis added). Similarly, for its Second and Third

8   Claims, the Government must show that the defendants *in rem* are "*criminally*

9   *derived*," "*proceeds*" of criminal conduct, or "*traceable* to such [criminally-derived]

10   property." 18 U.S.C. §§ 981(a)(1)(A), 1956(a)(1)(B)(i), 1957(a).[4]

11     Therefore, "the government must put on a two-step proof: first, of the

12   predicate criminal acts, and second, of the direct or indirect connection between the

13   property and the acts. At the forfeiture proceeding, showing this connection can be

14   a substantial task." <u>Assembled Drag Racer</u>, 899 F. Supp. at 1340-41 (granting

---

16    [3]   The Government's citation to <u>United States v. $97,667.00 in U.S. Currency</u>,

17   538 F. Supp. 2d 1246 (C.D. Cal. 2007), is unavailing. The court in <u>$97,667.00</u>
   based its analysis on the mistaken belief that CAFRA superseded the probable cause

18   requirement. Since <u>$97,667.00</u> was decided, however, the Ninth Circuit has held at
   least twice that the probable cause requirement survived CAFRA. <u>See</u> <u>$186,416.00</u>,

19   590 F.3d 942, 949 (9th Cir. 2010) (citing <u>United States v. $493,850.00 in U.S.</u>

20   <u>Currency</u>, 518 F.3d 1159, 1169 (9th Cir. 2008)).

21    [4]   The Government tries to avoid its burden by representing that under one
   theory of its claim, Section 981 only requires the Government demonstrate that the

22   property was "involved" in a transaction in violation of sections 1956 or 1957, or

23   traceable to such property, but this focus on the word "involved" conveniently
   ignores that the Government will still have to prove the underlying violation of

24   Section 1956 or 1957 in which the property was allegedly involved—a burden that
   will require the Government prove the property represents the *proceeds* of the

25   unlawful activity or that the accused financial transaction involves the *proceeds of*

26   *specified unlawful activity* in order to conceal the *proceeds* of specified unlawful

27   activity, or else that it is *criminally-derived property from specified unlawful*
   *activity*. <u>See</u> 18 U.S.C. §§ 981(a)(1)(A), 1956(a)(1)(B)(i), 1957(a).

28

1   motion to dismiss forfeiture complaint as inadequate: "Although it alleges the

2   predicate violations of the customs laws and the Controlled Substances Act with

3   sufficient particularity, the government gives no indication that it will be able to

4   trace the proceeds of claimant's alleged criminal activity to his purchase of the

5   Property.").[5]

6        Indeed, even the cases the Government cites agree that a nexus to the

7   specified criminal conduct must be made, even if not to a specific transaction.  See,

8   e.g., 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1434 (9th Cir. 1985) ("The

9   government can show probable cause that a seized item is subject to forfeiture on a

10  'reasonable ground for belief' that the seized item was traceable to an illegal

11  controlled transaction.  This belief must be more than 'mere suspicion,' but can be

12  created by less than 'prima facie proof.'") (pre-CAFRA case); United States v. U.S.

13  Currency in Sum of One Hundred Eighty-Five Thousand Dollars ($185,000), 455 F.

14  Supp. 2d 145, 149 (E.D.N.Y. 2006) (although the Government need not prove

15  "substantial connection" with "specific drug transaction," it is still required to at

16  least prove that the property is "substantially connected to narcotics trafficking").

17       Thus, the particularity-in-pleading requirement not only mandates sufficient

18  allegations describing the predicate criminal acts, but it plays an important role in

19  _____

20   [5]  In Assembled Drag Racer, the court rejected the Government's complaint
21  under the particularity standard where the complaint conclusorily alleged that (1) the
    claimant earned "huge sums of money" through illegal conduct, (2) the claimant
22  used the proceeds of these sales to purchase the defendant property, and (3) that the
    defendant property was "traceable to" proceeds from the illicit conduct.  Like
23  Assembled Drag Racer, the Government's remarkably similar conclusions cast in
24  the form of factual allegations against the Minister here are likewise "too vague to
    pass muster."  899 F. Supp. at 1341-1342 ("The thesis of the complaint seems to be
25  that, because claimant allegedly engaged in illegal activities which generated
26  proceeds, the Property ipso facto must have been purchased with these proceeds
    and/or purchased to conceal or disguise them. No such presumption attaches,
27  without more, to the property of persons who have committed crimes.").

28

1  determining whether the Government has probable cause to believe the property was

2  derived from or traceable to the unlawful conduct subject to the specific forfeiture

3  statute invoked.  The requirement to plead claims with specificity "was meant to

4  establish formal pleading rules requiring more than wholly conclusory allegations

5  that the seized property was connected with drug activity." <u>United States v. Funds</u>

6  <u>in the Amount of $9,800</u>, 952 F. Supp. 1254, 1259 (N.D. Ill. 1996) (granting motion

7  to dismiss where the Government's factual allegations did not reasonably support a

8  nexus between the property seized and the drug offense as to link the defendant

9  funds with the illicit drug transactions).

10      Accordingly, where the Government lacks sufficiently detailed facts to

11  support a reasonable belief that the property is connected to the unlawful conduct

12  subject to the specific forfeiture statute, the Government lacks probable cause and

13  the Government's case necessarily fails.  <u>See</u>, <u>e.g.</u>, <u>$38,000.00</u>, 816 F.2d at 1548

14  (holding forfeiture complaint must be dismissed because it failed to allege sufficient

15  facts to support a reasonable belief that the Government had probable cause where

16  the complaint did not provide factual allegations to evidence a substantial

17  connection between the property to be forfeited and the alleged criminal conduct);

18  <u>United States v. $49,576.00 U.S. Currency</u>, 116 F.3d 425 (9th Cir. 1997) (reversing

19  forfeiture order and holding the Government "failed to produce sufficient evidence

20  to support a finding of probable cause to believe the property was involved in a drug

21  transaction;" although alleged facts were "indicative of *some* illegal activity," this

22  was insufficient); <u>United States v. Real Prop. Known As 22249 Dolorosa St.,</u>

23  <u>Woodland Hills, Cal.</u>, 167 F.3d 509, 514 (9th Cir. 1999) (reversing forfeiture

24  because the evidence was "insufficient to establish the requisite connection between

25  Hopkins's drug activity and the property:"  "In the absence of evidence of a link

26  between the property and illegal drug transactions, the evidence is insufficient to

27  establish probable cause."); <u>$506,231 in U.S. Currency</u>, 125 F.3d at 451-53

28  (vacating summary judgment order and remanding with instructions to dismiss

1    forfeiture complaint after holding the Government "is unable to come up with the

2    requisite narcotics-nexus to meet its initial burden of showing probable cause.");

3    United States v. U.S. Currency, $30,060.00, 39 F.3d 1039, 1045 (9th Cir. 1994)

4    (affirming grant of summary judgment against the Government where the

5    Government "fail[ed] to demonstrate by some credible evidence the probability that

6    Alexander's money was in fact drug-related"); $405,089.23, 122 F.3d at 1290-92

7    (reversing grant of summary judgment for Government where the Government

8    failed to show a nexus "between this particular money and drug activity" and

9    therefore left "a gap in the evidence between the targeted assets and the illegal

10   narcotics activity"); Assembled Drag Racer, 899 F. Supp. at 1340-41 (granting

11   motion to dismiss where the Government's factual allegations were too vague and

12   lacked sufficient particularity to support a reasonable belief the Government would

13   be able to connect the property and the alleged criminal conduct).

14        1.    Because Probable Cause Must Have Existed At The Time The

15              Complaint Was Instituted, The Government Cannot Use Later-

16              Obtained Evidence

17        The Ninth Circuit has made clear that probable cause must be had at the time

18   the forfeiture action was instituted.  See $191,910.00, 16 F.3d at 1068; $405,089.23,

19   122 F.3d at 1291.  Accordingly, probable cause must be established by "evidence

20   gathered up until the complaint was filed," not subsequently-obtained evidence.  See

21   $493,850.00, 518 F.3d at 1169.

22        The Government tries to invoke CAFRA to absolve it from demonstrating a

23   nexus at this stage of the litigation.  (Opp. at 18-19.)  No such refuge can be found

24   in this provision of CAFRA.  See United States v. $186,416.00 in U.S. Currency,

25   590 F.3d 942, 949 (9th Cir. 2010) ("The probable cause requirement is statutory.

26   Pursuant to 19 U.S.C. § 1615, . . . the government must show that probable cause

27   exists to institute its action.  We recently held that this requirement survived the

28   enactment of the Civil Asset Forfeiture Reform Act of 2000.").  Summarily, as the

1   Ninth Circuit explained, in enacting CAFRA, Congress did not intend to undercut

2   the increased protections the law provided for claimants (in transferring the burden

3   at trial to Government and raising that burden) by then eliminating the probable

4   cause standard. See $493,850.00, 518 F.3d at 1167-69 ("[T]he coexistence of

5   section 1615's probable cause requirement and CAFRA is consistent with the

6   legislative intent of CAFRA. In enacting CAFRA, Congress intended to institute

7   stronger procedural safeguards before the government could forfeit property.").

8   Accordingly, Claimants join the Ninth Circuit's rejection of the argument the

9   Government is again making here:

> The government argues that CAFRA's plain language eliminates the probable cause requirement by providing that "[n]o civil forfeiture complaint may be dismissed because the government lacked sufficient evidence at the time of filing." ***The government's citation to CAFRA is incomplete and misleading***. CAFRA provides that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D) (emphasis added). Post–CAFRA, establishing the forfeitability of property is distinct from having probable cause to institute the forfeiture action. . . . The former requirement describes the government's burden at trial to prove entitlement to the property by presenting proof, by a preponderance of the evidence, of a substantial connection between the property and the offense. 18 U.S.C. § 983(c). The latter requirement describes the government's burden to get in the courthouse door by presenting evidence that, at the time it filed the complaint, it had "reasonable grounds to believe that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion." $493,850.00, 518 F.3d at 1167-68 (emphasis added).

### C.   Conclusory Allegations, Unwarranted Deductions Of Fact, And Unreasonable Inferences Are Not Accepted As True

26   Here, the Government fails to meet the pleading requirements of particularity

27   and probable cause. Nor can the Government avoid these requirements by claiming

28   that the Court must accept its conclusory allegations as true—this argument is

1  wrong as a matter of law.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-51 (2009)

2  (mere legal conclusions within a complaint are "not entitled to be assumed true").

3  For example, the Government avers that the Court must accept as true its legal

4  conclusions cast in the form of factual allegations that "Nguema earned vast sums

5  through illegal activity."  However, "the court is not required to accept [as true]

6  legal conclusions cast in the form of factual allegations if those conclusions cannot

7  reasonably be drawn from the facts alleged.  Nor is the court required to accept as

8  true allegations that are merely conclusory, unwarranted deductions of fact, or

9  unreasonable inferences." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th

10  Cir. 2004) (internal citations and quotations omitted); see also Clegg v. Cult

11  Awareness Network, 18 F.3d 752, 754-755 (9th Cir. 1994) ("[T]he court is not

12  required to accept legal conclusions cast in the form of factual allegations if those

13  conclusions cannot be reasonably drawn from the facts alleged.").

14      Without further detailed factual allegations pleaded with particularity, the

15  Government's claims regarding unidentified parties and unspecified conduct amount

16  to nothing more than conclusions that cannot be accepted as true.  Moreover, these

17  non-particularized, conclusory allegations "neither give a claimant a reasonable

18  starting point from which to initiate a meaningful investigation nor permit a

19  responsive pleading that can address identities, quantities, locations, or dates of an

20  alleged offense.  These unsupported and conclusory allegations do not meet any

21  definition of the word 'particularity.'" $39,000, 801 F.2d at 1220 (affirming

22  dismissal of forfeiture complaint for lack of particularity on the basis that the

23  complaint failed to allege facts that support a reasonable inference that the assets

24  sought were involved in the criminal conduct (drug transaction) where the complaint

25  did not specify dates, locations, dollar amounts, and did not identify the specific

26  participants in the purported criminal conduct).

27      After disregarding the conclusory allegations that cannot be reasonably drawn

28  from the scant universe of non-conclusory *facts* alleged, a court should look at the

1    remaining particularized and non-conclusory factual allegations to determine if they,

2    standing alone, are sufficient to state a claim for relief.  Iqbal, 129 S. Ct. 1937.

3    After applying these filters to the Government's wholly-conclusory complaint, it is

4    apparent that the Complaint fails that standard.  The Government must plead

5    sufficiently detailed facts with particularity regarding, *inter alia*, who the

6    perpetrators of the alleged schemes were, who the alleged victims were, when these

7    supposed unlawful activities took place, how much money was derived from these

8    alleged schemes, how Claimants were specifically involved in such conduct, what

9    funds made it to Claimaints, and how the defendant property is connected to the

10   alleged criminal conduct, among other missing factual allegations.

11          Instead, the Government merely accuses a faceless "Inner Circle" of engaging

12   in unspecified unlawful schemes with vague examples of alleged misconduct against

13   anonymous victims for undisclosed amounts of money without any connection to

14   the defendant property or specific facts demonstrating Claimants alleged monetary

15   benefit from these schemes.  Despite its emphasis on the alleged misdeeds of the so-

16   called "Inner Circle," the Government still fails to draw any nexus between

17   Claimants and the proceeds of such alleged criminal conduct.[6]  Even if the

18   complaint allowed an inference of connection between Claimants and the Inner

19   Circle, however, these are meaningless allegations without a clear nexus to the

20   defendants *in rem*.

21   ————————————————

22          [6]   For example, the Government conclusorily alleges that the Minister "received
     money from other Inner Circle members," but its factual allegation in support of this
23   *conclusion* is that there was money deposited in a bank account for which only
     relatives of the Minister, but notably not the Minister himself, had signing authority.
24   (Opp. at 13 n.8.)  That is clearly not enough.  See, e.g., $405,089.23, 122 F.3d 1285,
     1291 (probable cause lacking where Government's only evidence concerning bank
25   accounts was who had "signature authority for the accounts," but where the
     Government had no evidence regarding the origin of funds held in a bank account
26   and no nexus between the funds and the specified illegal activity).

27

28

1        1.      Claimant's Spending Is Not Unlawful And Does Not Support An

2                Inference Otherwise

3        In contrast to the lack of specificity regarding the allegations of illegal

4   conduct, the Government has provided detailed allegations regarding Minister

5   Nguema's spending habits.  However, these allegations cannot substitute as a proxy

6   for the particularized pleading of both predicate acts and the property's connection

7   to those which is necessary to support a forfeiture claim.  Even if these funds were,

8   *arguendo*, proceeds of illegal conduct – which the Government has not shown to be

9   the case[7] – merely spending such money does not violate the money laundering

10  statutes cited by the Government as grounds for forfeiture.  As several courts have

11  made clear, the money laundering statute is <u>not</u> a money <u>spending</u> statute.  <u>See</u>

12  <u>United States v. Stephenson</u>, 183 F.3d 110, 120-121 (2d Cir. 1999) (vacating money

13  laundering conviction) ("Joining a number of other circuits, we hold that Subsection

14  (i) of the money laundering statute does not criminalize the mere spending of

15  proceeds of specified unlawful activity.") (citing <u>United States v. Dobbs</u>, 63 F.3d

16  391, 398 (5th Cir. 1995) ("where the use of the money was not disguised and the

17  purchases were for family expenses and business expenses . . ., there is . . .

18  _____

19      [7]   The Government confuses the law applicable to the case and incorrectly
20  defines extortion (Opp. at 9.) under U.S. common law.  <u>See</u> <u>Real Property Known as</u>
     <u>2291 Ferndown Lane</u>, No. 3:10-cv-0037, 2011 U.S. Dist. LEXIS 62776, at *24
21  (W.D. Va. Jun. 14, 2011) (holding that in an forfeiture action under §§ 981(a)(1)(A)
     and (C), based on allegations of bribery in violation of Taiwanese law, "the federal
22  bribery statute has no bearing on the determination of 'specified unlawful activity'
     [under 18 USC § 1956(c)(7)(iv).]").  The Government must prove extortion,
23  misappropriation, theft and embezzlement, the predicate offenses against a foreign
24  nation in this case, as defined under the laws of Equatorial Guinea.  <u>See</u> <u>id.</u> (an
     offense against a foreign nation "implicates the offense conduct included in the
25  foreign nation's definition of [the offense]").  Contrary to the Government's
26  contention in its Opposition, Claimants do not concede that "extortion" is illegal in
     E.G.
27

28

1  insufficient evidence to support the money laundering conviction"); United States v.

2  Rockelman, 49 F.3d 418, 422 (8th Cir. 1995) (money laundering statute should not

3  be interpreted to criminalize ordinary spending of drug sale proceeds); United States

4  v. Garcia-Emanuel, 14 F.3d 1469, 1476 (10th Cir. 1994) (Section 1956(a)(1) "is a

5  concealment statute-not a spending statute" and "evidence of concealment must be

6  substantial").  Indeed, even the Government's cited authority agrees.  See United

7  States v. Sanders, 929 F.2d 1466, 1472 (10th Cir. 1991) (money laundering statute

8  should not be interpreted to criminalize ordinary spending of drug proceeds)).[8]

9  Glaringly absent from the Government's allegations of spending are particularized

10 facts to demonstrate the funds the Government alleges he spent were criminally

11 derived from the criminal conduct that allegedly forms the basis for the statute under

12 which forfeiture is sought.

13      The Government's citation to United States v. Sanders, 929 F.2d 1466 (10th

14 Cir. 1991) abrogated by Salinas v. United States, 522 U.S. 52, 118 S. Ct. 469, 139 L.

15 Ed. 2d 352 (1997), is puzzling.  In Sanders, the court rejected the Government's

16 argument that the money laundering statute should be interpreted broadly (because

17 doing so would improperly turn it into a spending statute) and reversed money

18 laundering convictions that were based on the purchase of vehicles that defendants

19 used conspicuously.  929 F.2d at 1472-74.  Similarly, here, the Government would

20 like to have the Court broadly interpret the money laundering statute into a money

21 spending statute.  This is improper.

22 _____

23   [8]   Further, allegations of spending funds on other assets not a subject of the
24 Government's Complaint is not only not unlawful, but it clearly irrelevant to the
    instant forfeiture action.  The omission of these other assets from the Government's
25 Complaint is a clear signal that even under the Government's whimsical theories
26 and willingness to bend the contours of permissibility under the forfeiture statutes, it
    has zero support or bases to seek forfeiture of these *rem* not named in the
27 Complaint.

28

Further, the Government is unable to square the reasoning in <u>Sanders</u> with the analogous facts here.  Like in <u>Sanders</u>, the Minister too used his car conspicuously.  Indeed, the Government freely admits that the defendant vehicle is titled in the Minister's name.  In addition, he also proudly held himself out as the owner of the real property in Malibu.  That he chose to take title to the real property in the name of an LLC, a common vehicle for property ownership by wealthy individuals and investors,[9] is not proof of an intent to conceal the source of the purchase money, even if it were, *arguendo*, criminally-derived.[10]  As the Government's cited authority recognizes, "A money laundering violation requires proof of concealment, not the absence of full disclosure."  <u>United States v. Nichols</u>, 416 F.3d 811, 822 (8th Cir. 2005) (affirming criminal convictions of individuals who furthered a fraud scheme by concealing the money from the defrauded victims and distinguishing a more analogous case where merely spending ill-gotten money on cars was "not equivalent to money laundering").

### 2. The Government Concession That The Minister Had Lawful Timber Concessions Negates Its Desired Inference

Moreover, the Government's fanciful *ipse dixit* theory still seeks to ignore the Minister's significant, legitimate supplemental business income, even though the Government concedes that the Minister was awarded a 20-year concession to harvest timber from approximately 88,000 acres by the president of E.G. in addition

---

[9]   Indeed, public chain of title and tax records clearly show that the predecessor in interest for the real property was also in the name of an LLC that, like Claimant, included the street name of the property (Sweetwater).

[10]   Nor is the Government's allegation that Claimant provided inconsistent explanations for the source of his deposits in the United States sufficient.  <u>See</u> $30,060.00, 39 F.3d at 1041 (holding that circumstantial evidence regarding the large sums of money and false accounts of the money's source "may support a suspicion of illegal activity," but "mere suspicion of illegal activity is not enough to establish probable cause that the money was connected to drugs.").

to whatever official salary he drew as a Minister of E.G.[11]  Nowhere does the Government allege that this timber concession was illegal.  That he merely <u>spent</u> money, therefore, in addition to not constituting a violation of money laundering laws, is likewise not a factor from which any insidious presumption can arise.

It is the Government's burden to demonstrate it had probable cause that the property it seeks forfeiture of is connected to and derived from proceeds of the specified unlawful conduct and that it can further support a reasonable belief that it will be able to prove this at trial.  In light of the Government's concession as to the legality of the Minister's substantial timber concession, it has not demonstrated probable cause, nor alleged with sufficient particularity to support a reasonable belief that the Government will be able to meet its burden at trial to prove that the property was criminally-derived and represents the proceeds of the alleged illegal conduct as opposed to merely profits from a admittedly legitimate business in the timber industry.

At bottom, the Government has insufficient well-pleaded and non-conclusory facts pled with particularity to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," or to even demonstrate the requisite nexus between the specified unlawful

---

[11]  The Government's opposition tries to insinuate impropriety based on the Minister's age at the time of his award of timber concessions and appointment to the ministry by his father, the president, at the ages of 24 and 30, respectively.  Of course, the United States Constitution provides no minimum age for a cabinet member.  Indeed, Robert Kennedy was appointed Attorney General by his brother, the president, at the age of 35.  Further, youth in age is not a disqualifier for public service.  <u>See</u> U.S. Const. art. I, §§2-3; art II, §1 (to serve, a congressman need be only 25, a senator merely 30, and the president 35).

1   conduct and the defendant property to support probable cause.  Dismissal is the

2   appropriate remedy here.[12]

3                                          **Conclusion**

4          Not only has the Government failed to plead with particularity specific facts

5   to support a reasonable belief it will be able to meet its burden at trial, but it has also

6   failed – and refused – to show any nexus whatsoever between the property and the

7   alleged criminal conduct such that probable cause is clearly lacking.  Because

8   probable cause must be had at the time the Government institutes the forfeiture

9   action, an amended pleading can never cure this fatal defect and therefore the

10  Complaint must dismissed *with prejudice*.  "Whether probable cause exists to

11  institute proceedings is solely a question of what information is in the government's

12  possession; even if the government were to amend its pleadings to include new

13  evidence, the amendment could not change the historical fact that the government

14  did not have probable cause at the time it brought the case."  $\underline{191,910.00}$, 16 F.3d

15  at 1068 ("While a subsequent amendment might cure a violation of the pleading-

16

17      [12]   In various places in its Opposition, the Government tries to draw inferences

18  from Claimants' Motion as if it were a responsive pleading.  Claimants are not
    required to respond to every conclusory and vague allegation in the Government's

19  Complaint in order to move for dismissal.  Indeed, this is one of the purposes of
    particularity-in-pleading—to avoid the necessity of procedural maneuvering for a

20  more definite statement under Rule 12 coupled with an ability to make only a

21  general denial.  <u>See</u> <u>$39,000</u>, 801 F.2d at 1221-22 ("[T]he only conceivable
    response to these complaints' conclusory allegations is a general denial.  Rule

22  E(2)(a) requires a more specific complaint.  To answer responsively or to investigate

23  further an allegation that property was used in connection with criminal activity, a
    claimant must have a point from which to begin.  These complaints supply no

24  starting point.").  That the Government accuses Claimants of failing to respond to

25  certain allegations in one breath, only to characterize the Motion to Dismiss in the

26  next breath as a general denial is further indicative of the deficiency of the
    Government's to permit Claimants "to commence an investigation of the facts and

27  to frame a responsive pleading."

28

1   with-particularity requirement in Supplemental Rule E(2)(a), it would stretch the

2   concept of 'relation back' too far to say that an amendment of pleadings can turn

3   back time and make probable cause exist on a date when it did not. Civil forfeiture

4   proceedings are already rooted in one legal fiction; there is no justification for

5   adding another, more tenuous legal fiction to the mix.").[13]

6       For the foregoing reasons, the Court should grant Claimants' motion to

7   dismiss pursuant to Fed R. Civ. P. 12(b)(6) and the Supplemental Rules.

8

9   DATED:  March 26, 2012          QUINN EMANUEL URQUHART &
                                     SULLIVAN. LLP
10

11                                  By  /s/ Duane R. Lyons
                                        Duane R. Lyons
12                                      Attorneys for Claimants Teodoro Nguema
                                        Obiang Mangue and Sweetwater Malibu, LLC
13

14

15

16

17

18

19

20
_____

21   [13]   The Government's wishful disregard for the DOJ letter cited in Claimants'
     moving papers is further evidence of the lack of probable cause.  It is undisputable
22   that at the time of its transmission, the Government did not have probable cause and
     in fact had "no basis for believing that the monies used to purchase the aircraft
23   would violate U.S. money laundering laws."  It is the Government's burden,
24   however, to demonstrate that it had probable cause in October 2011 when it
     instituted the forfeiture action.  Nevertheless, the Government fails to even plead
25   sufficiently detailed facts with particularity to allege any new facts between the date
     of the letter and the institution of the action to demonstrate probable cause was had.
26   This is highly relevant to a determination of whether the Government had probable
27   cause in October 2011.

28

                                    -20-