UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

THE HONORABLE GEORGE H. WU, JUDGE PRESIDING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CV 11-3582-GW-SS |
| ) | |
| ONE WHITE CRYSTAL COVERED BAD TOUR ) | |
| GLOVE and OTHER MICHAEL JACKSON ) | |
| MEMORABILIA, et al., ) | |
| ) | |
| Defendants. ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Thursday, April 12, 2012, 9:21 A.M.

CLAIMANTS' MOTION TO DISMISS FIRST AMENDED VERIFIED

COMPLAINT

PAT CUNEO CSR 1600, CRR-CM
Official Reporter
Roybal Federal Building
Room 181-E
255 East Temple Street
Los Angeles, California 90012
213-290-1817
patcuneo1600@gmail.com
www.patcuneo.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:      UNITED STATES DEPARTMENT OF JUSTICE
                             UNITED STATES ATTORNEY'S OFFICE
 3                           BY:  STEVEN R. WELK, CHIEF
                             ASSET FORFEITURE SECTION
 4                           312 North Spring Street
                             Suite 1200
 5                           Los Angeles, California 90012
                             213-894-6166
 6                           steven.welk@usdoj.gov
                                   -and-
 7                           UNITED STATES DEPARTMENT OF JUSTICE
                             BY:  WOO S. LEE, TRIAL ATTORNEY
 8                           AND  DANIEL H. CLAMAN
                                 ASSISTANT DEPUTY CHIEF
 9                           CRIMINAL DIVISION
                             ASSET FORFEITURE AND MONEY LAUNDERING
10                              SECTION
                             INTERNATIONAL UNIT
11                           1400 New York Avenue, N.W., Suite 10100
                             Washington, DC  20005
12                           woo.lee@usdoj.gov; daniel.claman@usdoj.gov

13   FOR THE CLAIMANT:       QUINN EMANUEL TRIAL LAWYERS
                             BY:  DUANE R. LYONS, PARTNER
14                                ATTORNEY AT LAW
                             865 South Figueroa Street
15                           10th Floor
                             Los Angeles, California 90017
16                           213-443-3000
                             duanelyons@quinnemanuel.com

17

18

19

20

21

22

23

24

25
```

```
 1    LOS ANGELES, CALIFORNIA; THURSDAY, APRIL 12, 2012; 9:21 A.M.
 2                            -oOo-
 3         THE COURT:  Let me call United States vs. One
 4    White Crystal Covered Bad Tour Glove.
 5         Let me have the appearance of counsel.
 6         MR. LEE:  Good morning, Your Honor.  Woo Lee for
 7    the United States.
 8         THE COURT:  All right.
 9         MR. WELK:  Steve Welk for the United States and
10    Daniel Clayman as well, Your Honor.
11         THE COURT:  All right.
12         MR. LYONS:  Good morning, Your Honor.  Duane Lyons
13    on behalf of claimant.
14         THE COURT:  All right.  We're here on a motion to
15    dismiss the First Amended Complaint.  I have issued a
16    tentative.  I presume both sides have seen it.
17         MR. LYONS:  Yes, Your Honor.
18         MR. LEE:  Yes, Your Honor.
19         THE COURT:  Does anybody want to argue anything?
20         MR. LEE:  Your Honor, if I could just have the
21    court's indulgence, if I could have a few minutes just to
22    talk about the pleading standard, Your Honor.
23         THE COURT:  Uh-huh, yes.
24         MR. LEE:  Respectfully, Your Honor, the government
25    has a few concerns with the heightened pleading standard as
```

1   articulated in the tentative, Your Honor.
2           THE COURT:  It's really not heightened *per se*, but
3   it's, you know, but it seems that under G, Rule G, that it's
4   not a normal pleading standard.
5           MR. LEE:  I agree with that, Your Honor; and the
6   case law supports that as well; that there is a pleading
7   standard that's different from Rule 8 notice pleading, Your
8   Honor.
9           THE COURT:  Yes.
10          MR. LEE:  But -- so Rule G states that the
11  government has to support reasonably that it will be able to
12  meet its preponderance standard at trial.
13          THE COURT:  Yes.
14          MR. LEE:  And then the advisory committee notes
15  try to give a little more flavor as to what that reasonable
16  belief standard means.
17          THE COURT:  But also this is in the context of the
18  Ninth Circuit.  The Ninth Circuit has put a spin on this
19  because the question that the Ninth Circuit addressed in --
20  the case name escapes me now -- is whether or not it was --
21  and the statute escapes me now, too.  Is it 16 --
22          MR. LEE:  1615, Your Honor?
23          THE COURT:  Yeah, 1615.
24          In other words, the standard of 1615, you know,
25  was that changed by the promulgation of the statute?  And

1  they say no.  Although, frankly, I wonder how they got there
2  but what can they say -- what can I say?  They got there and
3  so, you know, it's there.
4          MR. LEE:  Right.  No, I understand, Your Honor;
5  and the case that's cited in the tentative is actually one
6  of the cases I wanted to talk about; and I would direct the
7  court's attention to -- it's this case, *United States v.* --
8  and in these forfeiture actions, the case names are always a
9  little awkward to say -- *$493,850*.  This is 518 F.3d 1159;
10 and that was the point where the Ninth Circuit said that
11 1615 survives, the government has to show probable cause to
12 institute a civil forfeiture proceeding.
13         So there are these two requirements.  You have to
14 satisfy Rule G and you also have to satisfy a probable cause
15 showing, Your Honor.
16         But it's interesting in that case, Your Honor, if
17 you look at the facts of that case, what you had there was a
18 truck driving in Arizona with Florida plates.
19         THE COURT:  I understand the case, you know, and
20 there was currency hidden in the car that was sniffed out by
21 a dog.
22         MR. LEE:  Right.  And one of the things that the
23 government made a point about was that there was a lot of
24 air freshner smell in that truck and then furthermore what
25 they had there --

```
1                THE COURT:  Fabreze.
2                MR. LEE:  Yeah.  (Laughing.)
3                And the agent testified that people who smell the
4    drugs tend to use a lot of air freshener.
5                And the other evidence they had was that there was
6    a DEA investigation going on in Miami and they thought they
7    had seen this truck there and they had maybe seen the driver
8    even.
9                But no one had been charged with anything, no one
10   had been convicted of anything, no one had been targeted
11   with anything in Miami.
12               And, furthermore, Your Honor, in that case the
13   government did not allege any evidence that there were
14   actually drugs in that truck.
15               They didn't find any drugs in that truck.  There
16   was no allegations of any sales by that driver of any
17   narcotics or any kind of illegal contraband.
18               THE COURT:  I think there's more specificity there
19   than there is here, though.
20               MR. LEE:  But -- well, Your Honor --
21               THE COURT:  In other words, here what you
22   basically are saying is that you have an individual who's
23   the son of the president of this country and he's spending a
24   lot of money and that, in the Department of Justice's
25   opinion, the leaders of the country are using their position
```

```
 1   of power to amass a fortune.
 2            Well, okay.
 3            MR. LEE:  Well, Your Honor, that's correct.  But,
 4   Your Honor, what the Complaint also alleges; and at this
 5   point the issue I do agree with on the tentative is the
 6   government has alleged specifically the financial
 7   transactions that are at issue in this case.
 8            So we've identified --
 9            THE COURT:  This is what I'd like and I've
10   indicated this in my tentative.  I mean, I'm giving you guys
11   a chance to amend because I think that, you know, possibly
12   it can be amended; and all I'm really asking for is more
13   specificity to indicate that these funds that are the
14   subject of a lot of the in detail spending.
15            It's kind of like a, I guess, a spender's porno
16   what your Complaint winds up being.  Is that it's -- if you
17   can tie in the source -- I mean, even though I understand
18   you don't have to tie in per se to show exactly, but I mean
19   the problem is that the stuff here is so general, you know.
20            You're saying that, you know, you believe that the
21   son of this president is, you know, basically using monies
22   that have somehow been illegally obtained by his father and
23   his father's cronies to make all these purchases for
24   himself.
25            I can understand the theory.  I just want a little
```

1   bit more in terms of the exposition.  For example, I would
2   like a copy of a translated version of those laws of
3   Equatorial Guinea that you're claiming are being violated.
4   That's one.
5           Because even though you say that, you know, it's
6   historically been some sort of, you know, Spanish law, you
7   don't give me the Spanish law either.
8           You just say -- you give me cites, you give me the
9   sections and I don't understand what -- what the, you know,
10  law is that is violated.
11          Also, there's a lot of just general discussion
12  about the -- what you refer to as the -- what's the language
13  that you use?  The "Inner Circle"?
14          Is the claimant a member of the inner circle or is
15  he just the son of a member of the inner circle?
16          MR. LEE:  The Complaint alleges that Minister
17  Nguema is a member of that inner circle, Your Honor.
18          THE COURT:  Well, not really.  I mean, I guess
19  inferentially you can probably say that; but it doesn't
20  really say "He is a member of the inner circle," et cetera,
21  so, you know.
22          Also, before I -- I'd also be curious.  For
23  example, a lot of these, you know, American companies are
24  doing business apparently in Equatorial Guinea.
25          Has any -- whatchacallit, you know -- Foreign

```
 1  Corruption Practices Act been filed against any of these --
 2  like, for example, any of the American oil companies that
 3  are involved in these situations?
 4          MR. LEE:  Umm --
 5          THE COURT:  I -- just out of curiosity.  Inquiring
 6  minds want to know.
 7          MR. LEE:  Yeah, I will doublecheck that.  I will
 8  doublecheck that, Your Honor.  My tentative answer to you is
 9  I don't think they have but I can doublecheck that, Your
10  Honor.
11          THE COURT:  All right.  I'm just saying that, you
12  know, again, because of the fact that we are alleged or you,
13  not we, but the government is alleging specific corrupt
14  practices by a foreign government official, I would want
15  something more specific than what you've given me.
16          MR. LEE:  Okay.
17          THE COURT:  Yes.
18          MR. LYONS:  If I may, Your Honor, and I'll be
19  very, very brief with my comments.
20          We understand that you intend to give plaintiff's
21  leave to amend and that's fine.  I would direct the court's
22  attention, if I may, to the case that counsel cited which is
23  *U.S. v. $493,850* which makes it very clear that the
24  Complaint can only include evidence acquired at the time of
25  the filing of the Complaint.
```

1          I'm quoting:  The requirement in -- our holding in
2    *191,910* that the government may not use after-acquired
3    evidence to establish probable cause to institute a
4    forfeiture action.
5          The CAFRA requirement requires the use of
6    after-acquired evidence in satisfying the government's
7    burden of proof at trial to prove entitlement to the
8    property.  Such evidence will include evidence gathered at
9    all stages in litigation.
10         The requirement in *U.S. v. $191,910* refers to the
11   use of after-acquired evidence in satisfying the
12   government's lesser burden needed to get in the courthouse.
13         Such evidence will include only evidence gathered
14   up until the Complaint was filed.
15         And so the law is very clear, Your Honor, that the
16   government can go out and they can further their
17   investigation to prove up the facts that they need to
18   satisfy the preponderance of the evidence standard at trial.
19         THE COURT:  That's something that -- that's
20   something that bothers me about the Ninth Circuit decision
21   in that case because that language does seem to me to be in
22   conflict with the -- I always think of the word CAFRA.  But
23   it's not CAFRA.
24         MR. LYONS:  It's CAFRA, Your Honor.
25         THE COURT:  Is it CAFRA?

```
 1               MR. LYONS:  Yeah.
 2               THE COURT:  What am I thinking of?  Because the
 3    other one was the class action.  Is that also CAFA?  I guess
 4    CAFA versus CAFRA.  And this is CAFRA.  Okay.  In CAFRA with
 5    an R.
 6               That language from the Ninth Circuit does seem to
 7    me to be totally inconsistent with CAFRA because CAFRA says
 8    you're not allowed to dismiss and so it's kind of like sort
 9    of strange.  I mean -- well, but then again, what the Ninth
10    Circuit said is what the Ninth Circuit said.
11               MR. LYONS:  I can address that concern, Your
12    Honor, because I do think it has relevance for where we are
13    in the proceedings.
14               THE COURT:  But let me just stop you.  I think
15    both sides understand that I'm giving them leave to amend.
16    Now you're cautioning them about something which they may --
17    may or may not come up.
18               But, you know, if they throw in something that you
19    say is stuff that was acquired after the filing of this
20    action, well then I'll have to make a ruling.
21               MR. LYONS:  Okay.
22               THE COURT:  But I think they understand your
23    position.
24               MR. LYONS:  Okay; that's fine.
25               THE COURT:  I'm not necessarily agreeing with your
```

1  position one way or the other, I'm just saying that it seems
2  to me that this is something that, again, this is where the
3  Ninth Circuit has said something and I don't quite
4  understand how it got there.  Well, I kind of understand how
5  it got there.  I just don't know if it's right.
6            MR. LYONS:  I do think, Your Honor, with regard to
7  the latter point -- and I'll submit the matter -- but the
8  issue that I think the court identified is that the standard
9  at trial is preponderance of the evidence; and I don't think
10 the government disputes that it's a preponderance of the
11 evidence standard at trial.
12           The question is:  What is the quantum of proof or
13 the sufficiency of the allegations at the pleading stage?
14 And at the pleading stage, it's probable cause; and I don't
15 think there's any dispute that they contend that it's not
16 probable cause at the pleading stage.
17           The reference that the court made to not
18 dismissing a case simply refers to the practical distinction
19 that you can use evidence at the time of the filing of the
20 Complaint to prove probable cause and you can't dismiss the
21 case if the government can't prove that the property is to
22 be forfeited.
23           THE COURT:  You're making my head spin.  Because
24 -- and this is precisely the problem.  This is why the Ninth
25 Circuit decision is kind of, you know, crazy because, I

1  mean, you know, I understand a little garbley language.
2          But it somehow is not entirely clear, but it may
3  be irrelevant in this regard.  We'll see how they amend
4  because I do think that more needs to be pled.
5          MR. LYONS:  And one last point, Your Honor, with
6  regard to that.  I understand it's their case.  I'm not
7  going to tell them how to plead their case.
8          THE COURT:  They might want your advice.
9                    *(Laughter.)*
10         MR. LYONS:  I mean, we do have a number of
11 completely irrelevant allegations about people other than
12 the minister.
13         THE COURT:  Yes.
14         MR. LYONS:  And I think, you know, it might be
15 appropriate and we would, you know, depending upon what the
16 amended pleading looks like, we will move to strike those
17 allegations that don't relate to our client because you
18 can't bring this case and say he's a member of the inner
19 circle.  These members of the inner circle committed these
20 crimes and not identify any criminal activity by our
21 claimant.
22         THE COURT:  I understand that.  Also, let me just
23 ask this -- and this is just -- you don't have to answer
24 this if you don't want to, but I'm just curious.
25         What's the relationship between the Department of

1  Justice and the State Department insofar as these types of
2  situations are concerned?
3           Because, in essence, you know, what this case is
4  attempting to do is to state that the current leadership of
5  this particular country is monumentally corrupt; and yet I
6  think that we still have diplomatic relationships with this
7  particular country and there's I think, attempts to
8  encourage from, you know, like the State Department, this
9  government to do certain things.
10          Does the State Department have any, you know, any
11 say or anything like that insofar as this particular type of
12 litigation is concerned?
13          MR. LEE:  Well, Your Honor, so we filed a status
14 report back in July, Your Honor, where the United States
15 Government and the State Department as well as the
16 Department of Justice have both had this longstanding policy
17 of fighting against what is the so-called kleptocracies of
18 the world.
19          And in this particular case, Your Honor, I have --
20 at least as the counsel on this case -- I have not heard any
21 objection from the State Department; and, Your Honor,
22 furthermore, in these 1956 money laundering cases where the
23 offense is a foreign predicate, Your Honor, there's a
24 violation of Equatorial Guinea law being alleged here, Your
25 Honor, so there's no interference --

```
 1              THE COURT:  Let me stop.
 2              Assuming these items are forfeited -- and I
 3   presume that they're sold -- does the money go to Equatorial
 4   Guinea?  And, if so, to whom there?  Or does the money stay
 5   here in the United States with our government?
 6              MR. LEE:  It's an interesting question, Your
 7   Honor.  I don't know the specific answer to that question,
 8   what the --
 9              THE COURT:  It could be somewhat ironic if we do
10   forfeit it and then it goes back to Equatorial New Guinea
11   and it goes back to the same people.
12              MR. LEE:  So what's been the stated objective of
13   the Kleptocracy Initiative has been to obtain these proceeds
14   that the government is alleging is ill-gotten and to use it
15   for the benefit of the people who it should have been used
16   for in the first place, Your Honor.
17              In terms of the best way and the best policy way
18   to get that done, I think there's going to have to be some
19   thought given to that, Your Honor.
20              THE COURT:  Oh, okay.
21              Yes.
22              MR. LYONS:  Your Honor, how much time should you
23   allow?
24              THE COURT:  How much time do you need?
25              MR. LEE:  Your Honor, given some of the issues
```

1  that you raised as well a lot of the documents are in
2  Spanish, a lot of the evidence is overseas, it's a complex
3  case.  Your Honor, if we could beg the court's indulgence,
4  60 days?
5              THE COURT:  That's fine.  I presume there's no
6  objection to 60 days?
7              MR. LYONS:  No objection, Your Honor.
8              THE COURT:  Okay.  So just to put a date on it,
9  let's say that the Amended Complaint would be filed on or
10  before June 11th.
11             MR. LEE:  June 11th.
12             THE COURT:  Okay?
13             MR. LYONS:  Thank you, Your Honor.
14             THE COURT:  Thank you.  Have a nice day.
15          *(At 9:37 a.m. proceedings were concluded.)*
16
17                          -oOo-

# CERTIFICATE

I, PAT CUNEO, CSR 1600, hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: April 13, 2012

/s/ PAT CUNEO

PAT CUNEO, OFFICIAL REPORTER
CSR NO. 1600