# Exhibit

# 11

REQUESTED BY: MANZANARES, ROBERTO

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| REPORT OF INVESTIGATION | PAGE 1 |
| | CASE NUMBER MI02PR07MI0018 |

| TITLE: TEODORO NGUEMA OBIANG, ET. AL OFFICIALS EQUATORIAL GUINEA |
|---|

| CASE STATUS: | INTERIM RPT | | |
|---|---|---|---|
| REPORT DATE 081712 | DATE ASSIGNED 111506 | PROGRAM CODE YA1 | REPORT NO. 088 |

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INITIAL SOURCE DOCUMENT/ INVESTIGATIVE FINDINGS

TOPIC: INTERVIEW OF ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

SYNOPSIS:
November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry into the financial activities of Minister Teodoro Nguema OBIANG (Minister OBIANG). It is alleged that Minister OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. Minister OBIANG is currently the Minister of Agriculture and Forestry in EG.

HSI is investigating Minister OBIANG for money laundering statutes. OBIANG purchased a mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased an aircraft for $38 million dollars. Minister OBIANG asserts his wealth is the result of his private businesses which are involved in lumber and road construction. EG officials are purportedly permitted to engage in private businesses and authorized to have government contracts as long as the official isn't involved in the "day to day" operations of management of the business.

| DISTRIBUTION: SACMI | SIGNATURE: MANZANARES | ROBERTO | SPECIAL AGENT |
|---|---|---|---|
| | APPROVED: RUTHERFORD | ROBERT N | OI GRP SUPERVISOR |
| | ORIGIN OFFICE: MI MIAMI, FL - SAC | TELEPHONE: 305 597 6000 | |
| | | TYPIST: MANZANARES | |

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0012543

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>REPORT OF INVESTIGATION<br>CONTINUATION | PAGE   2 |
|---|---|
| | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 088 |

CASE PROGRAM CODES:

YA1 Financial Other/Corn    7H0 FOREIGN CORRUPTION    2FJ SHELL CORPORATIONS

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

Case 2:11-cv-03582-GW-SS   Document 86-13   Filed 05/03/13   Page 4 of 7   Page ID #:2072

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>REPORT OF INVESTIGATION<br>CONTINUATION | PAGE 3 |
|---|---|
| | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 088 |

DETAILS OF INVESTIGATION:

On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry into the financial activities of Teodoro Nguema OBIANG (OBIANG). It is alleged that OBIANG is diverting funds owned by the government of Equatorial Guinea (EG) for personal use. OBIANG is currently the Second Vice President of EG. From approximately 1998-May 2012, OBIANG was EG's Minister of Forestry and Agriculture. OBIANG is the son of the President of EG.

HSI is investigating OBIANG for violations of money laundering and bank fraud statutes. OBIANG purchased a mansion valued at $30 million and a Gulfstream aircraft for $38 million despite having a reported government salary of $60,000 annually. OBIANG asserts his wealth is the result of his private lumber and road-construction businesses. In EG officials are permitted to own private businesses that can perform government contracts as long as the official isn?t actively involved in the "day to day" operations or management of the business.

On June 1, 2012, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was re-interviewed at ▓ residence located in the ▓▓▓▓▓▓▓▓ neighborhood of Los Angeles, California by HSI special agent, Robert Manzanares and U.S. Department of Justice, (DOJ) Criminal Division Asset Forfeiture & Money Laundering attorney, Stephen Gibbons. ▓▓▓▓▓ was previously interviewed on May 22, 2012.

At the outset of the interview, ▓▓▓▓▓ was reminded of the general details of the case against OBIANG'S assets, including that the U.S. government has filed two separate civil forfeiture actions alleging that the assets owned by OBIANG were purchased using money he obtained illegally. After being apprised of the case and nature of the continuing investigation, ▓▓▓▓▓ agreed to speak with investigators voluntarily.

▓▓▓▓▓ is a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ▓ currently ▓▓▓▓▓▓▓▓▓▓▓ in Beverly Hills, California. Beginning in ▓▓▓, ▓▓▓▓▓▓▓▓▓▓▓OBIANG's estate located on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in Malibu, California. ▓ remained employed by OBIANG until ▓▓ when ▓ was abruptly terminated.

▓▓▓▓▓ explained that in approximately ▓▓▓▓▓▓▓▓, ▓ was specially asked by OBIANG to open a series of accounts at banks in Malibu, California. ▓▓▓▓▓ was asked if this request was made of ▓ by a third party, in an e-mail, or during a telephone conversation. ▓▓▓▓▓ responded that ▓ had a face-to-face meeting with OBIANG during which OBIANG directed ▓▓ to open the bank accounts. OBIANG told ▓▓▓▓▓ that the reason OBIANG needed ▓▓▓▓▓ to open these accounts was because the banks would immediately close the

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0012545

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE  4 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 088 |

accounts down if OBIANG tried to open them. OBIANG made a statement along the lines of "If the bank sees my name on the accounts, they will close them." ▓▓▓ insists that if ▓ had refused to open the bank accounts, OBIANG would have terminated ▓. ▓▓▓ stated "I know I was wrong, but if I did not do it, I would be fired."

▓▓▓ then opened bank accounts with Wells Fargo, US Bank, and Bank of America for a Limited Liability Corporation (LLC) MECAFIS in March of 2008. ▓▓▓ opened a bank account in ▓▓▓ at Wachovia. ▓▓▓ used ▓ name, social security number, and other personal information to open and become the signatory on the accounts. The initial deposits were provided to ▓ by OBIANG in cash. These accounts were used to pay the household expenses for OBIANG's Malibu property. All the expense was paid by attorney, Michael BERGER. Additionally, OBIANG required ▓▓▓ to become the President of an existing Limited Liability Corporation (LLC), BEAUTIFUL VISION. ▓▓▓ claims that OBIANG was interested in making a movie and promised ▓▓▓ a 10% share in the company's revenue.

▓▓▓ contends that in nearly 20 years of being an ▓▓▓, no other employer ever asked him to open bank accounts or start companies. ▓▓▓ felt that OBIANG's request was unprofessional and beyond the scope of ▓ employment as an ▓▓▓. When asked how estate expenses are normally handled, ▓ explained that in most cases, ▓ employer forms a company to manage the property and issues a credit card or some other payment mechanism from that company to ▓▓▓ which ▓▓▓ uses to pay for household expenses.

▓▓▓ recalled a wire transfer of $450,000 from EG to one of the accounts ▓ opened to pay the property taxes for the house. ▓▓▓ would routinely fax invoices to OBIANG for expenses that needed to be paid. OBIANG would sign the invoice and return it to ▓▓▓ so that either ▓ or BERGER would pay with a check from the bank accounts that ▓▓▓ was required to open. ▓▓▓ recalled an incident in or around mid-2008 when OBIANG did not have sufficient funds in the payroll account to pay the household staff. ▓▓▓ claims that OBIANG paid ▓ in cash.

▓▓▓ stated he was unaware of how OBIANG acquired his wealth. To ▓▓▓ knowledge, OBIANG never conducted any official business as the Minister of Forestry and Agriculture while in the United States. When asked whether OBIANG kept cash on hand, ▓▓▓ stated that ▓ did and cited an instance where he saw OBIANG with at least $10,000 cash in each of his pants pockets.

At one point, a woman named Scarlet CARTER was OBIANG's personal assistant. CARTER was terminated after an incident in Las Vegas. While ▓▓▓ was unaware of the details, he believes that her termination related to an allegation of sexual harassment by CARTER against OBIANG. According to

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE 5 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 088 |

███████, CARTER sued OBIANG but ██████ was unaware of the outcome of the lawsuit.

Wanda KELLEY was hired after CARTER was terminated. ██████ had a poor working relationship with KELLEY due, in part, to the fact that she convinced OBIANG to cut household expenses making it more difficult for ██████ to properly ██████ the estate. ██████ stated that during a 3-year period, OBIANG had over 7 personal assistants.

OBIANG did not use email to communicate with ██████. OBIANG would normally contact ██████ directly when he was not on the premises. While ██████ was the ██████████, Jim Williams and FNU Surman were in charge of estate security. There were two other individuals named Eddie and Louie LOPEZ who ██████ believed were LAPD officers. When asked why ● believed this, ██████ replied "?they told me so."? While on the premises, their firearms were always exposed although ██████ does not recall seeing their badges. There was another person named Ruben ORNELAS who the leader of the security team and worked for Orange County PD.

██████ stated that OBIANG would come into the US about every 3 months and would always arrive with a large amount of cash in his private aircraft (i.e., more than $10,000 at a time). The aircraft was managed by a Swiss company which provided the pilots and flight crew. The pilots usually stayed at the Marriott in Burbank or Topanga Canyon. The flight crew would return to Switzerland by commercial airlines unless they were taking OBIANG to another location. Emmanuel ASAMOHA was an EG national and was OBIANG's security director. ● would often accompany OBIANG on the aircraft.

██████ verified that Sula Symonds (whose name appears on banking documents) was OBIANG's girlfriend at one point. ██████ also recalled Sue Ellen EVERRETT as another personal assistant. ██████ recalled that at some point, EVERRETT went to Las Vegas, Nevada to bid on Michael Jackson memorabilia at auction. ██████ did not know what, if anything, was purchased.

In late-2010, ██████ personally approached OBIANG and told OBIANG that ● wanted ● name removed from the OBIANG-related bank accounts and corporations. OBIANG had no reaction to this other than to direct ██████ to handle it through KELLEY. ██████ visited the banks with KELLEY where ● name was removed from the accounts and KELLEY's was added. Two to three weeks later, ██████ was notified that ● had been terminated when ● arrived for work at the security gate of the Malibu property and was turned away. ██████ believes that ● firing was a direct result of his act of removing ● name from the bank account and corporate-formation documents.

██████ had in his possession numerous documents that he kept from his time

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.
DOJ_0012547

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 6 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 088 |

managing the OBIANG estate. These documents include information relating to the bank accounts and corporations that OBIANG directed ▓▓▓▓ open, as well as records of general household expenses. ▓▓▓▓ agreed to allow investigators to take most of ▓ records to make copies and return back to ▓.

▓▓▓▓ indicated to investigators that ▓ had executed some type of non-disclosure or confidentially agreement when working for Obiang. ▓ was not asked for, nor did ▓ provide a copy of the agreement to the investigators, but did state that ▓ understanding of the agreement was that it prohibited the disclosure of certain information to the "media." ▓▓▓▓ also stated he was providing the information and documents to the investigators because they were law enforcement officers conducting an official investigation.

The interview was conducted in English, although it is clear that English is not ▓▓▓▓ first language.

Investigation continues.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0012548