# Exhibit

# 28

REQUESTED BY: MORRISEY, DEBORAH

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N | PAGE   1 |
| | CASE NUMBER MI02PR07MI0018 |

TITLE: TEODORO NGUEMA OBIANG, ET. AL OFFICIALS EQUATORIAL GUINEA

CASE STATUS:    INTERIM RPT

| REPORT DATE | DATE ASSIGNED | PROGRAM CODE | REPORT NO. |
|---|---|---|---|
| 060711 | 111506 | YA1 | 048 |

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INITIAL SOURCE DOCUMENT/   INVESTIGATIVE FINDINGS

TOPIC: INTERVIEW OF STEPHEN FULLER

SYNOPSIS:
On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry regarding the financial activities of Teodoro Nguema OBIANG (OBIANG). It is alleged that OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use.  OBIANG is currently the Minister of Agriculture and Forestry in EG and is the son of the dictator.

HSI is investigating OBIANG for violation of money laundering statutes. OBIANG purchased a Beverly Hills mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased a Gulfstream aircraft for $35 million dollars. On April 20, 2011, Special Agent Robert Manzanares and Janet Hudson of the Asset Forfeiture and Money Laundering Section, Department of Justice, Criminal Division telephonically interviewed Stephen A. FULLER.

| DISTRIBUTION: SACMI | SIGNATURE: _____ MANZANARES    ROBERTO    SPECIAL AGENT |
|---|---|
| | APPROVED: _____ RUTHERFORD    ROBERT    N  OI GRP SUPERVISOR |
| | ORIGIN OFFICE: MI MIAMI, FL - SAC / TELEPHONE: 305 597 6000 / TYPIST: MANZANARES |

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br>REPORT OF INVESTIGATION<br>CONTINUATION | PAGE   2 |
|---|---|
| | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 048 |

CASE PROGRAM CODES:

YA1 Financial Other/Corn   7H0 FOREIGN CORRUPTION

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br>REPORT OF INVESTIGATION<br>CONTINUATION | PAGE  3 |
|---|---|
| | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 048 |

DETAILS OF INVESTIGATION:
On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry regarding the financial activities of Teodoro Nguema OBIANG (OBIANG). It is alleged that OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. OBIANG is currently the Minister of Agriculture and Forestry in EG and is the son of the dictator.

HSI is investigating OBIANG for violation of money laundering statutes. OBIANG purchased a Beverly Hills mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased a Gulfstream aircraft for $35 million dollars.

On April 20, 2011, Special Agent Robert Manzanares and Janet Hudson of the Asset Forfeiture Money Laundering Section, Department of Justice, Criminal Division telephonically interviewed Stephen A. FULLER. Additionally, FULLER attorney, Holly PIERSON also participated in the interview.

FULLER was formally employed with GULFTSREAM AEROSPACE CORPORATION for over 33 years. Prior to his retirement, FULLER held the position of the Regional Vice President for Sub-Saharan Africa for International Sales Division.

FULLER indicated that he recalled being interviewed by the FBI in December 2004 about his role in selling a GULFTSREAM aircraft to OBIANG. FULLER insisted he could not recall everything that was asked during that interview, but he would do his best in answering our questions to the best of his recollection.

FULLER claims he first met the President of Equatorial Guinea (EG) sometime in 2003 at a corporate council meeting in Washington D.C. During this time period, the President of EG had a Falcon Jet. FULLER attempted to determine if the President had an interest in purchasing a GULFSTREAM aircraft.

Shorty after this meeting, FULLER began to conducted an internet search of the EG government to determine if the sale of an aircraft would present a legal issue to his company. FULLER did not find anything that would prohibit GULSTREAM from pursuing any potential sale. FULLER did express his concerned as to where money would be coming from, but it would not be unusual if it was from a government transaction.

FULLER recalled receiving a telephone call from OBIANG about purchasing a GULFSTEAM aircraft and subsequently had a meeting at the BRISTOL HOTEL in Paris, France in the beginning of 2004. The meeting lasted for approximately one hour however, there was no formal contract signed.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 048 |

After the meeting in Paris FULLER returned to the United States and several weeks later received a telephone call from OBIANG at 2:00am. OBAING was in Los Angeles, California and insisted to meet with FULLER and GULFSTREAM the next day at their corporate office in Savannah, Georgia. FULLER recalls that OBIANG chartered a private aircraft and arrived the next day as planned. FULLER and the Senior Vice President met with OBIANG and negotiated the sales price of $40 million.

FULLER recalled that OBIANG wrote out a check for $500,000.00 which was written on a bank account from RIGGS bank in Washington D.C. FULLER claimed that for some unknown reason the check was returned. FULLER immediately contacted OBIANG about the returned check and OBIANG claimed that his father (President of EG) had a falling out with officials at RIGGS Bank and would wire the money to GLUFSTREAM's finical institution.

Subsequent to the meeting at GULFSTEAM, FULLER and his interior designed team met with OBIANG in South Africa. FULLER insisted that he was proactively attempting to complete the sale of this aircraft during the first quarter of 2004. FULLER claimed that the deal was broken down by installation payments and upon execution of the contract GULFSTREAM would be paid $9.5 million dollars. FULLER could not recall if there was conversation about the installation of a shower in the aircraft.

When OBAING failed to make his first installation payment he called OBAING an inquired about the money. OBAING insisted that they (GULFSTREAM) would get the money soon. On or about May 5, 2004, FULLER travelled to Malabo, EG from Zurich and met with OBIANG concerning the delinquent payment. OBAING stated to FULLER, "I will get you paid." GULFSTREAM was subsequently paid by way of a wire transfer.

FULLER was asked if he recalled telling the FBI in his December 2004, interview that OBIANG suggested to him that an American oil company could pay GULFSTREAM for the aircraft and he (OBIANG) would repay the company. Or another option that was floated by OBIANG was to assign the aircraft contact to an American oil company. FULLER claimed he did not recollect this particular part of the interview, but he insisted that it did not mean it did not occur. FULLER claims he just did not recall it. FULLER acknowledge that he recalled that the interviewing agent showed him a document from OBIANG'S attorney, Francois MEYER concerning a company named OCEAN ENGERY.

FULLER claimed that GLUFSTREAM'S General Counsel was very concerned about this pending deal and despite receiving letters from the Department of Justice (DOJ) reassuring GULFSTREAM that they did not have any criminal exposure, the deal fell apart.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE   5 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 048 |

OBIANG was very angry with GULFSTREAM since they received letters from DOJ indicating that they had no objection to this transaction.

In 2007 FULLER decided to retire from GULFSTREAM and start up his own company brokering aircraft deals. FULLER last saw OBIANG in Los Angeles, California in the spring of 2008 or 2009. Thereafter, FULLER admitted that he subsequently contacted OBIANG and offered to sell him a GULFSTREAM 650. FULLER claimed that OBIANG was extremely interested and met with OBIANG in California. FULLER attempted to broker a deal for a GULFSTREAM 650 for which FULLER was to receive a fee of $250,000.00 dollars. However, the deal fell through and according to FULLER, OBIANG "stiffed him" and thereafter tried to purchase the aircraft from GULFSTREAM.

In early 2011, FULLER emailed OBIANG and submitted a proposal to purchase a GULFSTREAM 650 aircraft for $66 million dollars with an expected delivery date for 2014. FULLER claims he did not received a response from his email until eight to ten weeks later. FULLER is scheduled to meet with OBIANG in Nassau, Bahamas on April 22, 2011.

Investigation continues.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.