# Exhibit

# 29

REQUESTED BY: MANZANARES, ROBERTO

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| REPORT OF INVESTIGATION | PAGE 1 |
| | CASE NUMBER MI02PR07MI0018 |

TITLE: TEODORO NGUEMA OBIANG, ET. AL OFFICIALS EQUATORIAL GUINEA

CASE STATUS: INTERIM RPT

| REPORT DATE | DATE ASSIGNED | PROGRAM CODE | REPORT NO. |
|---|---|---|---|
| 082411 | 111506 | YA1 | 058 |

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INITIAL SOURCE DOCUMENT/ INVESTIGATIVE FINDINGS
COMPUTER FORENSICS INFO

TOPIC: INTERVIEW OF STEPHEN A. FULLER

SYNOPSIS:

On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry regarding the financial activities of Minister Teodoro Nguema OBIANG (Minister OBIANG). It is alleged that Minister OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. Minister OBIANG is currently the Minister of Agriculture and Forestry in EG and is the son of the dictator.

HSI is investigating Minister OBIANG for violation of money laundering statutes. OBIANG purchased a Beverly Hills mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased a Gulfstream aircraft for $35 million dollars. On June 17, 2011, Stephen A. FULLER was interviewed by HSI agent, Timothy Kester and U.S. Department of Justice, Criminal Division Asset Forfeiture & Money Laundering attorney, Janet Hudson.

| DISTRIBUTION: | SIGNATURE: | | |
|---|---|---|---|
| SACMI | MANZANARES | ROBERTO | SPECIAL AGENT |
| | APPROVED: RUTHERFORD | ROBERT N | OI GRP SUPERVISOR |
| | ORIGIN OFFICE: MI MIAMI, FL - SAC | TELEPHONE: 305 597 6000 | |
| | | TYPIST: MANZANARES | |

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>REPORT OF INVESTIGATION<br>CONTINUATION | PAGE 2 |
|---|---|
| | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 058 |

CASE PROGRAM CODES:

YA1 Financial Other/Corn   7H0 FOREIGN CORRUPTION

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE 3 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 058 |

DETAILS OF INVESTIGATION:

On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry regarding the financial activities of Minister Teodoro Nguema OBIANG (Minister OBIANG). It is alleged that Minister OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. Minister OBIANG is currently the Minister of Agriculture and Forestry in EG and is the son of the dictator.

HSI is investigating Minister OBIANG for violation of money laundering statutes. OBIANG purchased a Beverly Hills mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased a Gulfstream aircraft for $35 million dollars. Minister OBIANG asserts his wealth is the result of his private businesses which are involved in lumber and road construction. In EG officials are permitted to engage in private businesses and authorized to have government contracts as long as the official involved isn't actively involved in the "day to day" operations or management of the business.

After being apprised of the nature of the investigation, FULLER agreed to be interviewed in the presence of his counsel, Holly Pierson in Atlanta, Georgia.

FULLER was formally employed with GULFSTREAM AEROSPACE CORPORATION for over 33 years. Prior to his retirement, FULLER held the position of Regional Vice President for Sub-Saharan Africa for International Sales Division. During the interview FULLER provided the following information:

In 2004, OBIANG agreed to buy a GULFSTREAM 550 airplane. FULLER indicated that OBIANG had very exotic taste and wanted specific things in the airplane, like a shower. FULLER tried to talk OBIANG out of the shower because it was expensive and not practical. GULFSTREAM interior designers Dawn JENSEN and William GAY were at many of the meetings. A sales agreement was signed by OBIANG at the Bristol hotel in Paris at the end of March, 2004.

FULLER spoke to OBIANG in the early spring of 2011 about purchasing a GULFSTREAM G-650 aircraft. OBIANG informed FULLER he hadn't bought a plane yet and was still interested. OBIANG told FULLER he would be in Los Angeles and Washington, DC with his father in the spring, and would possibly set up a meeting to discuss buying an airplane. FULLER sent OBIANG a proposal but never heard from OBIANG, so there was no meeting in Los Angeles or Washington DC. Prior to the conversation in the early spring of 2011, FULLER hadn't heard from OBIANG since 2008.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0009143

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | PAGE    4 |
| --- | --- |
| | CASE NUMBER  MI02PR07MI0018 |
| | REPORT NUMBER: 058 |

FULLER met with OBIANG on Easter Sunday, 2011, in Nassau, Bahamas. OBIANG was a timid flyer and wanted to know details about a crash that the G-650 had during a test flight. OBIANG told FULLER he was no longer interested in buying a G-650 because of the crash.

The last time FULLER spoke to OBIANG was two weeks after their Easter meeting. OBIANG called FULLER seeking details of what caused the crash of the G-650. FULLER subsequently e-mailed OBIANG to let him know that he would be in Paris on June 18-24, 2011 in case OBIANG wanted to meet.

FULLER was shown an FBI 302 documenting an interview he did with the FBI in 2004 regarding Teodoro OBIANG and his dealings with FULLER and GULFSTREAM. FULLER and his attorney, Holly Pierson, both read the 302. FULLER stated that everything in the 302 seemed accurate and that the FBI Agents did a thorough job interviewing and taking notes.

FULLER was shown a copy of a $500,000 check from Riggs bank that was referenced in the FBI 302. FULLER confirmed that that was the check OBIANG gave as a deposit for the G-550 and that the check was returned for lack of funds. FULLER was also shown documents from a wire transfer from OBIANG to GULFSTREAM for $500,000. FULLER indicated that he knew GULFSTREAM had been paid the $500,000 by wire transfer so he assumed that was the specific transfer.

FULLER was shown a letter from GULFSTREAM to OBIANG?S lawyer, Francois MEYER concerning GULFSTREAM being paid by OBIANG. FULLER stated this letter did nothing to get GULFSTREAM paid. FULLER pressured OBIANG to pay by saying his order would slip if he did not pay in a timely manner because there was a strong market for GULFSTREAM?S aircrafts. FULLER made OBIANG understand that he was no better than any other GULFSTREAM clients.

Before the sale, FULLER had no conversations about how GULFSTREAM would be paid. FULLER thought OBIANG had plenty of money.

GULFSTREAM attorneys were adamant that the US oil company OCEAN ENERGY would not be allowed to pay for the airplane. FULLER called the General Counsel at GULFSTREAM for consultation in the matter and he assumes that he talked to Ira BERMAN, who FULLER believes still works at GULFSTREAM. FULLER received no indication that OBIANG had used an American company to make payments for anything before and didn?t know if anyone contacted OCEAN ENERGY concerning this matter.

OBIANG told FULLER he would have to go to Equatorial Guinea to get the rest of the $10,000,000 owed to GULFSTREAM, which was what FULLER believed to be a stall tactic. On May 5, 2004, FULLER traveled to Malabo, Equatorial Guinea

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0009144

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 5 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 058 |

for one day. This was his only trip to Equatorial Guinea. At this time GULFSTREAM received the balance of the $10,000,000 payment from OBIANG.

Eventually GULFSTREAM lawyers called FULLER to inform him they were cancelling the sales agreement with OBIANG and that he was not to contact OBIANG or his people or he would be fired. OBIANG was refunded the $10,000,000. OBIANG and Francois MEYER were irate.

While employed at GULFSTREAM, FULLER was later involved in a potential deal with OBIANG after receiving written permission from the United States Department of Justice. GULFSTREAM added $500,000 to the original price of the plane and slipped OBIANG?S position but OBIANG still agreed to buy the plane. OBIANG ended up buying a used GULFSTREAM aircraft from someone else and terminating the deal with FULLER.

FULLER has never mentioned to OBIANG that he has been in contact with the US Government.

FULLER stated that OBIANG often uses his second last name of NGUEYME to keep a low profile.

FULLER provided the following contact information for OBIANG. An E-mail address (he has used since 2003) and a telephone number with a Los Angeles area code:

- TEONO@SBCGlobal.NET.
- (310)-795-1440.

Investigation continues.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.