# Exhibit

# 30

REQUESTED BY: MANZANARES, ROBERTO
OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| REPORT OF INVESTIGATION | PAGE 1 |
| | CASE NUMBER MI02PR07MI0018 |

TITLE: TEODORO NGUEMA OBIANG, ET. AL OFFICIALS EQUATORIAL GUINEA

CASE STATUS: INTERIM RPT

| REPORT DATE | DATE ASSIGNED | PROGRAM CODE | REPORT NO. |
|---|---|---|---|
| 110711 | 111506 | 2FJ | 071 |

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INITIAL SOURCE DOCUMENT/ INVESTIGATIVE FINDINGS

TOPIC: INTERVIEW OF ▓▓▓▓▓▓▓▓▓

SYNOPSIS:
On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated an investgation regarding the 1 activities of Minister Teodoro Nguema OBIANG (Minister OBIANG). It's alleged that Minister OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. Minister OBIANG is currently the Minister of Agriculture and Forestry in EG and is the son of the dictator.

HSI is investigating Minister OBIANG for money laundering. OBIANG purchased a Beverly Hills mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased a Gulfstream aircraft for $35 million dollars. , October 6, 2011, ▓▓▓▓ was interviewed telephonically by HSI agent Robert Manzanares and U.S. Department of Justice, Criminal Division Asset Forfeiture & Money Laundering attorney, Woo Lee

| DISTRIBUTION: | SIGNATURE: | | |
|---|---|---|---|
| SACMI | MANZANARES   ROBERTO   SPECIAL AGENT | | |
| | APPROVED: RUTHERFORD   ROBERT   N   OI GRP SUPERVISOR | | |
| | ORIGIN OFFICE: MI MIAMI, FL - SAC | TELEPHONE: 305 597 6000 | |
| | | TYPIST: MANZANARES | |

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0009207

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE   2 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 071 |

CASE PROGRAM CODES:

2FJ SHELL CORPORATIONS    7H0 FOREIGN CORRUPTION

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0009208

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 3 |
| --- | --- |
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 071 |

DETAILS OF INVESTIGATION:

On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry regarding the financial activities of Minister Teodoro Nguema OBIANG (Minister OBIANG). It is alleged that Minister OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. OBIANG is currently the Minister of Agriculture and Forestry in EG and is the son of the dictator.

HSI is investigating Minister OBIANG for violation of money laundering statutes. OBIANG purchased a Beverly Hills mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased a Gulfstream aircraft for $35 million dollars. Minister OBIANG asserts his wealth is the result of his private businesses which are involved in lumber and road construction. In EG officials are permitted to engage in private businesses and authorized to have government contracts as long as the official involved isn't actively involved in the "day to day" operations or management of the business.

On October 18, 21, 26, 2011, ▓▓▓▓ was interviewed telephonically by HSI special agent, Robert Manzanares and U.S. Department of Justice, Criminal Division Asset Forfeiture & Money Laundering attorney, Woo Lee.

After being apprised of the nature of the investigation, ▓▓▓▓ agreed to be interviewed after ▓▓ consulted with and received permission from ▓▓▓ former supervisor from the International Monetary Fund (IMF) during the October 18, 2011, interview. ▓▓▓▓ expressed his concerned that he wanted to ensure that ▓▓ was not violating material aspects of a confidentially agreement during the time period that ▓▓ engaged ▓▓ services to the IMF. Subsequently, a second telephonic interview was contacted on October 21, 2011. ▓▓▓ was hired as a fiscal policy expert for EG from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

▓▓▓▓ related that ▓▓ has a degree in Economics and has served as a deputy minister of finance and a macroeconomics advisor/governor for the central bank of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ▓▓▓▓ principal role in EG was to train, advise and teach personnel in EG about macroeconomics., make recommendations and respond to projects assigned to ▓▓ by of the Minister of Finance of EG. Although ▓▓ was hired by the IMF, ▓▓ pay was from the government of EG.

▓▓▓▓ related that after residing in EG for three to four months, ▓▓ noticed that most government officials, as well as the EG government itself, was

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0009209

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE   4 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 071 |

controlled by one tribe's namely, The Fangs. ▆▆ witnessed various celebrations of the tribe Fang family who were government officials during the general elections in EG. ▆▆▆ related that most senior government officials were Fang family members and well organized. These particular Fang family members addressed themselves as "brothers" and thought of each other as brothers. As brothers, they were treated differently than "outsiders" or those who were not members of the FANG. To illustrate this point, ▆▆▆ indicated that in 1981, a Fang member was accused of attempting to bring down the OBIANG regime but despite his wrong doing, and brief incarceration, he was subsequently appointed as Minister of Finance in EG. ▆▆▆ indicated that had this same person been an "outsider" the OBIANG regime would have killed him.

The current Minister of Finance of EG is Marcelino OWONO who was educated in Russia. OWONO believed that an effective economy was one that had fix prices on all goods and centralized services. These were the type of policies the EG government, according to this Minister, should be implementing. He believed in centralized, state-controlled macro and fiscal policy.

One of the fiscal policies that most troubled ▆▆▆ was that the Government of EG maintained multiple public treasury accounts at one time. Specifically, there were 6 general accounts that the treasury were operating under and 3 of the accounts were solely under President OBIANG's personal control. ▆▆▆ provided the following account numbers 43612, 43614, 43613, 41600, 41660 and 43603. Five of the six accounts were maintained at the BEAC the nation's central bank. Other than the three which were controlled by the President, the other two were controlled by the Treasurer. Most countries only have one state account and have someone from the Treasury or Central Bank as the signatory. The fact that the President served as the sole signatory on three of the five BEAC accounts was remarkable. In addition, one of the President's BEAC accounts was the oil account, where U.S. oil companies deposited the funds they owed to EG pursuant to PSCs. Transactions relating to this oil account were secret and ▆▆▆ was not permitted access to records relating to how the funds in this account were spent.

More troubling, was that one of the 6 accounts containing public funds was designated to and controlled by the Minister of Forestry (Minister OBIANG) under his own name. This account was not maintained at the BEAC. Instead, it was in a private commercial bank. This Forestry Account was controlled solely by Minister OBIANG. It contained money collected by the Forestry Ministry. These funds were never provided to the Minister of Finance, nor were they deposited in the public treasury's five accounts maintained at the BEAC. Like the oil account, ▆▆▆ was never allowed to access or review the banking records in this account. Additionally, ▆▆▆ claimed that all the revenue from EG's timber and logging exports was deposited into the Minister

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE 5 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 071 |

of Forestry account. ▓▓▓ claims that ▓▓ did not know how much was in this particular account. The person who had the knowledge and financial figures relating to all of the accounts was Florentino ENSES. ▓▓▓ claimed that ENSES was not a Fang tribe member or brother.

In addition to the six accounts maintained in EG (five accounts at the BEAC and the Forestry Ministry account at a private bank), ▓▓▓ explained that President OBIANG also maintained several accounts overseas. There were approximately $6 billion in these overseas accounts. All of the overseas accounts were held in the personal name of President OBIANG. He controlled all of these accounts and was the primary signatory on these accounts. ▓▓▓ insisted that all of these accounts contained government money but are listed as individual accounts of the President. After examining the fiscal policies and practices that were presented to ▓▓▓, ▓▓ contacted the IMF because there was no possible way to balance the multiple public accounts given the lack of transparency. When an IMF team under Janet STOTSKY arrived in EG to perform an Article 4 Consultation, the IMF team requested a formal national accounting and fiscal accounting be performed of all of EG's accounts. ▓▓▓ reviewed records that indicated the President OBIANG withdrew money from one of the accounts and those funds where then deposited into an account in France. ▓▓▓ claims that since President OBIANG retains control over the country?s finances giver his power in EG.

▓▓▓ did not examine the Minister of Forestry account but ▓▓ said that the IMF Article IV team led by STOTSKY demanded that they be given access to this account and its data. STOTSKY, as a result, saw the balance, as well as some additional information, relating to this account. ▓▓▓ claims that there was 2 billion U.S. dollars in the oil account (41660) at the BEAC and there was an additional 6 billion U.S. dollars in the name of the President of EG overseas. However, the Minister of Forestry account was not in the Bank of Central Africa and was in another bank.

▓▓▓ claims that every Minister in EG has formed their own company to sell goods and services in EG. ▓▓▓ saw substantial government contracts being awarded from the public treasury accounts maintained at the BEAC to companies owned by government ministers. For example, President OBIANG has his own construction company and built an apartment building which was designated for foreign workers. Foreigners would be charged an inflated rate. Although the monthly rent for anyone else would cost $2000, foreigners were charged $7000. This was just another way for President OBIANG to earn extra money. Additionally, the Minister of Forestry controls all of EG's exports of timber and logging and there is no oversight whatsoever over this industry.

If a foreign company wanted to do business in EG they would have to

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE 6 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 071 |

personally know a government official or there is absolutely no way of obtaining a government contract or business without an EG government official being involved. These government officials were not responsible to put any of their own capital in these businesses. They were solely used to resolve problems for the foreign businesses. There are no formal or transparent processes of awarding public contracts other than knowing a government official. Although ▓▓▓ was not sure if there was an actual rule requiring foreigners to partner with EG nationals, it was well-known that foreigners had to form joint ventures with EG government officials (or their family members) in order to do (and get) business in EG. Foreigners provided government ministers and their families' with substantial ownership rights and equity in these joint ventures for free. The EG national would almost never place or invest any of his/her own capital in such a venture. Nonetheless, they would be entitled to a share of that company's profits and revenue.

The largest construction company in EG is owned by President OBIANG which is a construction company. ▓▓▓ knew of a 3 mile road project between Malabo and the airport that took over 3 years to complete. ▓▓▓ insisted that it was in the best financial interest of the construction company to charge inflated prices and stay on the job longer so that both the company and the EG official would earn more money and collect more payments from the EG public treasury. The longer a project took complete, the more the contractor was paid. There was an incentive to prolong these types of projects. ▓▓▓ explained that publicly-funded infrastructure and construction projects seemed to take an exceptionally long time to complete (even considering the logistical constraints of having to complete this type of work in an undeveloped nation like EG). ▓▓▓ insist the President OBIANG is a very intelligent person whose main source of income is oil. However, ▓▓ expressed ▓▓ concerned if the country's money continues to be squandered. ▓▓▓ was unfamiliar with the process of customs and import duties as ▓▓ was assigned to the Minister of Finance.

▓▓▓ claims that corruptions is wide spread in EG and cited the following example: ▓▓▓ knew a foreign worker who was at her home in EG when security forces which is led by President OBIANG's brother, Armengol Ondo Nguema burst into her home and at gun point took whatever money she had. This type of activity was commonplace and usually orchestrated by the security forces on foreign. ▓▓▓ himself was a victim of similar criminal conduct when ▓▓ home was burglarized and 10 thousand Euros was taken from ▓▓ residence. ▓▓▓ left EG in ▓▓▓ and had not returned since. ▓▓▓ describe ▓▓ experience as "not to good."

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0009212

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE  7 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER  MI02PR07MI0018 |
|  | REPORT NUMBER: 071 |

████ claims that while in EG ████ kept detail personal notes during all meetings and was willing to share these note with investigators.

Investigation continues.
OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.