# Exhibit

# 47

REQUESTED BY:   MANZANARES, ROBERTO
OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| REPORT OF INVESTIGATION | PAGE 1 |
| | CASE NUMBER MI02PR07MI0018 |

| TITLE: TEODORO NGUEMA OBIANG, ET. AL OFFICIALS EQUATORIAL GUINEA |
|---|
| CASE STATUS:   INTERIM RPT |

| REPORT DATE 081712 | DATE ASSIGNED 111506 | PROGRAM CODE YA1 | REPORT NO. 087 |
|---|---|---|---|

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INITIAL SOURCE DOCUMENT/ INVESTIGATIVE FINDINGS

TOPIC: INTERVIEW OF JOHN HOPPE

SYNOPSIS:
On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry into the financial activities of Minister Teodoro Nguema OBIANG (Minister OBIANG). It is alleged that Minister OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. Minister OBIANG is currently the Minister of Agriculture and Forestry in EG.

HSI is investigating Minister OBIANG for money laundering statutes. OBIANG purchased a mansion valued at $32 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased an aircraft for $38 million dollars. Minister OBIANG asserts his wealth is the result of his private businesses which are involved in lumber and road construction. EG officials are purportedly permitted to engage in private businesses and authorized to have government contracts as long as the official isn't involved in the "day to day" operations or management of the business.

| DISTRIBUTION: SACMI | SIGNATURE: MANZANARES   ROBERTO   SPECIAL AGENT |
|---|---|
| | APPROVED: RUTHERFORD   ROBERT   N   OI GRP SUPERVISOR |
| | ORIGIN OFFICE: MI MIAMI, FL - SAC / TELEPHONE: 305 597 6000 |
| | TYPIST: MANZANARES |

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>REPORT OF INVESTIGATION<br>CONTINUATION | PAGE  2 |
|---|---|
| | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 087 |

CASE PROGRAM CODES:

YA1 Financial Other/Corn   7H0 FOREIGN CORRUPTION   2FJ SHELL CORPORATIONS

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 3 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 087 |

DETAILS OF INVESTIGATION:

On November 13, 2006, Agents assigned to the Homeland Security Investigation (HSI) Foreign Corruption Investigations Group initiated a criminal inquiry regarding the financial activities of Minister Teodoro Nguema OBIANG (Minister OBIANG). It is alleged that Minister OBIANG is diverting funds allocated to the government of Equatorial Guinea (EG) for his own personal use. Minister OBIANG is currently the Minister of Agriculture and Forestry in EG and is the son of the dictator.

HSI is investigating Minister OBIANG for violation of money laundering statutes. OBIANG purchased a mansion valued at $30 million dollars despite having a reported government salary of $60,000 annually. Additionally, he purchased a Gulfstream aircraft for $38 million dollars. Minister OBIANG asserts his wealth is the result of his private businesses which are involved in lumber and road construction. In EG officials are permitted to engage in private businesses and authorized to have government contracts as long as the official involved isn?t actively involved in the "day to day" operations or management of the business.

On May 31, 2012, John HOPPE was interviewed in Ventura, California by HSI special agent, Robert Manzanares and U.S. Department of Justice, (DOJ) Criminal Division Asset Forfeiture & Money Laundering attorney, Steve Gibbons.

After being apprised of the nature of the investigation, HOPPE agreed to be interviewed. It was explained to HOPPE the U.S. government has filed two separate civil forfeiture actions insisting that the assets owned by OBIANG were obtained by money which he obtained illegally.

HOPPE is currently unemployed as a "stay at home dad" in Los Angeles area. HOPPE was the former Branch Manager for California National Bank (CNB) from 2004 until 2010.

In or around 2006, Ed MIZRAHI owned and operated a real estate property management company in the same office complex of CNB. MIZARHA had a long standing business relationship with HOPPE and a long term customer of CNB. MIZRAHI approached HOPPE and stated that there was a real estate agent who approached MIZRAHI about managing a property in Malibu, California. HOPPE claimed that he was not told the name of the agent. HOPPE claimed that MIZRAHI told him that he visited the property with George NAGLER who was an attorney who represented the owner of the property.

MIZRAHI described the property as "beautiful" to HOPPE. MIZARHI explained to

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

DOJ_0012539

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 087 |

HOPPE that they needed to open a couple of bank accounts with CNB for payroll for the staff at the property and another account for operating expenses HOPPE informed MIZARHI that he would open the accounts and MIZARHI would need to provide the standard corporation documents in the name of the company. Since MIZARHI was a valued customer of CNB, HOPPE opened the accounts for MIZARHI, but he needed to review the corporation documents. MIZARHI asked HOPPE if the bank had a confidentially agreement about disclosing information about this account opening. HOPPE responded that the bank does not enter into these types of agreements because they already had privacy laws in place for the financial institutions. HOPPE stated that MIZARHI had to sign this type of agreement upon taking over the property management aspect of this employment. HOPPE thought that the reason for this was because the client was a celebrity or sports figure and it was a normal course of doing business in Los Angeles.

Upon MIZARHI providing the corporations' documents to HOPPE, there were lists of names of the corporate owners. HOPPE was expecting to see the name of a celebrity on the list, however, that was not the case. HOPPE then Google the name of Minister OBIANG and began reading the vast amount of articles that were written about Minister OBIANG. Specifically, he recalled reading several article about the poverty in EG and the fact the Minister OBIANG was a Politically Exposed Person (PEP).

HOPPE claimed that because of his training and experience, he was well aware of the process that he needed to follow in these types of instances. HOPPE claimed that he immediately contacted his Bank Secrecy Act officer, Camille Catolono (phonetic) and she told HOPPE that she would begin investigate this issue and respond back to HOPPE with her findings. Within several weeks HOPPE was notified by Catolono to close the accounts. Catolono had informed HOPPE that there were incoming wire transactions from EG into the accounts and that they were concerned about the source of the money given the research that they had conducted.

HOPPE then contacted MIZARHI and informed him that the bank accounts were being closed because Minister OBIANG was PEP. MIZARHI claimed that he was unaware of Minister OBIANG background and he also began reading all the internet articles that had been written. In light of what transpired, HOPPE claimed that MIZARHI ended his relationship with NAGLER and Sweetwater Management.

HOPPE claimed that the only contact that he had with NAGLER was when NAGLER contacted him telephonically and inquired about the closing of the bank accounts. HOPPE explained to NAGLER that after performing a background check on the officers of the corporation, and specifically, Minister OBIANG, CNB did not want to keep the accounts open because he was PEP. HOPPE claimed the

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 5 |
| --- | --- |
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER MI02PR07MI0018 |
| | REPORT NUMBER: 087 |

account was opened less than one month.

HOPPE claimed that after a few weeks after closing the accounts, HOPPE received a telephone call from a female who worked in NAGLER's office and asked HOPPE whether she can open an account without informing MIZARHI. HOPPE claimed that he would not do this and did not know the name of the female. HOPPE stated that since MIZARHI had at least 10 accounts with CNB and a long standing customer, he dismissed the idea of opening an account without MIZARHI knowledge.

HOPPE explained that as the Branch Manager of CNB, had he known in advance that Minister OBIANG was the customer he would have never opened the account for MIZARHI. HOPPE claimed as the Branch Manager he was routinely provided training regarding the banking industries regulations relating to PEP's. HOPPE insisted that it did not matter whether the potential customer was a foreigner or domestic client. All PEP's needed to be vetted prior to opening and account. HOPPE further insisted that had he known the Minister OBIANG was listed on this account, HOPPE would have not opened this account.

HOPPE was shown emails dated, June 13 and 14, 2006 (SEN010943) (SEN01922), HOPPE indicated that could not recollect ever seeing these emails in the past. Additionally, HOPPE was shown an email dated June 16, 2006 @11:07am (SEN010882) which HOPPE sent to MIZARHI informing him that all 3 accounts at CNB bank were being closed. HOPPE stated that this was an email he prepared to MIZARHI informing him the accounts were being closed.

Investigation continues.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.