# Exhibit

# 57

```
02 04 06 17:10     IGOR CELOTTI              00240 084096      p.6
Apr 01 06 12:31p                                               p.17
```

**CALIFORNIA ASSOCIATION OF REALTORS**

**RESIDENTIAL LEASE AFTER SALE**
**Seller in Possession After Close of Escrow**
(Intended for possession of 30 or more days)
C.A.R. Form RLAS, Revised 1994

Sweetwater Malibu, LLC, a California limited liability company d/b/a ng _____ ("Buyer/Landlord")
and Sweetwater MICC LLC, a California limited liability company, assignee of Teodoro Nguyen ("Seller/Tenant")
have entered into a purchase agreement for the real property described below. Close of escrow for the purchase agreement is scheduled to occur on
April 27, 2006 _____. Buyer, as Landlord, and Seller, as Tenant, agree as follows:

1. **PROPERTY:**
   A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: _____
      _____ Road, Malibu, CA _____ ("Premises").
   B. The Premises are for the sole use as a personal residence by the following named persons only: Raven Kalb.
   C. The personal property listed in the purchase agreement, maintained pursuant to paragraph 11, is included.

2. **TERM:** The term begins on the date escrow closes on the purchase agreement ("Commencement Date"), and shall terminate on
   the 30th day following the Commencement Date at midnight □ AM □ PM. Tenant shall vacate the
   Premises upon termination of this Agreement, unless (i) Landlord and Tenant have signed a new agreement, (ii) mandated by local rent control law,
   or (iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party
   may terminate pursuant to California Civil Code §1946.1. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other
   terms and conditions of this Agreement shall remain in full force and effect.

3. **RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of this Agreement, except security deposit.
   A. Tenant agrees to pay, payment □ Buyer's PITI, or □ $ 15,000 for the 30 day _____ entire term of the Agreement.
   B. Rent is payable in advance on the 1st day □ _____ (day of such calendar month, and is delinquent on the next day.
   C. If Commencement Date falls on any day other than the day Rent is payable under 3B and Tenant has paid one full month's Rent in advance of
      Commencement Date, Rent for the second calendar month shall be prorated based on a 30-day period.
   D. PAYMENT: Rent shall be paid by □ personal check, □ money order, □ cashier's check, ☑ through escrow (per escrow instructions), or
      □ other _____, to (name) Buyer
      (phone) _____, at (address) _____
      (or at any other locations subsequently specified by Landlord in writing to Tenant) between the hours of _____ and _____ on
      the following days: _____. If any payment is returned for
      non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay Rent in cash for
      three months and (ii) all future Rent shall be paid by □ money order, □ cashier check.

4. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay $15,000 _____ as a security deposit. Security deposit will be paid by □ personal check, □ money
      order, □ cashier's check. Through escrow (see paragraph 5 below) ☑ other See Addendum # 43 _____. Security deposit
      will be □ transferred to and held by Buyer, or □ held in Buyer's Broker's trust account. (Note: The maximum amount that Landlord may receive
      as security deposit cannot exceed two months' Rent for unfurnished Premises, or three months' Rent for furnished Premises.)
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: (1) cure Tenant's default in payment of Rent, which includes
      Late Charges, NSF fees, or other sums due; (2) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of
      Tenant; (3) clean Premises, if necessary, upon termination of tenancy; and (4) replace or return personal property or appurtenances. SECURITY
      DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the security deposit is
      used during tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to Tenant. Within 21
      days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any security deposit
      received and the basis for its disposition and (2) return any remaining portion of the security deposit to Tenant. See Addendum #44
   C. Security deposit will not be returned until all Tenants have vacated the Premises. Any security deposit returned by check shall be made
      out to all Tenants named on this Agreement, or as subsequently modified.
   D. No interest will be paid on security deposit unless required by local law.
   E. If the security deposit is held by Landlord, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Landlord's
      Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposits are released to someone
      other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been
      provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

5. **ESCROW PAYMENT:** (Check all that apply) ☑ Security deposit, □ First month's Rent, ☑ Rent for the entire lease term (If lease term is at least
   six months), □ Other, per escrow instructions, shall be paid out of Seller's proceeds from the escrow for the purchase of the Premises.

6. **LATE CHARGE: RETURNED CHECKS:**
   A. Tenant acknowledges either late payment of Rent or issuance of a returned check (NSF) may cause Landlord to incur costs and expenses, the
      exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing,
      enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by
      Landlord within 5 (or □ _____) calendar days after date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an
      additional sum of $ _____ or _____ % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first
      returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1949-2004,
CALIFORNIA ASSOCIATION OF REALTORS, INC. ALL RIGHTS RESERVED.

Tenant's Initials ( _____ ) ( _____ )
Landlord's Initials ( TN2 ) ( _____ )
Reviewed by _____ Date _____

**RLAS REVISED 1994 (PAGE 1 OF 5)**

**RESIDENTIAL LEASE AFTER SALE (RLAS PAGE 1 OF 5)**

Agent: Coldwell Banker    Phone: 3102728470   Fax: 3108986907   Prepared using WINForms® software
Broker: COLDWELL BANKER RESIDENTIAL BROKERAGE 1000 SUNSET BLVD STE 100, LOS ANGELES CA 90069

Confidential Treatment Requested

SEN010067

SENATE-PSI-00093971

Premises: ______ Date: ______

17. KEYS; LOCKS:

A. Tenant acknowledges possession of:

☐ ______ key(s) to Premises, ☐ ______ remote control device(s) for garage door/gate opener(s),
☐ ______ key(s) to mailbox, ☐ ______
☐ ______ key(s) to common area(s), ☐ ______

B. Tenant acknowledges that locks to the Premises ☐ have, ☐ have not, been re-keyed.

C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

18. ENTRY:

A. Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs, decorations, alterations or improvements, or to supply necessary or agreed services, or to show Premises to ~~[illegible]~~ contractors. *See Addendum 4*

B. Landlord and Tenant agree 24-hour written notice shall be reasonable and sufficient notice. However, if the purpose of the entry is to: ~~[illegible]~~ (ii) conduct an inspection of the Premises prior to the Tenant moving out, 48-hour written notice is required unless the Tenant waives the right to such notice or (iii) enter in case of an emergency, Landlord or representative may enter Premises at any time without prior notice.

C. ☐ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/lockbox addendum (C.A.R. Form KLA).

19. SIGNS: Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

20. ASSIGNMENT; SUBLETTING: Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without prior written consent of Landlord. Unless such consent is obtained, any assignment, transfer or subletting of Premises, or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall at the option of Landlord terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement.

21. JOINT AND INDIVIDUAL OBLIGATIONS: If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

22. ☐ LEAD-BASED PAINT: Premises was constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form FLD) and a federally approved lead pamphlet.

23. ☐ MILITARY ORDNANCE DISCLOSURE: (If applicable and known to Landlord) Premises is located within one mile of an area once used for military training, and may contain potentially explosive munitions.

24. ☐ PERIODIC PEST CONTROL: Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.

25. DATABASE DISCLOSURE: NOTICE: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a database of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

26. TENANT'S OBLIGATIONS UPON VACATING PREMISES: *See Addendum 147*

A. Upon termination of the Agreement, Tenant shall: (i) give Landlord all copies of all keys or opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii) ~~[illegible]~~

B. All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

C. Right to Pre-Move Out Inspection and Repairs as follows: (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the end of a lease, Tenant has the right to request that an inspection of the Premises take place prior to termination of the lease or rental (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others who have adequate insurance, licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination.

27. BREACH OF CONTRACT; EARLY TERMINATION: In addition to any obligations established by paragraph 26, in event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

Tenant's Initials ( ______ )( ______ )
Landlord's Initials ( *IVO* )( ______ )

Reviewed by ______ Date ______

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

02 04 06 17:10      IGOR CELOTTI                    00240 084096              p.4
Apr 01 06 12:36p                                                              p.2

Premises: _____  Date: _____

28. **TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

29. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If this Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

30. **INSURANCE:** Tenant's or guest's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage. Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium (or Tenant shall pay for the increase in premium); or (ii) loss of insurance.

31. **WATERBEDS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises.

32. **WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

33. **NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:
   Landlord: c/o George J. Nagler                          Tenant: c/o Dennis Clinen
   _____              _____
   Beverly Hills, CA 90210                               Los Angeles, CA 90067
   _____              _____

34. **TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

35. **MEDIATION:**
   A. Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.
   B. The following matters are excluded from mediation: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; and (iii) any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.
   C. Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to the Agreement.

36. **ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing Landlord and Tenant shall be entitled to reasonable attorney fees and costs from the non-prevailing Landlord or Tenant, except as provided in paragraph 35A agreed by the parties.

37. **C.A.R. FORM:** C.A.R. Form means the specific form referenced or another comparable form.

38. **OTHER TERMS AND CONDITIONS; SUPPLEMENTS:** During the term Seller shall maintain a policy of liability insurance in an amount of not less than 5 million dollars and shall deliver a particular _____ as of existing _____ prior to the start of the term.
   The following ATTACHED supplements are incorporated in this Agreement: ☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA);
   ☐ Interim Transition Agreement (C.A.R. Form ITA); ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form FLD)

39. **TIME OF ESSENCE; ENTIRE AGREEMENT:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

40. **AGENCY:**
   A. **CONFIRMATION:** The following agency relationship(s) are hereby confirmed for this transaction:
   Listing Agent (Agent representing the Seller in the purchase agreement)
   (Print firm name) _Alvin G. Holland_
   is the agent of (check one): ☐ the Tenant exclusively; or ☒ both the Landlord and Tenant.
   Selling Agent (Agent representing the Buyer in the purchase agreement)
   (Print firm name) _Coldwell Banker Beverly Hills_
   (if not same as Listing Agent) is the agent of (check one): ☒ the Landlord exclusively; or ☐ both the Tenant and Landlord.
   B. **DISCLOSURE:** ☐ (If checked): The term of this lease exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

Tenant's Initials (_____)(_____)
Landlord's Initials (_JN/GJ_)(_____)

Copyright © 1996-2004, CALIFORNIA ASSOCIATION OF REALTORS, INC.           Reviewed by _____ Date _____
RLAS REVISED 10/04 (PAGE 4 OF 5)
                        **RESIDENTIAL LEASE AFTER SALE (RLAS PAGE 4 OF 5)**

Confidential Treatment Requested

SEN010070

SENATE-PSI-00093974

```
02 04 06 17:09      IGOR CELOTTI           00240 084096          p.3
Apr 01 06 12:37p                                                 p.4
```

## Addendum
## To Residential Lease After Sale
## Between Sweetwater Malibu, LLC, landlord
## And
## Sweetwater Mesa, LLC, tenant

43. Paragraph 4.A, Security Deposit, is amended by adding at the end the following: "The security deposit will be held by escrow holder in accordance with the Agreement of Purchase and Sale and Joint Escrow Instructions between Landlord, as seller, and Tenant, as buyer, dated January 11, 2006."

44. The last sentence of paragraph 4.B, should read in full as follows: "Within three (3) business days after Tenant vacates the Premises, Landlord shall (1) furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition, and (2) return any remaining portion of the security deposit to Tenant."

45. Paragraph 9, Utilities, should read in full as follows: "Tenant agrees to pay for all utilities and services and all cost of maintenance including, without limitation, gardener and homeowner's fees. If any utilities are separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord."

46. Paragraph 18.A is amended by adding at the beginning the following: "Beginning from and after the end of the first week of the term of the lease,"

47. Paragraph 28.A. (vii) is inserted to read as follows: "all debris and personal property not included in the sale shall be removed by the date tenant vacates the Premises."

x _TWO_
Landlord's Initials          Tenant's Initials

Confidential Treatment Requested

SEN010072

SENATE-PSI-00093976

Received Fax :       Apr 02 2006 8:09A    Fax Station :  George Nagler          5

02 04 06 17:10      IGOR CELOTTI              00240 084096         p.5
Apr 01 06 12:31p                                                   p.15

**SUPPLEMENTAL ESCROW INSTRUCTIONS**
**Date: March 30, 2006**

To: First American Title Company, 520 North Central Avenue, Glendale, CA 91203. Phone - (818)242-5800 x 5145    Fax - (866)744-0233

Shari Anderson, Escrow Officer, File No.: LGL-2261234 (SLA)

Re: 3620 Sweetwater Mesa Road, Malibu, CA 90265 ("Property")

The Escrow Instructions are amended as follows:

1. Buyer and Seller approve the Residential Lease After Sale attached as Exhibit A. You are authorized to fill in the date of the closing in the fourth line and anywhere else it may be needed over the signatures of Buyer and Seller. Buyer and Seller shall each deliver to you prior to the closing two sets that will be signed and initialed. Following the close of escrow, you are authorized to deliver to each of Buyer and Seller a set of the Lease signed by each of Buyer and Seller.

2. Except as provided in paragraph 1, all other terms and conditions of this Escrow Instructions remain the same.

BUYER:

_____
Teodoro Nguema Obiang

Sweetwater Malibu, LLC, a California limited liability company

By: _____
     Teodoro Nguema Obiang, its Manager

SELLER:

Sweetwater Mesa LLC., a Delaware limited liability company

_____
By: Karen Rabe

Confidential Treatment Requested

SEN010142

SENATE-PSI-00094046

Received Fax :        Apr 02 2006 8:29AM     Fax Station :   George Nagler                    6

02 04 06 17:10         IGOR CELOTTI                           00240 084096            P.6
Apr 01 06 12:31p                                                                      p.17

**CALIFORNIA ASSOCIATION OF REALTORS**

**RESIDENTIAL LEASE AFTER SALE**
**Seller in Possession After Close of Escrow**
(intended for possession of 30 or more days)
(C.A.R. Form RLAS, Revised 10/04)

Sweetwater Malibu, LLC, a California limited liability company AObiang as assignee of Teodoro Nguen ("Buyer/Landlord")
and Sweetwater Mesa LLC, a California limited liability company ("Seller/Tenant")
have entered into a purchase agreement for the real property described below. Close of escrow for the purchase agreement is scheduled to occur on
(date) _____ 2006. Buyer, as Landlord, and Seller, as Tenant, agree as follows:

1. **PROPERTY:**
    A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: _____
    , Malibu, CA ("Premises").
    B. The Premises are for the sole use as a personal residence by the following named persons only: Karen Kabe
    C. The personal property listed in the purchase agreement, maintained pursuant to paragraph 11, is included.

2. **TERM:** The term begins on the date that escrow closes on the purchase and sale agreement ("Commencement Date"), and shall terminate on
   (date) the 30th day following the Commencement Date at midnight ☐ AM ☐ PM. Tenant shall vacate the
   Premises upon termination of this Agreement, unless (i) Landlord and Tenant have signed a new agreement, (ii) mandated by local rent control law,
   or (iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party
   may terminate pursuant to California Civil Code §1946.1. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other
   terms and conditions of this Agreement shall remain in full force and effect.

3. **RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of this Agreement, except security deposit.
    A. Tenant agrees to pay, per month ☐ Buyer's PITI, or ☒ $ 15,000 for the 30 day ____ for the term of the Agreement.
    B. Rent is payable in advance on the 1st day ☐ _____ ) day of each calendar month, and is delinquent on the next day.
    C. If Commencement Date falls on any day other than the day Rent is payable under 3A and Tenant has paid one full month's Rent in advance of
       Commencement Date, Rent for the second calendar month shall be prorated based on a 30-day period.
    D. PAYMENT: Rent shall be paid by ☐ personal check, ☐ money order, ☐ cashier's check, ☒ through escrow (per escrow instructions), or
       ☐ other _____, to (name) Buyer
       (phone) _____ at (address) _____
       or at any other location subsequently specified by Landlord in writing to Tenant) between the hours of _____ and _____ on
       the following days: _____. If any payment is returned for
       non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay Rent in cash for
       three months and (ii) all future Rent shall be paid by ☐ money order, ☐ cashier check.

4. **SECURITY DEPOSIT:**
    A. Tenant agrees to pay $ 15,000 _____ as a security deposit. Security deposit will be paid by ☐ personal check, ☐ money
       order, ☐ cashier's check, ☐ through escrow (see paragraph 5 below), ☒ other See Addendum #3 _____. Security deposit
       will be ☐ transferred to and held by Buyer, or ☐ held in Buyer's Broker's trust account. (Note: The maximum amount that Landlord may receive
       as security deposit cannot exceed two months' Rent for unfurnished Premises, or three months' Rent for furnished Premises.)
    B. All or any portion of the security deposit may be used, as reasonably necessary, to: (1) cure Tenant's default in payment of Rent, which includes
       Late Charges, NSF fees, or other sums due; (2) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of
       Tenant; (3) clean Premises, if necessary, upon termination of tenancy; and (4) replace or return personal property or appurtenances. SECURITY
       DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the security deposit is
       used during tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to Tenant. Within 21
       days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any security deposit
       received and the basis for its disposition; and (2) return any remaining portion of the security deposit to Tenant. See Addendum #4
    C. Security deposit will not be returned until all Tenants have vacated the Premises. Any security deposit returned by check shall be made
       out to all Tenants named on this Agreement, or as subsequently modified.
    D. No interest will be paid on security deposit unless required by local law.
    E. If the security deposit is held by Landlord, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Landlord's
       Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposits are released to someone
       other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been
       provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

5. **ESCROW PAYMENT:** (Check all that apply) ☒ Security deposit, ☐ First month's Rent, ☐ Rent for the entire lease term (if lease term is at least 6
    months), ☐ Other, per escrow instructions, shall be paid out of Seller's proceeds from the escrow for the purchase of the Premises.

6. **LATE CHARGE; RETURNED CHECKS:**
    A. Tenant acknowledges either late payment of Rent or issuance of a returned check (NSF) may cause Landlord to incur costs and expenses, the
       exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing,
       enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by
       Landlord within 5 (or ☐ _____ ) calendar days after date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an
       additional sum of $ _____ or _____% of the Rent due as a Late Charge and $25.00 as a NSF fee for the first
       returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1991-2004,
CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
RLAS REVISED 10/04 (PAGE 1 OF 5)

Tenant's Initials ( _____ )( _____ )
Landlord's Initials ( TN ) ( _____ )

Reviewed by _____ Date _____

**RESIDENTIAL LEASE AFTER SALE (RLAS PAGE 1 OF 5)**

Agent: Coldwell Banker        Phone: 3102789470        Fax: 3106565907       Prepared using WINForms® software
Broker: COLDWELL BANKER RESIDENTIAL BROKERAGE 9000 SUNSET BLVD STE 100, LOS ANGELES CA 90069

Confidential Treatment Requested

SEN010143

SENATE-PSI-00094047

02 04 06 17:12       IGOR CELOTTI                00240 08...96              p.8
Apr 01 06 12:36p                                                            p.3

Premises: _____ Date: _____

41. ☐ **INTERPRETER/TRANSLATOR:** The terms of this Agreement have been interpreted for Tenant into the following language: _____. Landlord and Tenant acknowledge receipt of the attached Interpreter/translator agreement (C.A.R. Form ITA)

42. **FOREIGN LANGUAGE NEGOTIATION:** If this Agreement has been negotiated primarily in Spanish, Chinese, Tagalog, Vietnamese or Korean, pursuant to the California Civil Code, Tenant shall be provided a translation of this Agreement in this language used for negotiation. *This lease includes the attached Addendum*

Landlord and Tenant acknowledge and agree Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations made by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, Brokers: (e) do not decide what rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

Tenant/Seller __Sweetwater Mesa, LLC__ Date __2006__
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Tenant/Seller By: __Sweetwater Mesa, LLC__ Date _____
Address __Karen Rose__ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Landlord/Buyer __Sweetwater Malibu, LLC__ Date _____
Landlord/Buyer _____ Date _____
Landlord Address __c/o George L. Nagler__ City __Beverly Hills__ State __CA__ Zip __90210__
Telephone _____ Fax _____ E-mail _____

**REAL ESTATE BROKERS:**
A. Brokers are not a party to the Agreement between Landlord and Tenant.
B. Agency relationships are confirmed as above.

Real Estate Broker __Coldwell Banker__
(Agent representing the Buyer in the purchase agreement)
By (Agent) __Neel Baddin__ Date _____
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker __Hilton & Hyland__
(Agent representing the Seller in the purchase agreement)
By (Agent) __Jeff Hyland__ Date _____
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

RLAS REVISED 10/04 (PAGE 5 OF 5)

**RESIDENTIAL LEASE AFTER SALE (RLAS PAGE 5 OF 5)**

**Confidential Treatment Requested**

SENATE-PSI-00097840

SEN012336