# Exhibit 62

# BAKER BOTTS LLP

THE WARNER
1299 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20004-2400

TEL +1 202.639.7700
FAX +1 202.639.7890
www.bakerbotts.com

AUSTIN
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
PALO ALTO
RIYADH
**WASHINGTON**

**By Email**

August 1, 2008

Casey Cooper
TEL +1 (202) 639-7780
FAX +1 (202) 585-1097
casey.cooper@bakerbotts.com

Ms. Laura E. Stuber
Counsel
Permanent Subcommittee on Investigations

Mr. Michael P. Flowers
Counsel to the Minority
Permanent Subcommittee on Investigations

Re: <u>George I. Nagler</u>

Dear Ms. Stuber and Mr. Flowers,

      Enclosed please find, on behalf of our client George Nagler, responses to the Interrogatories directed by the Subcommittee to Mr. Nagler on June 26, 2008. We have devoted considerable effort to answering the Subcommittee's questions as fully as possible while, at the same time, working closely with Mr. Obiang's counsel to understand and abide by his assertions of privilege. The responses are based on Mr. Nagler's personal knowledge and recollection of the information requested. We hope that Mr. Nagler's cooperation in the Subcommittee's inquiry will, as you indicated in your letter of June 26th, obviate the need to inconvenience him with participating in further proceedings regarding this matter.

      Should you have any questions about the enclosed responses, or any of the above, please do not hesitate to contact me.

Sincerely,

*Casey Cooper*

Casey Cooper

Enclosure

DC01:505487.2

PSI-Nagler-02-0001

## RESPONSES ON BEHALF OF GEORGE I. NAGLER TO THE SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS' INTERROGATORIES DATED JUNE 26, 2008

1) **Legal Services: Dates & Fees**

Mr. Nagler acted as an attorney for Teodoro Nguema Obiang (the "Client") from approximately September 2005 through approximately September 2007. The legal services rendered by Mr. Nagler to the Client primarily involved the Client's purchase and occupancy of real property located at 3620 Sweetwater Mesa Road, Malibu, CA 90265 (the "Malibu Property"). The legal services principally related to corporate formation, employment, contract, financial, and property insurance issues. Additional information regarding Mr. Nagler's representation of the Client is reflected in the responses below.

Mr. Nagler's records reflect that he received the following amounts in fees from the client, by year: (i) 2005: $13,992; (ii) 2006: $152,393; (iii) 2007: $30,184. (No fees were received from 2000 through 2004).

2) **Non-Legal Services: Dates & Fees**

Mr. Nagler provided certain non-legal services to the Client for a period of less than two months in the summer of 2006. These services entailed paying certain expenses related to the Malibu Property from funds provided to him by the Client. Mr. Nagler provided these services on a temporary basis, as Mr. Nagler understood it, until the Client could locate a replacement for the property management company that had previously provided these services. Additional details regarding this service are provided in Responses 4 and 7. Mr. Nagler believes he received between $5,000 and $10,000 in fees for these services, which payments are included in the totals provided in Response 1 above.

3) **Corporations & Limited Liability Companies**

*Beautiful Vision, Inc.*

Mr. Nagler does not recall providing any services related to Beautiful Vision, Inc. and has no information concerning its purpose or activities.

*Unlimited Horizon, Inc.*

Mr. Nagler does not recall providing any services related to Unlimited Horizon, Inc. and has no information concerning its purpose or activities. On approximately four occasions, however, Mr. Nagler received checks from Unlimited Horizon, Inc., for the payment of legal services provided to the Client. These payments are included in the totals reflected in Response 1 above.

### *Sweetwater Malibu LLC*

Sweetwater Malibu LLC was formed to take title to the Malibu Property. The Client was the sole owner of the corporation at all times. Liza Cunanan served as the organizer of the corporation until her resignation as of February 9, 2006. Christine Nguyen served as manager from February 24, 2006 through March 2, 2006. The Client was the sole manager after March 2, 2006. Mr. Nagler was the agent for service of process until his resignation on May 8, 2008. The LLC had no employees.

To the extent this question asks Mr. Nagler to provide further information concerning particular legal services that he undertook on behalf of the Client with regard to the corporation, Mr. Nagler has been instructed by the Client's current counsel to withhold such information on the grounds of attorney-client privilege.

Mr. Nagler had no financial interest in this entity. To Mr. Nagler's knowledge, the Client provided Sweetwater Malibu LLC all necessary capital to secure title to the Malibu property, approximately $30 million. Mr. Nagler has personal knowledge of a bank account that was opened at Pacific Mercantile Bank in the name of Sweetwater Malibu LLC (discussed in Response 4), but is not aware of any contributions that the Client may have made to this account. Mr. Nagler understands that the Subcommittee has been provided documents showing an account relating to Sweetwater Malibu LLC opened at Cal National Bank by American Equity Properties, Inc. (d/b/a American Property Management). Mr. Nagler has no information about this account beyond what is reflected in the documents. Mr. Nagler is not aware of any other payments made directly to Sweetwater Malibu LLC by the Client.

Mr. Nagler is not aware of any payment made directly to the Client by Sweetwater Malibu LLC. Mr. Nagler is aware of two payments made from the Malibu Property's escrow account into his own trust account, which are described in Response 7.

### *Sweetwater Management, Inc.*

Sweetwater Management, Inc. was formed to employ individuals at the Malibu Property and to handle payroll and other matters related to the employment of those individuals. The Gregory Holden Corporate Services company ("Gregory Holden Co.") provided a filing service in connection with the establishment of the corporation. As part of the service, Erin Feuerbach (of Gregory Holden Co.) signed the articles as the incorporator, resigning as of May 23, 2006. The Client served as the sole director, President, Secretary and Chief Financial Officer of the corporation. For a short period from approximately May 31, 2006 through approximately September 25, 2006, Melinda DeHaven, the Client's executive assistant, served as Vice-President and Secretary of the corporation. Mr. Nagler served as the agent for service of process until his resignation on May 8, 2008. Finally, Sweetwater Management, Inc. employed a number of individuals at the Malibu Property, including executive assistants, estate managers, housekeepers, and gardeners.

To the extent this question asks Mr. Nagler to provide further information concerning particular legal services that he undertook on behalf of the Client with regard to the corporation,

Mr. Nagler has been instructed by the Client's current counsel to withhold such information on the grounds of attorney-client privilege.

As described in Response 2, Mr. Nagler also assisted the Client with certain non-legal services related to the management of the payroll of Sweetwater Management, Inc. employees for approximately two months, from June 26, 2006 through August 23, 2006.

Mr. Nagler had no financial interest in this entity. To Mr. Nagler's knowledge, the Client provided all funds received by Sweetwater Management, Inc. Based on corporate minutes dated May 23, 2006, Mr. Nagler assumes that the Client made a capital contribution of $25,000. Mr. Nagler assisted the Client in opening a bank account at Pacific Mercantile Bank in the name of Sweetwater Management, Inc. (discussed in Response 4), but has no knowledge of any contributions the Client may have made to this account. Mr. Nagler understands that the Subcommittee has been provided documents showing that two accounts relating to Sweetwater Management, Inc. were opened at Cal National Bank by American Equity Properties, Inc. Mr. Nagler has no knowledge about these accounts beyond what is reflected in these documents. Mr. Nagler is not aware of any other payments made directly to Sweetwater Management, Inc. by the Client, nor is he aware of any payments made directly to the Client by Sweetwater Management, Inc.

During the approximately two month period when Mr. Nagler assisted the Client with the payment of payroll and household expenses, Mr. Nagler made four payments out of his trust account to the payroll service, Paychex, on the following dates and in the following amounts, all of which Mr. Nagler understands were used to pay wages due to the employees of Sweetwater Management, Inc. and the appropriate payroll tax obligations of the company:

- 6/30/06: $12,683;
- 7/13/06: $11,265;
- 7/27/06: $14,235; and
- 8/15/06: $17,879.

### Sweet Pink, Inc.

Sweet Pink, Inc. was formed to employ individuals at the home the Client maintained before he purchased the Malibu Property and to handle payroll and other matters related to the employment of those individuals. The Client was the sole owner. According to draft corporate minutes: (i) the Client was to be elected Assistant Treasurer of the corporation; (ii) his executive assistant at the time, Rosalina Romo, was to be elected President, Secretary and Chief Financial Officer of the corporation; and (iii) Christine Nguyen was to serve as Vice President of the corporation from September 23, 2005 through October 5, 2005. Mr. Nagler does not know whether the draft corporate minutes were fully executed. Gregory Holden Co. provided a filing service in connection with the establishment of the corporation. As part of the service, Kathy Gudel (of Gregory Holden Co.) signed as the incorporator and resigned from any position with the corporation on September 23, 2005.

To the extent this question asks Mr. Nagler to provide further information concerning particular legal services that he undertook on behalf of the Client with regard to the corporation,

Mr. Nagler has been instructed by the Client's current counsel to withhold such information on the grounds of attorney-client privilege.

Mr. Nagler had no financial interest in this entity. To Mr. Nagler's knowledge, the Client was the sole source of funding for the creation of the corporation and owned 100% of the entity. According to draft corporate minutes, the Client advanced approximately $2,000 in September 2005. Mr. Nagler understands that the Subcommittee has been provided documents indicating that a bank account relating to Sweet Pink, Inc. was opened at Union Bank, discussed below in Response 4. Mr. Nagler understands that the Subcommittee has also been provided documents suggesting that another bank account relating to Sweet Pink, Inc. may have been opened sometime prior to February 2006, which is also discussed below in Response 4. Mr. Nagler is not aware of any other payments greater than $5000 made to the entity by the Client, made by the Client to the entity, or by the entity on behalf of the Client.

### 4) Bank Accounts

#### *Pacific Mercantile Bank*

The Client opened one or more bank accounts at Pacific Mercantile Bank, 9720 Wilshire Boulevard, Beverly Hills, CA 90212 on or about September 15, 2006. Mr. Nagler understood that these accounts were intended to hold funds that were needed to pay for the Client's living expenses in Los Angeles, including expenses related to the Malibu Property. Mr. Nagler understands that the Subcommittee is in possession of account applications showing these accounts to be as follows: (i) a personal checking account in the name of Teodoro Obiang Nguema; (ii) a personal savings account in the name of Teodoro Obiang Nguema; (iii) a Certificate of Deposit in the name of Teodoro Obiang Nguema; (iv) an account in the name of Sweetwater Management, Inc. (type unknown); and (v) an account in the name of Sweetwater Malibu LLC (type unknown).

Mr. Nagler understands that these account applications also reflect that (i) the Client was the sole signatory and only individual listed on these accounts; and (ii) the Client was the beneficial owner on each of these accounts, along with Sweetwater Malibu LLC and Sweetwater Management, Inc. on two accounts. Mr. Nagler does not know if anyone other than the Client made deposits to these accounts.

To the best of Mr. Nagler's knowledge, the Client was the primary person who communicated with the bank and supplied information to the bank concerning the accounts. Mr. Nagler initially introduced the Client to Fred Alavi, Executive Vice President of Pacific Mercantile Bank, and accompanied the Client to his first meeting with Mr. Alavi. Mr. Nagler provided information about the Client and the formation of the two corporations (Sweetwater Malibu LLC and Sweetwater Management, Inc.) to Mr. Alavi as requested. To Mr. Nagler's recollection, his communication with the bank concerning the account after that meeting was minimal. He is aware that the bank closed the accounts but does not recall the precise date. Mr. Nagler is not aware of anyone else communicating with the bank regarding these accounts other than the Client. Mr. Nagler is not aware of any communications from law enforcement or government regulators regarding any of these accounts.

### *George Nagler Trust Account*

Mr. Nagler has maintained a trust account at City National Bank, 400 N. Roxbury Drive, Beverly Hills, CA for many years. From on or about June 26, 2006 through August 23, 2006, Mr. Nagler, at the Client's request, paid certain of the Client's household and living expenses from this account, with funds provided by the Client for that purpose. Mr. Nagler understood that a property management company had formerly handled the payment of these expenses. He further understood that his paying of the expenses would be temporary, while the Client located a replacement for that property management company to provide this service. The trust account at City National Bank remains open.

Mr. Nagler was the sole signatory on this account, the only person named on the account, and the only person who deposited funds into the account. Further, Mr. Nagler was the only person who communicated with the bank with regard to the account and the only person who supplied information to the bank concerning the account. Mr. Nagler was the only person who initiated and implemented decisions with regard to the account. The funds in the trust account are owned by the clients whose funds were deposited there. Mr. Nagler does not have any funds of the Client in the account presently.

Mr. Nagler is not aware of any communications from any law enforcement, government regulators or financial institutions regarding this account.

### *Paychex Payroll Account*

Mr. Nagler recalls opening a Paychex account on behalf of Sweetwater Management, Inc. around the time he began assisting the Client with the payment of his expenses and payroll as discussed above. Mr. Nagler understands that the Client had at least one prior existing Paychex account, established by American Equity Properties, Inc., but Mr. Nagler has personal knowledge only of the account that he was involved in initiating. Paychex provided a full range of payroll check writing, direct deposit, and payroll tax services.

The Paychex account manager had check-signing authority. The beneficial owners of the account were Sweetwater Management, Inc. and the Client. During the approximately two-month period that Mr. Nagler paid certain of the Client's household and living expenses from his trust account, Mr. Nagler was listed on the Paychex account and was authorized to transfer the approved payroll amounts to the Paychex account manager. The Client was responsible for decisions concerning the account and approved the amounts paid from the account. During that period, Mr. Nagler deposited funds, communicated with Paychex regarding the account, and supplied information concerning the account. Mr. Nagler was removed from the account on or about August 23, 2006. Mr. Nagler does not know whether the Client continued to use the service after this time, or, if so, who communicated with Paychex concerning the account.

Mr. Nagler is not aware of any communications from any law enforcement, government regulators or financial institutions regarding this account.

*Union Bank Account*

Mr. Nagler understands that the Subcommittee has been provided documents indicating that in or around September and October 2005, he corresponded with Marvin Freedman, an accountant retained by the Client to maintain the books and records of Sweet Pink, Inc., regarding the establishment of a bank account for the corporation at Union Bank in Encino, California. Apart from the activities reflected in that correspondence, Mr. Nagler was not involved in the opening of the Union Bank account. He does not recall any communications with the bank, or any law enforcement or government regulator, regarding the account. Mr. Nagler believes the account was closed in 2005, although he is not aware of the precise date. Mr. Nagler understands that the Subcommittee has been provided documents discussing what may be another Sweet Pink bank account, in or about February, 2006. However, Mr. Nagler does not specifically recall this account.

*Cal National Bank Accounts*

Mr. Nagler understands that the Subcommittee has been provided documents indicating that American Equity Properties, Inc. (d/b/a American Property Management) opened three accounts relating to Sweetwater Malibu LLC and Sweetwater Management Inc. at Cal National Bank, to be used for household expenses and payroll. Mr. Nagler recalls no other information about these accounts apart from the information reflected in the documents.

*Unlimited Horizon, Inc.*

Mr. Nagler is aware of the existence of an account opened in the name of Unlimited Horizon, Inc. solely because he received legal fees paid from that account as provided in Response 3.

5) **Accounts with a connection to Mr. Obiang**

Mr. Nagler believes that all information responsive to this question has been provided in Response 4.

6) **Transfer of Funds from Equatorial Guinea, Somagui Forestal, and Socage**

*Transfer 1*: On October 19, 2005, approximately $11,992 was transferred by Somagui Forestal Bata into Mr. Nagler's City National Bank client trust account. The purpose of the transfer was the payment of legal fees for legal services provided to the Client. Although Mr. Nagler understands that the Client is somehow associated with Somagui Forestal Bata, he has no knowledge of the nature of Somagui Forestal Bata's business or the Client's relationship to it.

*Transfer 2*: On January 18, 2006, approximately $11,953 was transferred by Somagui Forestal Bata into Mr. Nagler's City National Bank client trust account. The purpose of the transfer was the payment of legal fees for legal services provided to the Client. Although Mr. Nagler understands that the Client is somehow associated with Somagui Forestal Bata, he has no knowledge of the nature of Somagui Forestal Bata's business or the Client's relationship to it.

*Transfer 3*: On March 23, 20006, approximately $14,240 was transferred by Somagui Forestal Bata into Mr. Nagler's City National Bank client trust account. The purpose of the

SENATE-PSI-00120256

transfer was the payment of legal fees for legal services provided to the Client. Although Mr. Nagler understands that the Client is somehow associated with Somagui Forestal Bata, he has no knowledge of the nature of Somagui Forestal Bata's business or the Client's relationship to it.

***Transfer 4***: Additionally, Mr. Nagler recalls that one or more of the payments that went into the purchase escrow account came from a foreign bank. Mr. Nagler understands that the Subcommittee has been provided documents showing that that the foreign bank was located in Equatorial Guinea. Mr. Nagler also understands that the Subcommittee has been provided documents showing that the payments into escrow were comprised of a $900,000 deposit in February 2006, and a series of $5,908,400 payments made during April 2006 to First American Title Company,[1] the company handling the purchase escrow.

### 7) Attorney-Client Trust Accounts

From on or about June 26, 2006 through August 23, 2006, Mr. Nagler paid certain of the Client's household and living expenses from his trust account, at the Client's request and with funds provided by the Client for that purpose, as discussed more fully in Response 4. While Mr. Nagler objects to this service being characterized as "hold[ing] funds" or "serv[ing] as a pass through" to the entities set forth in the interrogatory, we nonetheless include this information in the interest of full disclosure. In addition, attached is a report of all the transactions made from the sub-account within his trust account used to pay expenses related to the Client and the Client's corporations for the period indicated.[2] Except as indicated below, Mr. Nagler does not recall using his trust account to hold funds for the Client or any of his entities at any other time, or for any other purpose apart from payment for legal services rendered.

The sub-account was funded through the following transfers.

***Transfer 1***: On June 26, 2006, approximately $213,149 was transferred by American Equity Properties, Inc., 1460 Westwood Blvd. #200, Los Angeles, into Mr. Nagler's City National Bank client trust account and went entirely into the sub-account used for paying the Client's expenses. The money represented the proceeds of three accounts that American Equity Properties, Inc. maintained on behalf of Sweetwater Malibu LLC and Sweetwater Management, Inc. Those accounts were closed by Cal National Bank, and the proceeds were transferred to Mr. Nagler's client trust account, so that he could pay the household expenses and payroll in the interim. The funds transferred were used, at the direction of the Client, to pay legal fees, as well as payroll and expenses from June 26, 2006 through August 23, 2006.

***Transfer 2***: On May 5, 2006, approximately $107,580 was transferred by First American Title Company into Mr. Nagler's City National Bank client trust account. The money represented the proceeds of the Malibu Property escrow account remaining after payment of the purchase price and other costs. $50,000 of the transferred funds were used, at the direction of the Client, to pay legal fees, and $4,456.40 was paid to the IRS to settle a tax dispute on behalf of the Client. The remaining approximately $53,124 was transferred into the sub-account used for

---

[1] The company handling the purchase escrow was First American Title Company, 520 North Central Avenue, Glendale, California 91203, under escrow #LGL-226-1234.

[2] Due to a clerical error, one expense payment – a payment of approximately $1072 made to Erik Foss on August 1, 2006 – is not reflected on attached sub-account spreadsheet.

payment of the Client's household and living expenses on July 18, 2006, and was used towards those expenses at the direction of the Client until Mr. Nagler stopped paying such expenses on or about August 23, 2006.[3]

***Transfer 3***: On July 27, 2006, approximately $47,500 was transferred by First American Title Company into Mr. Nagler's City National Bank client trust account. This amount represented the rent paid by the seller to the Client for occupancy of the Malibu Property after closing. The funds transferred were used, at the direction of the Client, for the payment of payroll and expenses until Mr. Nagler stopped paying such expenses on or about August 23, 2006.

8) **Concealment and Mischaracterization of Accounts**

Mr. Nagler recalls no such instruction or guidance.

9) **Concealment and Mischaracterization of Accounts, cont.**

Mr. Nagler does not believe that he ever concealed or mischaracterized the Client's association with any account.

10) **Inquiries by Financial Institutions and Insurance Companies**

Mr. Nagler recalls no such inquiries or discussions apart from the discussion with Mr. Alavi prior to the Client's opening accounts at Pacific Mercantile Bank, as described in Response 4.

11) **Sale of the Antelo, Sweetwater, and Other Property**

The only sale or purchase of property by the Client in which Mr. Nagler was involved was the purchase of the Sweetwater property. The listing agent was Hilton and Hyland. Mr. Nagler provided legal services to the Client associated with the purchase of this property.

To the extent this question asks Mr. Nagler to provide further information concerning particular legal services that he undertook on behalf of the Client with regard to the purchase, Mr. Nagler has been instructed by the Client's current counsel to withhold such information on the grounds of attorney-client privilege.

Mr. Nagler recalls that the Client had funds wire-transferred to the escrow holder, First American Title Company. Mr. Nagler does not know the source of the Client's funds, except that he recalls that the funds came from a foreign bank, as described in Response 6. Mr. Nagler did not receive any of the purchase money. He recalls that it was wired directly to the escrow holder, First American Title Company. The only moneys that Mr. Nagler recalls receiving into any of his accounts in connection with the property purchase were for payment of his legal fees, and the transfers from escrow into his trust account described above in Response 7.

---

[3] A report reflecting the breakdown of this approximately $107,580 and the payment in settlement of the tax issue is also attached.

DC01:505592.2

PSI-Nagler-02-0009

SENATE-PSI-00120258

### 12) PayPal and Paychex Accounts

Mr. Nagler opened a Paychex account as described in Response 4.

### 13) Original Contact with Mr. Obiang

Mr. Nagler recalls that the Client's executive assistant contacted him in August 2005 and arranged a meeting. Based on Mr. Nagler's understanding, she located him on the internet.

### 14) First Retainer Agreement with Mr. Obiang

Mr. Nagler was originally retained in September 2005.

### 15) Current Relationship with Mr. Obiang

Mr. Nagler has no current attorney-client or other business relationship with the Client or any of his entities.