JAIKUMAR RAMASWAMY, Chief
Asset Forfeiture and Money Laundering Section (AFMLS)
LINDA M. SAMUEL, Deputy Chief
DANIEL H. CLAMAN, Assistant Deputy Chief
WOO S. LEE, Trial Attorney
STEPHEN A. GIBBONS, Trial Attorney
United States Department of Justice- Criminal Division
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone:  (202) 514-1263, Woo.Lee@usdoj.gov

ANDRÉ BIROTTE, JR.
United States Attorney
STEVEN R. WELK (Cal. Bar No. 149883)
Assistant United States Attorney
312 North Spring Street, 14th Floor
Los Angeles, California 90012
Telephone:  (213) 894-6166, Steven.welk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>ONE WHITE CRYSTAL-COVERED "BAD TOUR" GLOVE AND OTHER MICHAEL JACKSON MEMORABILIA;<br>REAL PROPERTY LOCATED ON SWEETWATER MESA ROAD IN MALIBU, CALIFORNIA; ONE 2011 FERRARI 599 GTO,<br><br>　　　　　　Defendants. | No. CV 2: 11-3582-GW-SS<br><br>Hon. George H. Wu<br><br>UNITED STATES' SUPPLEMENTAL BRIEF IN OPPOSITION TO CLAIMANTS TEODORO NGUEMA OBIANG MANGUE'S AND SWEETWATER MALIBU, LLC'S MOTION FOR SUMMARY JUDGMENT ON THE LIMITED ISSUE OF PROBABLE CAUSE OR, IN THE ALTERNATIVE, ORDER FINDING THE GOVERNMENT LACKED PROBABLE CAUSE AT THE TIME IT INSTITUTED THE ACTION FOR FORFEITURE IN REM<br>Hearing: August 19, 2013 (8:30 a.m.) |

## <u>Table of Contents</u>

**I.  <u>LEGAL STANDARD</u>** ..................................................................**2**

   A.  Summary Judgment Standard..............................................2
   B.  Probable Cause Standard on Summary Judgment....................4

**II.  <u>DISCUSSION</u>** ......................................................................**5**

   A.  "Reasonable Jury" Could Find At Trial That Probable Cause Exists........5

   B.  If the Court Grants Claimants' Motion, Which It Should Not,
      Judgment Should Be Entered Without Prejudice to the Government's
      Right to File a New Action.......................................................16

   C.  Rule 44.1 Hearing Is Not Necessary At This Time.................20

**III.  <u>CONCLUSION</u>** ................................................................**20**

## **Table of Authorities**

### **Cases**

Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986)..........................................2, 10

APL v. UK Aerosols, 582 F.3d 947, 955 (9th Cir. 2009)..........................................20

Brooks-Ngwenya v. Thompson, 2006 U.S. App. LEXIS 25868
(7th Cir. Oct. 17, 2006)..........................................................................................17

Costello v. United States, 365 U.S. 265, 285 (1961)....................................*passim*

Criales v. American Airlines, 105 F.3d 93, 96 (2d Cir. 1997) .................................18

Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1982)...................................18, 20

Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) ....................................................4, 5

Franks v. Delaware, 438 U.S. 154, 165 (1978) ..........................................................4

Hart v. Parks, 450 F.3d 1059, 1067 (9th Cir. 2006) ....................................*passim*

Heyman v. Commerce & Indus. Ins., 524 F.2d 1317, 1319-20 (2d Cir. 1975)........3

Illinois v. Gates, 462 U.S. 213, 238 (1983) ..................................................*passim*

In re Sonus Networks, 499 F.3d 47, 60 (1st Cir. 2007)...........................................18

Krupski v. Costa Crociere, 130 S. Ct. 2485, 2494 (2010) .......................................18

Matsushita Elec. Ind. v. Zenith Radio, 475 U.S. 575, 587 (1986) ...........................2

Ramirez v. Buena Park, 560 F.3d 1012, 1024 (9th Cir. 2009) ................................11

Rationis Enters. v. Hyundai Mipo Dockyard, 426 F.3d 580, 586
(9th Cir. 2005)..........................................................................................................20

Rohde v. City of Roseburg, 137 F.3d 1142, 1144 (9th Cir. 1998) ............................6

Rollins v. Wackenhut Serv., 703 F.3d 122, 131 (D.C. Cir. 2012)...........................18

Sandpiper Village Condominium Assoc. v. Louisiana-Pacific, 428 F.3d 831
(9th Cir. 2005)..........................................................................................................18

Stewart v. U.S. Bancorp, 297 F.3d 953, 957 (9th Cir. 2002) ..................................16

United States v. $9,800, 952 F. Supp. 1254 (N. D. Ill. 1996) ................................19

United States v. $10,700, 258 F.3d 215 (3d Cir. 2001)...........................................19

United States v. $19,985.99, 2011 WL 5303131 (C. D. Cal. Nov. 1, 2011)...........13

United States v. $20,280, 2011 WL 4448735 (C. D. Cal. Sept. 13, 2011)...............3

United States v. $22,474, 246 F.3d 1212, 1217 (9th Cir. 2001)..............................15

United States v. $30,670, 403 F.3d 448, 467 (7th Cir. 2005)..................................15

United States v. $31,990, 982 F.2d 851, 856 (2d Cir. 1993)...................................19

United States v. $38,000, 816 F.2d 1538 (11th Cir. 1987)......................................19

United States v. $67,220, 957 F.2d 280, 284 (6th Cir. 1992)..................................16

United States v. $77,000, 2012 WL 1196498 (E. D. Cal. Apr. 10, 2012)................3

United States v. $79,010, 2012 WL 1150849 (D. Az. Apr. 5, 2012) .......................3

United States v. $80,010, 2009 WL 7520021 (C. D. Cal. Jul. 9, 2009) ................11

United States v. $83,310.78, 851 F.2d 1231, 1235 (9th Cir. 1988)....................8, 16

United States v. $97,667, 538 F. Supp. 2d 1246, 1253 (C. D. Cal. 2007) ...............7

United States v. $127,000, 2012 WL 2917467 (N. D. Cal. Jul. 17, 2012).......*passim*

United States v. $129,727, 129 F.3d 486, 489-90 (9th Cir. 1997) .................*passim*

United States v. $191,910, 16 F.3d 1051, 1070 (9th Cir. 1994)............................19

United States v. $223,178, 2008 WL 4735884 (C.D. Cal. Apr. 30, 2008).............15

United States v. $242,484, 389 F.3d 1149, 1161 (11th Cir. 2004)..........................15

United States v. $250,000, 808 F.2d 895, 899 (1st Cir. 1987) ...............................11

United States v. $493,850 in U.S. Currency, 518 F.3d 1159, 1169
(9th Cir 2008)..............................................................................................*passim*

United States v. Booker, 612 F.3d 596, 601 (7th Cir. 2010)..................................11

United States v. Casimiro-Benitez, 533 F.2d 1121, 1123 (9th Cir. 1976) ...............4

United States v. Chesney, 10 F.3d 641, 644 (9th Cir. 1993)....................................6

United States v. Currency, 283 F.3d 977, 980 (9th Cir. 2002)..................................4

United States v. Edwards, 885 F.2d 377, 390 (7th Cir. 1989)................................10

United States v. Gil, 58 F.3d 1414, 1418 (9th Cir. 1995).......................................14

United States v. Golb, 69 F.3d 312, 313-14 (9th Cir. 1995) ..................................12

United States v. Hartog, 513 F.3d 991, 999-1000 (9th Cir. 2008) ....................8, 12

United States v. Jackson-Randolph, 282 F.3d 369, 377 (6th Cir. 2002) ................14

United States v. Johnson, 572 F.2d 227, 234 (9th Cir. 1978).................................4

United States v. One 56-Ft. Motor Yacht, 702 F.2d 1276 (9th Cir. 1983)...........4, 7

United States v. One 1978 Piper Cherokee, 91 F. 3d 1204, 1208
(9th Cir. 1996)........................................................................................................4

United States v. One Gulfstream G-V Jet, 2013 U.S. Dist. LEXIS 56354
(D.D.C. Apr. 19, 2013) ........................................................................................11

United States v. One Lot, 103 F.3d 1048 (1st Cir. 1997)..................................4, 9

United States v. One Parcel, 705 F.Supp. 710 (D.R.I. 1989) ................................19

United States v. Parcels, 903 F.2d 36, 40 (1st Cir. 1990)....................................10

United States v. One Partially Assembled Drag Racer, 899 F. Supp. 1334
(D.N.J. 1995)........................................................................................................19

United States v. Roberts, 747 F.2d 537, 544 (9th Cir. 1984) ..................................9

United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir. 1990)............................10

United States v. Tobin, 676 F.3d 1264, 1290 (11th Cir. 2012) ................................6

## Statutes

18 U.S.C. § 983(a)(3)(D) .................................................................................*passim*

19 U.S.C. § 1615.............................................................................................*passim*

**<u>Other</u>**

Restatement (Second) of Judgments ........................................................................18

9 Wright & Miller, Federal Practice and Procedure, (2d ed. 1995) ........................18

**<u>Statutes</u>**

19 U.S.C. § 1615……………....………………………....……………*passim*

Teodoro Nguema Obiang Mangue (Nguema) amassed over $300 million in net worth, all while earning an income of less than $100,000 per year as an unelected public official appointed by his father.  On June 20, 2013, the Court issued a tentative ruling ("TR") granting in part and denying in part summary judgment ("except as the bank fraud issue").  *See* TR.  The Court also directed the Government to file a chart detailing how "[Nguema] violated [Equatorial Guinea (EG)] law."  TR at 8, fn. 6.

The United States' Probable Cause Chart ("Exhibit A") describes with specificity each fact the Government relied upon for purposes of probable cause.  Exhibit A details how Nguema *personally* violated EG's Penal Code;[1] accumulated hundreds of millions of dollars in net worth; and laundered these corruption proceeds through the United States.  Specifically, Exhibit A details how:

- Nguema *himself* used European banks to store and launder "stolen" public infrastructure funds in 2006;

- Nguema *himself* sought to misappropriate $40 million from the EG Government to acquire a Gulfstream jet in 2004;

- Nguema *himself* in 2003 attempted to extort a U.K. firm;

- Nguema *himself* in 2006 used EG state funds to renovate his home in Cape Town, South Africa;

- Nguema *himself* extorted EG timber companies;

- Nguema *himself* admits that he engaged in commercial activities relating to his jurisdiction as a cabinet minister—conduct which is inconsistent with EG's "stringent" anti-corruption laws;

- Nguema *himself* is the subject of two other criminal investigations in which he is directly implicated;

---

[1] An English translation of the cited Penal Code provisions are attached hereto as Exhibit B.

- Nguema *himself* acquired more than $100 million in net worth (known as of April 26, 2011 (the "Filing Date")) while making less than $100,000 per year as a public official;

- Nguema *himself* used a web of shell companies and nominees to acquire assets and defraud U.S. financial institutions; and

- Nguema *himself* gave conflicting and inconsistent explanations as to the sources of his extraordinary wealth.

Because the cumulative weight of this evidence is more than sufficient for a reasonable jury to find probable cause, Claimants' motion fails. Indeed, even if any one fact by itself is insufficient, the facts as a whole give rise to a "fair probability"—all that is required for probable cause—that the Defendant Assets are subject to forfeiture. *See United States v. $129,727*, 129 F.3d 486, 489-90 (9th Cir. 1997) ("The fact that some of these acts, if reviewed separately, might be consistent with innocence is immaterial.").

The Court also directed the parties to address the impact that summary judgment would have on this matter. Claimants seek to dismiss this action because the Government allegedly did not have probable cause on the Filing Date—a threshold issue—that does not go to the merits of the suit. Accordingly, were the Court to dismiss this action, any prejudice that results therefrom should not bar the Government from filing a new action based upon evidence of probable cause obtained after the filing date.

## I.      LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment may be granted if "there can be but one reasonable conclusion as to the verdict," but not where "reasonable minds could differ." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). The court must draw all inferences in the Government's favor. *Matsushita Elec. Ind. v. Zenith Radio*, 475 U.S. 575, 587 (1986). "The 'fundamental maxim' remains that [at] summary judgment the court cannot try issues of fact,' it can only

2

determine whether there are issues to be tried." *Heyman v. Commerce & Indus. Ins.*, 524 F.2d 1317, 1319-20 (2d Cir. 1975).

In the forfeiture context, the issue at summary judgment in this Circuit is whether the evidence is sufficient for a "reasonable jury" to find that the Government had probable cause on the Filing Date.[2]  Claimants seek to muddy the waters by conflating the Government's ultimate trial burden (whether probable cause existed on the Filing Date) with the Government's lesser burden at the summary judgment stage (whether a "reasonable jury" could find at trial that probable cause existed on the Filing Date).  As the Court noted on two occasions, probable cause "is a question for trial."  Order, ECF No. 68-1, at 12; Order, ECF No. 47, at 4.  Claimants' suggestion that the Government is required to demonstrate its trial burden at the filing stage is contrary to law, inconsistent with this Court's prior orders, and does exactly what Congress sought to prevent in enacting the Civil Asset Forfeiture Reform Act (CAFRA)—deny the United States the opportunity to present its case at trial.  CAFRA provides explicitly that, "No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D).  Indeed, CAFRA's legislative history shows that it was designed, in part, to prevent forfeiture actions from being—as Claimants seek to do here— prematurely dismissed at the filing stage.  The House Judiciary Committee explained:

> **[W]ith the exception of a [Fourth Amendment] motion to suppress, the claimant may not move the court for a preliminary hearing on the status of the government's evidence.  Additionally, the claimant may not move to dismiss the case for lack of evidence pre-[trial]. . . Pre-trial dispositive**

---

[2] *See, e.g., United States v. $127,000*, 2012 WL 2917467, at *4 (N. D. Cal. Jul. 17, 2012) (summary judgment issue is whether "there is sufficient evidence for a reasonable jury to return a verdict for" the Government); *United States v. $77,000*, 2012 WL 1196498, at *5 (E. D. Cal. Apr. 10, 2012) (probable cause inquiry at summary judgment is whether "evidence presents a sufficient disagreement to require submission to a jury"); *United States v. $79,010*, 2012 WL 1150849 at *12 (D. Ariz. Apr. 5, 2012); *United States v. $20,280*, 2011 WL 4448735, at *4 (C. D. Cal. Sept. 13, 2011) (denying summary judgment because a "reasonable jury could conclude that [the Government] acted with probable cause").

**motions are limited to those based on defects in the pleadings, as set forth in Rule 12 . . . A claimant may, of course, move for the entry of summary judgment . . . once discovery is complete.  H.R. Rep. No. 105-358, pt. 1, at 47 (1997).**

## B.  <u>Probable Cause Standard on Summary Judgment</u>

Probable cause exists when "there is a fair probability" that the Defendant Assets are subject to forfeiture.  *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "The standard for probable cause in forfeiture proceedings resembles that required to obtain a search warrant." *United States v. One 1978 Piper Cherokee*, 91 F. 3d 1204, 1208 (9th Cir. 1996).  "[P]robable cause is not an exacting standard."  *United States v. Currency*, 283 F.3d 977, 980 (9th Cir. 2002).  Indeed, "the standard of probable cause to support a seizure for forfeiture is *less precise and rigorous* than that required to obtain a search warrant . . . ." *United States v. Johnson*, 572 F.2d 227, 234 (9th Cir. 1978) (emphasis added).

Probable cause may even "be founded upon hearsay and upon information received from informants."  *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *United States v. 56-Ft. Motor Yacht*, 702 F.2d 1276 (9th Cir. 1983) (same).  As explained in *United States v. One Lot*, 103 F.3d 1048 (1st Cir. 1997) (internal citations omitted):

> **The government aptly likens probable cause to a wall, each of whose bricks represents a piece of evidence in the overall probable cause equation. Courts 'review each piece of evidence only to determine whether it is probative, not whether it establishes probable cause standing alone.'  Even 'where no particular circumstance is conclusive,' it is 'the aggregate of the facts' that is examined.  [Claimant] attacks each brick alone, but fails effectively to attack the wall of probable cause.**

A "gap as to any one matter . . . should not sink [the] case; rather, that deficiency . . . may be compensated for . . . by a strong showing as to . . . other indicia of reliability."  *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013); *United States v. Casimiro-Benitez*, 533 F.2d 1121, 1123 (9th Cir. 1976) (for probable cause, courts must consider all facts known; it is immaterial that each fact considered individually is consistent with innocent behavior).

## II.    DISCUSSION

### A. "Reasonable Jury" Could Find At Trial That Probable Cause Exists

Exhibit A identifies specifically "every fact upon which [the Government] believes shows that it had probable cause to institute this action on [the Filing Date]."  TR, at 8, fn. 6.  EG law prohibits public officials, like Nguema, from engaging in commercial activities relating to their public office,[3] seeking contributions relating to their public duties,[4] stealing public funds,[5] and abusing their public office.[6]  Because a "reasonable jury," could find based upon the aggregate evidence in Exhibit A "viewed through the lens of common sense" that that there is a "fair probability," that Nguema violated EG law, and the Defendant Assets constitute the proceeds of that misconduct, Claimants' motion fails. *Harris*, 133 S. Ct. at 1058.

***Nguema's Misappropriation of Public Infrastructure Funds.***  Nguema, while serving as Infrastructure Minister, used General Work (GW), an infrastructure firm run by Igor Celotti, an Italian national, to misappropriate public infrastructure funds.  In 2009, Italy's Guardia di Finanzia (Italy), a law enforcement agency with specialized training in financial investigations and money laundering, informed the Government that Nguema controlled a network of bank accounts (the European Accounts), possessing "markers of money laundering," that were "funded with government revenues stolen by [President Obiang] and [Nguema]."  Manzanares  Decl., Ex. 26, DOJ_415; Ex. 27, DOJ_419.  *See also Hart*, 450 F.3d at 1067 (officers may draw on their "own experience and specialized training to make inferences . . . that might well elude an untrained person").  Nguema's

---

[3] *See* Ex. B, Art. 198 (prohibiting officials from taking advantage of their position to involve themselves in commerce), Art. 400 (prohibiting officials from acting in concert with third parties regarding public contracts), Art. 401 (prohibiting officials from holding an interest in contracts or operations in which he is involved as a public official), Art. 404 (prohibiting officials from participating in "for-profit transactions" relating to their jurisdiction).
[4] *See id.*, Arts. 385, 386, 387 & 390 (prohibiting officials from soliciting or receiving money to perform certain acts).
[5] See *id.*, Art. 394 (stealing public funds), Art. 196 (expropriating property).
[6] See *id,* Art. 131 (abuse of public office).

European Accounts were opened by Celotti in the names of twenty-two off-shore shell companies through more than twenty different nominees.  Manzanares  Decl., Ex. 24, DOJ_318-319.  *See, e.g., United States v. Tobin,* 676 F.3d 1264, 1290 (11th Cir. 2012) (needlessly complex transactions evidence laundering);  *United States v. Chesney*, 10 F.3d 641, 644 (9th Cir. 1993) (use and movement of funds through nominee accounts opened in names of third parties evidences intent to conceal).

During an extensive briefing in 2009, Italy described evidence showing that Nguema used GW to launder "stolen" public infrastructure funds.  Manzanares  Decl., Ex. 26, DOJ_415; Ex. 27, DOJ_419.  Nguema controlled these accounts to store "stolen" state funds, as well as kickbacks, Celotti paid directly to Nguema.  *Id.*, Ex. 26, DOJ_415; Ex. 27, DOJ_419.  Indeed, according to Italy, Celotti paid Nguema an amount equivalent to 45 percent of GW's revenue.  *Id.*, Ex. 24, DOJ_317; Ex. 25A, DOJ_3857.  *See Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998) (police may rely on reports and conclusions of another law enforcement agency for probable cause).

The same year that Celotti opened these European Accounts, Nguema acquired his $30 million Malibu estate (Sweetwater).  Underscoring the nexus between Nguema and Celotti is the fact that Nguema sent communications relating to Sweetwater's acquisition directly from Celotti's office.  On April 2, 2006, for instance, Nguema faxed documents relating to Sweetwater to his U.S. real estate lawyer from Celotti's office in EG. Manzanares  Decl., Ex. 57, Senate-PSI-93971, 93973-74, 93976, 94046-47, 97840.  Again, in January 2008, Michael Berger, Nguema's associate, sent another fax from Celotti's office, requesting that funds be sent to Unlimited Horizon, Inc., a shell company controlled by Nguema, to pay for his American expenses (of which the maintenance of Sweetwater was a substantial portion).  *Id.*, Ex. 58, Senate-PSI-90696.

Although Claimants contend that Italy based its conclusions solely upon news media, (Cl. Reply at 15), *this is not true*.  Italy in 2009 described to the United States the specific

evidence collected during its investigation.  This evidence included (i) information from GW's shareholders (who Italy identified by name); (ii) financial and banking records collected from Celotti's home pursuant to a search warrant; (iii) interviews of "numerous witnesses" knowledgeable about GW; and (iv) an analysis of Celotti's financial and banking records.  *Id.*, Ex. 24, DOJ_317; Ex. 27, DOJ_419-20.  *See One 56-ft. Motor Yacht*, 702 F.2d at 1284 (relying on evidence collected by foreign police).

   ***Nguema's Attempt to Misappropriate $40 Million***.  Two years before Nguema acquired Sweetwater, he attempted to misappropriate $40 million in state funds.  Nguema approached Stephen Fuller, a Gulfstream executive, and proposed that Ocean Energy (OE), an oil company, "assume the payment obligations for" a $40 million aircraft on his behalf. Graf Decl., Ex. 6A, DOJ_130.  In return, Nguema assured Fuller that the EG Government would reimburse OE for the same amount.  *Id.* Ex. 5, DOJ_125; Ex. 6, DOJ_116-117. Although Fuller opined that Nguema was "react[ing] to Gulfstream's pressure [to provide payment, and Nguema] was grasping for a solution," it is telling that Nguema's so-called "solution" was to steal state funds from EG's treasury.[7]  *Id.*, Ex. 6, DOJ_125.

   Although Gulfstream rejected Nguema's proposal, and this failed attempt to divert state funds—as the Court noted—cannot "by itself" demonstrate probable cause, TR at 10, it is certainly "relevant to the alleged factual backdrop as a whole."  *See* Order, ECF No. 68-1 at 5-6, n. 5 (citing *United States v. $97,667*, 538 F. Supp. 2d 1246, 1253 (C. D. Cal. 2007)).  Indeed, the Government's evidence must be viewed in the aggregate—not in pieces, as Claimants urge.  As the Ninth Circuit held, the court must not "atomize the probable cause inquiry by examining pieces of evidence independent of one another," but

---

[7] Moreover, although Fuller believed in 2004, that Nguema's $10 million payment was a "legitimate transaction," he later recalled in 2011 that the company's general counsel eventually became "very concerned" about Gulfstream's "criminal exposure" and the deal ultimately "fell apart."  Manzanares Decl., Ex. 28, DOJ_391.  Indeed, in 2004, Raymond Banoun, Gulfstream's counsel, told federal agents that although "it was clear to [Gulfstream]" that the aircraft was being sold to Nguema (not EG), "it was difficult for Gulfstream to determine if the money for the aircraft purchase was [Nguema's] or Equatorial Guinea's money."  Graf Decl., Ex. 6, DOJ_117.

rather must view the evidence as a whole.  *See Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006); *United States v. $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988).

   ***Nguema's Attempted Extortion of U.K. Firm in 2003.***  Nguema also attempted to extort a U.K. firm that planned to build a hotel in EG.  Graf Decl., Ex. 7, DOJ_83-84.  EG law prohibits extortion, Arts. 493, 496, as well as public officials from seeking contributions relating to their official duties, Arts. 385-387, 390, and engaging in commercial activities relating to their jurisdiction, Arts. 198, 400, 401, 404.  Yet, in 2003, Nguema refused to allow this firm to proceed unless it first provided him with an equity interest in the hotel.  *Id*.  Although the firm refused, Nguema's conduct—when combined with Exhibit A's other evidence—further enhances the Government's probable cause. *United States v. Hartog*, 513 F.3d 991, 999-1000 (9th Cir. 2008) (unsuccessful attempt supports probable cause).

   ***Extortion of EG Timber Businesses***.  Nguema, while serving as Forestry Minister, demanded that timber companies pay him money.[8]  Nguema, according to *Foreign Policy Magazine*, "call[ed] emergency meetings of all logging company heads in which he would announce some new tax on logging operations."  Graf Decl., Ex. 27, DOJ_840.  One witness, who worked in the timber industry, said that Nguema "slapped an extra 'tax'— payable directly to him—on wood harvested,"  while another witness recalled that it was impossible for timber companies to operate "without paying off [Nguema]."  *Id.* at 840-41. Similarly, Global Witness, a non-governmental organization (NGO), issued a study in 2009, in which a former U.S. official was quoted as saying, "There were Malaysian, North Korean and Chinese logging camps on the [EG] mainland, and [Nguema] collected cash from them for . . . logging operations."  *Id.,* Ex. 16, DOJ_1058.  Although these witnesses were not identified, it is well-established that the Government may rely upon "anonymous tips,"

---

[8] Under EG law, Nguema was prohibited from committing extortion, Arts. 493, 496,503, seeking contributions relating to his official duties, Arts. 385-390, and charging illegal taxes, Arts. 200, 202.

coupled with other relevant evidence, for probable cause.  *See, e.g., Hart*, 450 F.3d at 1066 (noting two uncorroborated "anonymous tips" to police were valuable for probable cause). While such information is certainly not dispositive, the use of "anonymous tips" by law enforcement is not uncommon, and—as noted by the Ninth Circuit—may play an "important role" for probable cause.[9]  *United States v. Roberts*, 747 F.2d 537, 544 (9th Cir. 1984) ("anonymous tip" played "important part" for probable cause); *see also Gates*, 462 U.S. at 245-46 (relying in-part on anonymous letter).

   ***Nguema is the Subject of Other Criminal Investigations*.**  Nguema was the subject of investigations in France and Italy.  Information from both of those investigations was shared with the United States and served, in part, as its basis for probable cause.  Like Italy, France launched an investigation into allegations that Nguema used "stolen public assets" to acquire property.  Manzanares Decl., Ex. 2, Senate-PSI-124611-124612.  Indeed, France "confirmed most of [these] allegations."  *Id.* at Senate-PSI-124611.

   As explained by the Ninth Circuit in *$493,850*, the fact that a claimant is the subject of an investigation is probative.  Indeed, the Court in that case granted summary judgment for the Government in part because the claimant, who was not himself accused of any criminal conduct, was "link[ed]" to those who were.  518 F.3d at 1169.[10]  Here, the evidence provided by Italy and France is both stronger and far more specific.  *First*, both Italy and France concluded that Nguema *himself*, rather than others, was engaged in criminal conduct.  Manzanares Decl., Ex. 2, Senate-PSI-124611; Ex. 27, DOJ_419.  *Second*, in contrast with the DEA's generalized allegations in *$493,850* about the claimant and his truck's "link[age]" with criminals, Italy described specific witness interviews and financial

---

[9]  The information in these "anonymous tips" is especially material because they are consistent with other evidence in Exhibit A, including (i) Nguema's attempt to extort a U.K. firm in EG, Graf Decl., Ex. 7, DOJ_83-84; (ii) Nguema's receipt of "stolen" state funds through GW, Manzanares Decl., Ex. 27, DOJ_419;  and (iii) Nguema's attempt to misappropriate public funds in 2004, Graf, Decl., Ex. 6A, DOJ_130.

[10]  *See also One Lot*, 103 F.3d at 1054-55 (while association with criminals was not itself dispositive, it was relevant when combined with other suspicious conduct).

documents directly implicating Nguema in criminal activity.  *Id.*, Ex. 24, DOJ_317; Ex. 27, DOJ_419.  *Third*, where *$493,850* did not describe the relationship between claimant and the criminals with whom he was "link[ed]," Italy described in detail Nguema's relationship with other third parties, including Celotti, with whom he engaged in criminal activity.  *Id.*

   ***Nguema's Known Net Worth Exceeded $100 Million.***  Nguema acquired more than $100 million in assets while earning less than $100,000 per year as a public official.  *Id.*, Ex. 2, DOJ_124601-602; Ex. 41, DOJ_238-39; Ex. 42, DOJ_219-23.  Under the net worth doctrine, the discrepancy between Nguema's income and his net worth amounts to circumstantial evidence of nexus.  *See United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990) ("Evidence that [defendant's] expenditures . . . hugely exceeded any verifiable income suggests . . . money was derived illegally.").  This basis for probable cause rests on the commonsense notion that when a person's legitimate income cannot possibly account for his net worth, and a "fair probability" exists that he generated income illegally, a reasonable probability exists that the unexplained portion of their net worth is derived from illicit activities.  Although, as the Court notes, the Government bears the burden of showing probable cause *at trial*, (TR, 15), the standard is different at the summary judgment stage, where the Government need only show sufficient evidence for a "reasonable jury" to find probable cause.  Given that Nguema's net worth is more than 1000 times his public income, and this income "cannot possibly account for the level of wealth displayed." *United States v. Edwards*, 885 F.2d 377, 390 (7th Cir. 1989), "[t]he sheer magnitude of [Nguema's] expenditures [] supports an inference" of probable cause,  *United States v. Parcels*, 903 F.2d 36, 40 (1st Cir. 1990).

   Claimants, however, contend that Nguema acquired his net worth legitimately.  Not only is this factually unsubstantiated but it is irrelevant.  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  To

show probable cause, "the government's evidence need not exclude other plausible hypotheses of the source of [claimant's] money." *United States v. $250,000*, 808 F.2d 895, 899 (1st Cir. 1987); *Ramirez v. Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) (for probable cause need not "rule out [] possibility of innocent behavior."). Indeed, "[r]arely will a suspect fail to proffer an innocent explanation for [his] suspicious behavior." *Ramirez*, 560 F.3d at 1024. Here, Claimants' attempt to posit a legitimate explanation for Nguema's fortune "at most create[s] a genuine issue of material fact" necessitating a trial. *United States v. $80,010*, 2009 WL 7520021, at *8 (C. D. Cal. Jul. 9, 2009); *see also United States v. Booker,* 612 F.3d 596, 601 (7th Cir. 2010) (Government need not exclude "the possibility of an innocent explanation").

Similarly, Claimants' reliance on *United States v. One Gulfstream G-V Jet,* 2013 U.S. Dist. LEXIS 56354 (D.D.C. Apr. 19, 2013), a related forfeiture complaint involving Nguema, belies their assertion that the United States lacked probable cause. *First*, that court explicitly noted that allegations of Nguema's "outlandish wealth" when "viewed in tandem with other details suggesting illegal behavior" could show a "reasonable belief" that the Government would prevail at trial. *Id.* at 36. *Second,* for probable cause, the fact that Claimant—as explained above—purportedly has an innocent explanation for his "outlandish wealth" is immaterial, especially when that explanation (i.e., engaging in commercial activities relating to his office) is against EG law. *Third*, the procedural context of the two cases is distinct. At issue in the D.C. case was whether the Government's claim was pled correctly under Rule 12(b)(6). Here, Claimants move for summary judgment under Rule 56 for lack of probable cause—a legal requirement that does not even exist in the D.C. Circuit. Indeed, as noted by this Court in denying Claimants' Rule 12 motion, the Government is not required to demonstrate nexus at the pleading stage. *See* Tr., Sept. 6. 2012, at 9 ("But [the Government is] not required to allege the nexus to show evidence that they had at the time they filed this action. They are not required to do that . . . .").

Moreover, even if, *arguendo*, Nguema earned hundreds of millions of dollars in profit from his businesses—a representation for which he has not shown a scintilla of verifiable evidence—these representations only serve to underscore Nguema's law violations.  Under EG's anti-corruption laws, which one Department of State (DOS) cable describes as even "more stringent" than those of the U.S., EG public officials, like Nguema, are explicitly barred from engaging in commercial activities relating to their public office.[11]  Graf Decl., Ex. 15, DOJ_585.  Yet, while serving as Forestry and Infrastructure Minister, Nguema *himself* claimed that his timber business earned a "windfall" by "clear-cut[ting]" EG forests, *id.* at DOJ_586, and affirmed in an affidavit, that he generated income from construction contracts awarded to his infrastructure firm.  Manzanares Decl., Ex. 53, DOJ_569-570.  According to Nguema, when EG awards a public contract, "a cabinet minister ends up with a sizeable part of the contract price in his bank account."  *Id.* at DOJ_569.  Therefore, even the business income that Nguema purports is legitimate, runs afoul of EG's "stringent" anti-corruption laws.[12]

***Nguema's Deceptive Use of Shell Companies***.  Nguema's use of shell companies further evidences probable cause.  Although the use of a shell company "without further allegations," as noted by the court, TR at 15, may not by itself give rise to probable cause, the fact that Nguema manipulated more than six different shell companies to conceal the origin, source and ownership of assets is probative.  Manzanares Decl., Ex. 2, Senate-PSI-124615-17, 124641-44.  *See United States v. Golb*, 69 F.3d 312, 313-14 (9th Cir. 1995) (use

---

[11] *See* Art. 198 (taking advantage of position to involve oneself in public contracts), Art. 401 (holding a financial interest in contracts or operations relating to one's jurisdiction), and Art. 404 (participating in "for-profit transactions" relating to one's jurisdiction).

[12] Claimants selectively quote from a DOS cable to suggest that Nguema's activities are legal in EG.  (Reply, 11).  This is inaccurate.  Although the IMF told DOS that certain "sweetheart deals, influence peddling, construction contracts and finder's fees" may be legal in EG, the IMF was not referring to conduct that *per se* violates EG's Penal Code (the conduct at issue in this action), nor was it even referring explicitly to Nguema (the subject of this action).  Graf Decl., Ex. 14, DOJ_591.  Indeed, to the contrary, the cable explains that "occasionally lines do get crossed."  *Id.*  Likewise, other DOS reports on EG have found that, "Official corruption in all branches of the [EG] government remained a serious problem," and that while EG maintains "stringent" anti-corruption laws, its officials "frequently engaged in corrupt practices with impunity."  Manzanares Decl., Ex. 1 at 100.

of corporate shell to acquire assets evidences money laundering); *Hartog*, 513 F.3d at 1000 (claimant's use of aliases and nominees "all support probable cause").

In acquiring title to Sweetwater, Nguema did far more to conceal his ownership than to simply acquire title in the name of a shell company (the LLC). Manzanares Decl., Ex. 62, Senate-PSI-120252. Nguema (i) had a nominee inform the IRS falsely that she—rather than Nguema—was the LLC's lone member, *id.*, Ex. 36, Senate-PSI-85847; (ii) had this same nominee inform the IRS falsely that she was the LLC's principal officer general partner, grantor owner or trustor, *id.*, Ex. 37, Senate-PSI-94082; (iii) failed initially to disclose his ownership of the LLC in its articles of organization, Ex. A, *id.*, Ex. 34, Senate-PSI-85865; (iv) required his realtor not to disclose the LLC's acquisition of Sweetwater, *id.*, Ex. 2, Senate-PSI-124676-77, 125021-26; and (v) had the escrow agent draft the deed so as to ensure that the LLC had "no tie in with" him, *id.*, Ex. 61, Senate-PSI-100211. Similarly, in acquiring the Jackson Memorabilia, Nguema used an alias. Nguema's assistant instructed the auction house to "make sure that [Nguema's] name does not appear anywhere, he should be invisible" in the transaction. *Id.*, Ex. 64, DOJ_3534. "[I]t is doubtful [Nguema] would have taken these efforts if the source of those funds were legitimate." *United States v. $19,985.99*, 2011 WL 5303131, at *3 (C. D. Cal. Nov. 1, 2011).

In opening bank accounts, for instance, Nguema's nominees defrauded six different U.S. banks. For instance, in 2007, Nguema's associate, who opened an account at Comerica Bank on his behalf, made representations—many of which were false—to the bank, including that Nguema was unemployed, and that he neither performed, nor was associated with someone who performed, "important public functions for a foreign state." Manzanares Decl., Ex. 33, Senate-PSI-110285. Similarly, Michael Berger, who opened an account at Citibank for Nguema's shell company claimed falsely that this entity had no owners who were not U.S. citizens and misled the bank into believing that this company was not linked to any senior foreign public official. *Id.*, Ex. 2, Senate-PSI-124988.

Contrary to Claimants' arguments, the fact that Nguema may possess an innocent explanation for this conduct is both premature and irrelevant.  At summary judgment, the Court need not weigh the evidence or make credibility determinations.  Nor is the Government required to "rule out" innocent hypotheticals.  *See United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995) ("seemingly innocent conduct" can give rise to probable cause); *United States v. $129,727*, 129 F.3d 486, 489-90 (9th Cir. 1997) (fact that acts if reviewed separately might be consistent with innocent behavior is immaterial for probable cause).  As noted by the Supreme Court, "innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to [] impose a drastically more rigorous definition of probable cause than" appropriate.  *Gates*, 462 U.S. at 244 n.13.

*Nguema's Conflicting and Inconsistent Explanations as to the Sources of His Wealth*.  Nguema's dizzying array of non-answers and "inconsistent stories" when asked about the source of his wealth further evidences probable cause.  *See, e.g., United States v. $493,850*, 518 F.3d 1159, 1169 (9th Cir. 2008); *$127,000*, 2012 WL 2917467 at *11 ("conflicting . . . information" relevant for probable cause).  While perhaps not dispositive on its own, Nguema's repeated inconsistent responses to multiple inquiries regarding the sources of his wealth—viewed in conjunction with other evidence in Exhibit A—suggests strongly under the net worth theory that Nguema does not "possess a legitimate source of income [that] support[s his] affluent lifestyle."  *United States v. Jackson-Randolph*, 282 F.3d 369, 377 (6th Cir. 2002).  This Court's TR seemed to suggest that inconsistent answers if delivered over a period of years, may not ultimately prove inconsistent.  Here, however, the inconsistent answers all relate to the same subject; the sources of Nguema's wealth.  At the very least, the evidentiary weight of Nguema's representations are credibility determinations that are not easily decided at the summary judgment stage, where all reasonable inferences must be drawn in favor of the Government.

Contrary to Claimants' arguments, courts have made it clear that providing inconsistent explanations regarding the sources of one's wealth is relevant for probable cause.[13]  *See*, *e.g.*, *United States v. $22,474*, 246 F.3d 1212, 1217 (9th Cir. 2001) (noting relevance of "inconsistent statements about the money . . ."); *United States v. $30,670*, 403 F.3d 448, 467 (7th Cir. 2005) ("All of these inconsistencies are relevant . . .").  Indeed, it is a "common sense reality of everyday life" that individuals—especially someone who claims he generated more than $300 million in legitimate business income—can substantiate the sources of their wealth.  *See United States v. $242,484*, 389 F.3d 1149, 1161 (11th Cir. 2004) (explaining probable cause standard).

***Nguema's Link to His Father's Corrupt Regime***.  Nguema, like the claimant in *$493,850*, is closely "link[ed]" to individuals and an entity—namely, his father's government—who are accused of misconduct—namely, massive corruption.  *See* 518 F.3d at 1168 (relevant that claimant, who was not accused of criminal conduct, was "link[ed]" to others who were); *see also* TR, 12, n. 10.  In addition to being the subject of two Congressional investigations focused on corruption, President Obiang's regime, in which Nguema is a minister, is—according to a former U.S. ambassador to EG—"the world's finest example of a country privatized by a kleptomaniac without a scintilla of social consciousness."[14]  Manzanares Decl., Ex.1, at 100.  Another former ambassador remarked that, "[President] Obiang is a thief and he heads a government of thieves."  *Id.* at 99.  The EG Government has been criticized widely by civil society, the media, multilateral organizations, and foreign governments, including the U.S. State Department, as being

---

[13] In *United States v. $223,178*, 2008 WL 4735884, at *7 (C.D. Cal. Apr. 30, 2008), for instance, the court granted the Government summary judgment in-part because Claimant—like Nguema—could not substantiate the sources of his wealth, other than to make "conclusory, self-serving statements" that, at best, underscore the existence of a material dispute of fact, necessitating a trial.

[14] Indeed, Nguema's and his family's misuse of Riggs Bank was the subject of a major Senate investigation of Riggs, a financial institution which was prosecuted and convicted for its failure to adhere to the Bank Secrecy Act with respect to, among other things, its relationship with Nguema and his family.  *See* Manzanazres Decl., Ex. 1 at 107-109.

among the most corrupt regimes in the world.  For instance, in 2006 (the same year Nguema acquired Sweetwater) DOS reported that the EG Government was dominated by President Obiang's "inner circle," and that EG "officials frequently engage[] in corrupt practices with impunity."  *Id.* at 100.  While not dispositive, these facts provide relevant context and background information through which to examine the evidence in Exhibit A.

   ***Nguema's Possession of Bulk Cash***.  Nguema's possession of millions of dollars in bulk cash is also material.  Manzanares Decl., Ex. 55, DOJ_179.  "A common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash . . . . because there are better, safer means of transporting cash if one is not trying to hide it from the authorities." *$127,000*, 2012 WL 2917467, at *11.[15]

   ***Aggregate Evidence Amounts to Probable Cause.***  Here, the cumulative weight of the Government's evidence—viewed in the "aggregate" and through the "lens of common sense"—is more than ample for a "reasonable jury" *at trial* to find probable cause.  *See United States v. $83,310.*78, 851 F.2d 1231, 1235 (9th Cir. 1988) ("In applying the 'aggregate of facts' test, no single fact is dispositive . . . ."); *United States v. $67,220*, 957 F.2d 280, 284 (6th Cir. 1992) ("To determine whether the information is sufficient [for probable cause], a court must 'weigh not the individual layers but the 'laminated' total.''").

### B. If the Court Grants Claimants' Motion, Which It Should Not, Judgment Should Be Entered Without Prejudice to the Government's Right to File a New Action

   It is a bedrock principle of civil procedure that if an action is disposed of on a ground that does not reach the merits of the suit, nothing bars the plaintiff from re-filing its case in the future.  *See Costello v. United States*, 365 U.S. 265, 285 (1961) ("If the first suit was dismissed for . . . any ground which did not go to the merits of the action, the judgment

---

[15] Indeed, contrary to Claimants' contention that bulk cash is only associated with drug traffickers, Congress in section 371 of Pub. L. 107-56 (the federal bulk cash smuggling statute), noted explicitly that the transportation of "cash in bulk" is associated not only with drug traffickers but other criminal offenses, including "terrorism, money laundering, racketeering, tax evasion and similar crimes."

rendered will prove no bar to another suit"); *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) ("dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of [a] substantive claim" will not bar a subsequent action).  Although Federal Rule 41(b) provides that "any dismissal . . . other than . . . for lack of jurisdiction . . . operates as an adjudication on the merits," the Supreme Court in *Costello* held that Rule 41(b)'s use of the term "lack of jurisdiction" is one of art that should be interpreted broadly to include a plaintiff's failure to comply with statutory prerequisites.  *Id.* at 287.  A "[f]ailure to satisfy a condition to litigation does not imply [] that the plaintiff loses outright."  *Brooks-Ngwenya v. Thompson*, 2006 U.S. App. LEXIS 25868, at *4 (7th Cir. Oct. 17, 2006).  "A suit that is premature because a condition to litigation remains unsatisfied must be dismissed without prejudice. If the condition can be satisfied while time remains in the statute of limitations, then a new suit may be filed and resolved on the merits."  *Id.*  (internal citation omitted).

In *Costello*, the United States sought to strip the petitioner of his citizenship.  365 U.S. at 268.  The Government's first action was dismissed because it failed to file an affidavit of good cause, which—like the probable cause requirement in forfeiture actions— "is a [statutory] prerequisite to the initiation of denaturalization proceedings," and an important procedural protection to ensure the fairness of a process aimed at divesting individuals of a "precious right"—namely, their U.S. citizenship.  *Id.* at 269.  The Government filed a second suit after complying with this statutory "prerequisite."  *Id.* Petitioner—citing Rule 41(b)—argued that the Government's second action was barred because of the first action's dismissal.  The Supreme Court, as noted above, disagreed. Justice Brennan, writing for the majority, explained:

> We regard the exception [to Rule 41(b)] as encompassing those dismissals which are based on plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of [a] substantive claim.

17

*Id.* at 285.  "The origins of this exception, according to Justice Brennan were in the common law rule that 'dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim.'"  *Criales v. American Airlines*, 105 F.3d 93, 96 (2d Cir. 1997).  "If the first suit was . . . disposed of on *any ground which did not go to the merits of the action*, the judgment rendered will prove no bar to another suit."  *Costello*, 365 U.S. at 286 (emphasis added).

*Costello* is consistent with the principle that civil actions should be resolved on their merits, a factor which militates in favor of the Government.  *See Krupski v. Costa Crociere*, 130 S. Ct. 2485, 2494 (2010) (noting "preference expressed in the Federal Rules . . . for resolving disputes on their merits"); *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1982) (noting "the strong policy underlying the Federal Rules [] favoring decisions on the merits").  "[D]ismissal with prejudice is the exception, not the rule, in federal practice. . ." *Rollins v. Wackenhut Serv.*, 703 F.3d 122, 131 (D.C. Cir. 2012); *cf. Sandpiper Village Condo. Assoc. v. Louisiana-Pacific*, 428 F.3d 831 (9th Cir. 2005) (res judicata principles apply only if plaintiff "enjoyed a 'full and fair opportunity' to litigate . . . earlier case").  It follows, therefore, that where an action is dismissed for failure to satisfy a "precondition" to litigation, but the plaintiff has not yet received a "full and fair" opportunity to litigate the merits of his or her suit, the earlier dismissal "should not bar a subsequent suit in which the defect has been cured" so long as the relevant "precondition" is one "that may be remedied by the time the second suit is filed."  *In re Sonus Networks*, 499 F.3d 47, 60 (1st Cir. 2007); *see also Restatement (Second) of Judgments* 20(2) ("A valid and final personal judgment for the defendant, which rests on . . . plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after . . . the precondition has been satisfied . . ."); 9 Wright & Miller, Fed. Practice and Procedure, Civil 2d 2373, at 405 (1995) ("Rule 41(b) does not apply [where] a case is dismissed because of some initial bar to reaching the merits of the plaintiff's claims . . .").

The above principles apply here.  In the instant case, although the Court determined that the Government's pleadings adequately state a claim under the law, ECF No. 68-1, Claimants seek summary judgment because the Government purportedly failed to satisfy Section 1615's prerequisite for instituting a forfeiture action—namely, having probable cause at the filing stage.  Section 1615 requires "[t]hat probable cause shall *first* be shown [by the Government] for the institution of such suit or action," before the merits of the action are adjudicated.  19 U.S.C. § 1615 (emphasis added).  It is well-accepted that Section 1615's "probable cause" requirement—like the "good cause" requirement in *Costello*—is a threshold issue distinct from the merits of the action.  *See, e.g., United States v. $129,727*, 129 F.3d at 492 (probable cause is a threshold issue); *United States v. $10,700*, 258 F.3d 215 (3d Cir. 2001); *United States v. $31,990*, 982 F.2d 851, 856 (2d Cir. 1993).  This type of "precondition requisite" to instituting an action is precisely the type of "threshold" issue, distinct from the merits of an action, that *Costello* sought to address.  *See United States v. $127,000*, 2012 U.S. Dist. LEXIS 99864, at *23-24 (N. D. Cal. Jul. 17, 2012) (Section 1615 "describes the Government's burden to get in the courthouse door").  Indeed, in similar cases where forfeiture actions were dismissed on probable cause grounds, courts have clarified that their dismissals were without prejudice.  *See, e.g., United States v. $38,000*, 816 F.2d 1538 (11th Cir. 1987) (dismissed without prejudice after finding Government lacked probable cause); *United States v. $9,800*, 952 F. Supp. 1254 (N. D. Ill. 1996); *United States v. One Partially Assembled Drag Racer*, 899 F. Supp. 1334 (D.N.J. 1995); *United States v. One Parcel*, 705 F. Supp. 710 (D.R.I. 1989) (dismissing complaint without prejudice for lack of probable cause), *rev'd on other grounds,* 921 F.2d 370 (1st Cir. 1990).

In *$493,850*, 518 F.3d at 1168, the Ninth Circuit explained that Section 1615's probable cause requirement was a threshold issue governing whether the Government could "get in the Courthouse door."  *Id.*  Similarly, in *United States v. $191,910*, 16 F.3d 1051, 1070 (9th Cir. 1994), a case which Claimants rely heavily upon, the court explained that in

the forfeiture context, a showing of probable cause, which authorizes the issuance of *in rem* arrest warrants, is a "jurisdictional *requirement.*" *Id.*

Accordingly, consistent with the teachings of the Supreme Court in *Costello*, as well as this Circuit's strong policy favoring the resolution of cases on their merits, see *Eitel*, 782 F.2d at 1472, any dismissal by the Court because of the Government's purported failure to satisfy Section 1615's "threshold" issue of probable cause, should be entered without prejudice to the Government's right to re-file the dismissed claims (i.e., non-bank fraud claims) in the future based upon new and additional evidence.[16]

**C. Rule 44.1 Hearing Is Not Necessary At This Time**

The Second Amended Complaint (SAC) alleges that Nguema violated EG law and provided an English-language translation of the relevant laws.  *See* SAC, Att. C.  Despite two rounds of briefing on Claimants' motion to dismiss, and an additional round of briefing on summary judgment, not once have Claimants' challenged the validity or meaning of these laws.  *See APL v. UK Aerosols*, 582 F.3d 947, 955 (9th Cir. 2009) (requiring reasonable notice of issues for Rule 44.1 hearing).   As such, given that all reasonable inferences must be drawn in favor of the Government, and neither party contests the meaning of these laws (as reflected in their plain language), a further hearing is not necessary now.  Indeed, until the factual disputes pertinent to these EG laws come into clearer focus through discovery, the precise contours of what, if any, EG law issues that may be pertinent at trial cannot be ascertained.  *Rationis Enters. v. Hyundai Mipo Dockyard*, 426 F.3d 580, 586 (9th Cir. 2005).

**IV. CONCLUSION**

For the foregoing reasons, Claimants' motion fails.  If, however, the motion is granted, judgment should be entered with prejudice only as to the issue of whether the Government had probable cause on the Filing Date.

---

[16] Analogously, even where property is seized improperly without probable cause, this does not jeopardize the Government's right to later seek forfeiture of that property.  *See $97,667*, 538 F.Supp. 2d at 1246, n.3; *U.S. v. 1978 Mercedes*, 711 F.2d 1297, 1302-03 (5th Cir. 1983).

DATED: July 11, 2013                 JAIKUMAR RAMASWAMY, Chief
                                     LINDA M. SAMUEL, Deputy Chief
                                     DANIEL H. CLAMAN, Assistant Chief
                                     CRIMINAL DIVISION


                                     /S/ *Woo S. Lee*
                                     WOO S. LEE
                                     STEPHEN A. GIBBONS
                                     Trial Attorneys
                                     United States Department of Justice


                                     ANDRÉ BIROTTE, JR.
                                     United States Attorney
                                     STEVEN WELK
                                     Assistant United States Attorney


                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

21