QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Duane R. Lyons (Bar No. 125091)
  duanelyons@quinnemanuel.com
  Brian M. Wheeler (Bar No. 266661)
  brianwheeler@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

FOREMAN DEGEURIN & DEGEURIN
  Mike DeGeurin (*Admitted Pro Hac Vice*)
  mdegeurin@foremandegeurin.com
300 Main Street, Third Floor
Houston, Texas 77002
Telephone: (713) 655-9000
Facsimile: (713) 655-1812

FISHER & KREKORIAN
  Kevin Fisher (Bar No. 131455)
  rkf@fkslaw.net
2121 Park Drive
Los Angeles, California 90026
Telephone: (310) 862-1225
Facsimile: (310) 388-0805

Attorneys for Claimants Vice President Teodoro Nguema Obiang Mangue and Sweetwater Malibu, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ONE WHITE CRYSTAL-COVERED "BAD TOUR" GLOVE AND OTHER MICHAEL JACKSON MEMORABILIA; REAL PROPERTY LOCATED ON SWEETWATER MESA ROAD IN MALIBU, CALIFORNIA; ONE 2011 FERRARI 599 GTO, <br><br> Defendants. | CASE NO. 2:11-03582-GW-SS <br><br> Hon. George H. Wu <br><br> DECLARATION OF DUANE R. LYONS IN SUPPORT OF CLAIMANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLAIMANTS' MOTION FOR SUMMARY JUDGMENT ON THE LIMITED ISSUE OF PROBABLE CAUSE; OR, IN THE ALTERNATIVE, ORDER FINDING THE GOVERNMENT LACKED PROBABLE CAUSE AT THE TIME IT INSTITUTED THE ACTION FOR FORFEITURE *IN REM* <br><br> Hearing Date: August 19, 2013 <br> Time: 8:30 a.m. <br> Place: Courtroom No. 10 |

## DECLARATION OF DUANE R. LYONS

I, Duane R. Lyons, declare as follows:

1. I am a member of the bar of the State of California and of this Court and a partner at Quinn Emanuel Urquhart & Sullivan, LLP, attorneys for Claimants Vice President Teodoro Nguema Obiang Mangue and Sweetwater Malibu, LLC. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2. Attached hereto as Exhibit A is a true and correct copy of the Judgment entered in <u>United States v. $32,000 in U.S. Currency</u>, CIV 06-1766 PHX-DGC (D. Ariz. Apr. 30, 2007), as retrieved from PACER.

3. Attached hereto as Exhibit B is a true and correct copy of the Order to enter judgment filed in <u>United States v. U.S. Currency</u>, 1992 WL 209542 (N.D.N.Y. June 1, 1992), as retrieved from WestlawNext.

4. Attached hereto as Exhibit C is a true and correct copy of the post-remand Judgment entered in <u>United States v. $186,416.00 in U.S. Currency</u>, CV 05-6703-SVW(SHx) (C.D. Cal. May 13, 2010), as retrieved from PACER.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 31, 2013, at Los Angeles, California.

_____
Duane R. Lyons

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>vs.<br><br>$32,000 in U.S. Currency,<br><br>              Defendant.<br><br>and Regarding the Interest, if any, of Edward Leflore. | CIV 06-1766 PHX-DGC<br><br>**JUDGMENT** |

____       **Jury Verdict.** This action came before the Court for trial by jury. The issues have been tried and the jury has rendered its verdict.

_X_       **Decision by Court.** This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

    IT IS THEREFORE ORDERED AND ADJUDGED that the Court having granted Claimant Edward Leflore's Motion for Summary Judgment, [16], the United States shall return the $32,000 to Edward Leflore. This Complaint and action are hereby dismissed.

                                      Date: April 30, 2007

                                      RICHARD H. WEARE<br>
                                      Clerk/DCE

                                      <u>S/ Linda S. Patton</u><br>
                                      (By) Deputy Clerk

cc: all counsel

# EXHIBIT B

Case 2:11-cv-03582-GW-SS   Document 101   Filed 07/31/13   Page 6 of 16   Page ID #:3407

U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)

1992 WL 209542
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

UNITED STATES of America, Plaintiff,
v.
$31,990.00 IN UNITED
STATES CURRENCY, Defendant.

No. 89–CV–911.  |  June 1, 1992.

**Attorneys and Law Firms**

Gary L. Sharpe, U.S. Atty. Northern Dist. of New York, Syracuse, N.Y. (Charles E. Roberts, Asst. U.S. Atty., of counsel), for plaintiff.

Goldstein, Weinstein & Fuld Bronx, N.Y. (Elliot H. Fuld, of counsel), for Claimant, Luis Fernando Gonzalez.

**Opinion**

*MEMORANDUM DECISION AND ORDER*

HURD, United States Magistrate Judge.

**I. *INTRODUCTION*.**
*1 On July 25, 1989, a verified complaint *in rem,* pursuant to Rule C of the Supplemental Rules of Admiralty and Marine Claims (Supplemental Rules), and Title 21, United States Codes Section 881(a)(6) was filed by the plaintiff (Government) seeking the forfeiture of $31,990.00 in U.S. currency as the proceeds which were allegedly furnished or intended to be furnished in exchange for a controlled substance, traceable to such an exchange or used or intended to be used to facilitate a controlled substance transaction. In other words, the Government contends that this money was used to purchase drugs, or is the proceeds from narcotics sales. Louis Fernando Gonzalez (claimant), has filed a verified claim pursuant to Rule C(b) of the Supplemental Rules alleging that he has an ownership interest in the money, and demands restitution and the right to defend the action. He filed a bond in the amount of $3,199.00.

On April 2, 1992, the Government filed a Notice of Motion to admit into evidence at the time of trial, the refusal of the claimant to submit to a lie detector test. On April 8, 1992, the claimant filed a Notice of Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the complaint and direct the return of the money, with interest, to him. The Government filed affidavits in opposition to the claimant's motion for summary judgment. Oral argument was heard on both motions on April 27, 1992, in Utica, New York.

**II. *FACTS*.**
On August 28, 1988, at approximately 1:00 P.M., New York State Troopers Alan Lane and Thomas Craig were traveling on the New York State Thruway on patrol near Albany, New York. They observed a 1977 Cadillac gypsy taxi cab [1] traveling southbound. A computer check of the vehicle revealed that its registration was revoked and the owner was a wanted person. Therefore, the Troopers stopped the vehicle. The vehicle was being operated by Carlos Coste (Coste), with a Rafael Cabreja (Cabreja) as a passenger. Both men had been drinking. A search of Coste revealed one/half gram of cocaine and $96.00 cash. Cabreja possessed just $20.00 in cash. An inventory search of the vehicle uncovered the $31,990.00 wrapped with elastic bands in a plastic bag in the trunk. Coste and Cabreja both denied any knowledge of the money and said it did not belong to them or to the registered owner of the vehicle, Carlos Martinez (Martinez). Coste and Cabreja then said the money must belong to an unknown black male to whom they had given a ride from New York City to Schenectady. The money was seized and forwarded to the U.S. Marshal's office for the purposes of forfeiture.

As a result of the stop, Coste was arrested for criminal possession of a controlled substance and driving while intoxicated. Cabreja was arrested for criminal possession of a controlled substance. All charges on both men were adjourned in contemplation of dismissal (Criminal Procedure Law Section 170.55), and the six month period having expired, are now dismissed.

*2 The claimant contends that the money belongs to him and was merely left in the trunk of the taxi cab the day before the seizure, when he and Coste were in search of a truck to purchase for his business. He further states that the above facts do not establish probable cause to believe that the money is substantially connected to the exchange of a controlled substance.

In opposition, the Government has submitted the affidavits of New York State Police Investigators "John Smith" [2] and John Mays as experienced narcotics investigators with the opinion that there is probable cause to believe a substantial connection

EXHIBIT B

Case 2:11-cv-03582-GW-SS   Document 101   Filed 07/31/13   Page 7 of 16   Page ID #:3408

U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)

exists between the money and illegal drug trafficking. These opinions are based upon the following factors:

1. The large amount of money was wrapped in elastic bands and contained in a plastic bag in the trunk of a gypsy taxi cab.

2. The amount of money is approximately equal to the 1988 price of a kilo of cocaine ($30,000.00).

3. The seizure occurred on the New York State Thruway which is a major drug route between New York City and Schenectady.

4. The statements by the occupants that they had been to Schenectady which is the center of drug activity.

5. Coste, Cabreja, Martinez, and the claimant, are from the Dominican Republic, and their activities in this matter are consistent with the Dominican drug trafficking culture in the United States.

6. The explanation given by Coste and Cabreja regarding the unknown black male is incredible and consistent with drug traffickers attempt to cover up their illegal activities.

7. The claimant's refusal to submit to a lie detector test as evidence that if he is truly the rightful owner of the money and that it is unconnected to drugs, he would willingly take such a test.

8. The testimony and documentation of the claimant is not credible to support his position that the money is from his legitimate business activities.

The inference that the investigators seek to establish from the above is that Coste and Cabreja were returning to New York City with the proceeds of a sale of a kilo of cocaine in Schenectady. The vehicle was furnished by Martinez. The drugs were supplied by some unknown individuals, Coste, Cabreja, Martinez, or the claimant, but the claimant is either acting for himself or as a "stand in"[3] for the person or persons who are the real owners of this drug money.

### III. *DISCUSSION.*

#### A. *Motion for Summary Judgment.*
The Second Circuit recently detailed the precise standard by which Courts must review motions for summary judgment. The Court wrote:

Federal Rule of Civil Procedure 56(c) provides, of course, that the court shall grant summary judgment when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue of material fact, and the moving party is entitled to summary judgement as a matter of law. As the Supreme Court explained in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." A dispute as to a material fact is "genuine", and hence summary judgment is not appropriate under this standard, only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

*3 *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991) (emphasis in original). Although the Court must resolve all ambiguities in favor of the nonmoving party, *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991), the circumstances of seizure in this case are not in dispute.

#### B. *Probable Cause.*
When money is seized without judicial process, 21 U.S.C. § 881(b)(4) requires the Attorney General to have "probable cause to believe that the property is subject to civil forfeiture". The Government has the initial burden of proving probable cause before the Court even examines whether or not the claimant's entitlement is valid. *United States v. United States Currency in Amount of $228,536.00,* 895 F.2d 908, 916 (2d Cir.1990), *cert. denied,* 495 U.S. 958 (1990) ("Once probable cause is established, the burden shifts to the claimant to demonstrate that the money was not used in violation of the statute.") Probable cause means that there *must* be reasonable grounds to believe that a substantial connection exists between the money to be forfeited and the exchange of a controlled substance. *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir.1986) (emphasis added). However, the grounds upon which probable cause is based "must rise above the level of mere suspicion". *Banco Cafetero,* at 1160. The mere fact that there *may* be probable cause for the belief that a substantial connection exists between the money and illegal activities is not sufficient for the Government to meet its burden in a forfeiture case. *United*

Case 2:11-cv-03582-GW-SS   Document 101   Filed 07/31/13   Page 8 of 16   Page ID #:3409

U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)

*States v. $38,600.00 in U.S. Currency,* 784 F.2d 694, 698–99 (5th Cir.1986).

In addition to 21 U.S.C. 881(b)(4), the Fourth Amendment to the U.S. Constitution requires the Government to have "probable cause" to seize the money. *U.S. v. $37,780 In United States Currency,* 920 F.2d 159, 162 (2d Cir.1990). At the initial point of seizure, that is, the point in time when the Troopers seized the money from the trunk of the taxi cab, this Court has serious reservations that the probable cause required by the Fourth Amendment existed to seize the money. The Troopers acted on nothing more then the fact that the occupants in the vehicle were persons of color, driving a gypsy taxi cab on the NYS Thruway, in possession of a minuscule amount of cocaine, and that the cash was found in the trunk, wrapped in plastic. Such circumstances, without any evidence of narcotics trafficking, does not satisfy the Fourth Amendment. However, the Government may introduce evidence, independent of the illegal seizure, that was acquired after the forfeiture proceeding has been commenced to demonstrate that probable cause existed to seize the money. *Id.* at 163; *United States v. Premises and Real Property at 4492 S. Livonia Rd.,* 889 F.2d 1258, 1268 (2d Cir.1989). It is to this evidence that the Court now examines to determine whether the Government has sustained its burden of proving probable cause.

**\*4** The affidavits submitted from the two investigators claim that people from the Dominican Republic, under these circumstances, must be dealing in drugs. The affidavit of Investigator Mays draws on his experiences with other drug trafficking offenses and concludes that "the facts of this case consist of a series of parallels with an established pattern of drug dealing in New York State". Investigator Smith's affidavit does more of the same. He states that based upon common drug trafficking patterns and the business documents submitted by claimant, the only "probable or reasonable" conclusion is that the money is connected to the exchange of controlled substances. This is the quantum of proof that the Government has offered to establish probable cause. The Government, however, has made no connection between the money involved in *this* forfeiture action and the exchange of controlled substances. They would like this court to believe that because the circumstances surrounding the money seized are curious, the exchange of controlled substances must be involved to the exclusion of all other possible activities, legal or illegal.[4] Such is not the case.

Despite its contention that this was a typical Dominican drug operation, the Government has offered no evidence that the four adult males in *this* case, who are all from the Dominican Republic, have any prior or subsequent arrests, convictions, or illegal dealings *of any kind,* let alone connected with drugs. There is no showing, not even based upon rumors or hearsay,[5] that any of *these* individuals have ever had any connection with drugs, either trafficking or possession, other than the fact that the driver, Coste, had a half gram of cocaine in his possession which was obviously for personal use. If such evidence does exist, the Court is confident that it would have been brought to its attention.

Although designated as a gypsy taxi cab, which the investigators allege are often used in transporting drugs between New York City and Schenectady, the Government has not shown that *this* 1977 Cadillac was ever previously involved in any drug transactions. There was no evidence of drug residue on the money or in the vehicle, and it contained no drug paraphernalia or any other signs of drug activity.

The Government also relies on documentation, submitted by the claimant, that they contend does not support his allegations that he is a legitimate exporter of concrete blocks and that the seized money was obtained through his exporting business. Investigator Smith claims that these documents are easily obtained and forged. In addition, he questions the business practices of the claimant, and seeks to pattern them after those of a drug dealer. However, all this evidence only raises a suspicion that the claimant may be involved in *some* illegal activity, it does not give rise to a belief that the money is connected specifically to a narcotics transaction.

For instance, Investigator Smith points to the fact that documentation *proves* that claimant is authorized to export shoes but not concrete blocks. Apparently Investigator Smith brings this to the court's attention to draw the inference that since the money claimant contends to have been obtained through his concrete exporting business must be false, claimant is therefore trafficking in drugs. The latter, however, does not follow from the former. Again, this evidence may tend to suggest that claimant is involved in some illegal activity, but it clearly does not give rise to a probable cause belief that the money is solely from the transaction of narcotics.

**\*5** Finally, Investigator Smith suspects that since it is possible that claimant's documents could easily have been forged and that forged documents are common in the drug

Case 2:11-cv-03582-GW-SS   Document 101   Filed 07/31/13   Page 9 of 16   Page ID #:3410

U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)

trade, claimant probably is involved in the exchange of narcotics. The Government does not offer any evidence that claimant's documents are false, merely concluding that *if* the documents are false, *then* claimant is probably involved in the drug trade. Such conclusory inferences, which are the sole basis upon which most of the two affidavits lie, are not reasonable ones, thus preventing the grant of a summary judgment motion. *Wakefield v. Northern Telecom, Inc.,* 813 F.2d 535, 540 (2d Cir.1987) ("The Court should draw all *reasonable* inferences against the moving party.") (emphasis added).

In addition, the affidavits of the two investigating officers submitted by the Government, seek to render an opinion as to the ultimate determination by the Court as to whether the fact situation created probable cause to believe the existence of a substantial connection between the money and drug sales. This is a legal conclusion, and the Second Circuit is in accord with other circuits, and requires an exclusion of expert testimony that expresses a legal conclusion. *Hygh v. Jacobs,* 1992 WL 70149, 961 F.2d 359, —— (2d Cir. April 9, 1992). Therefore, the conclusions by the experts must be disregarded as to the ultimate issue. In any event, even though hearsay evidence may be used to establish probable cause, *S. Livonia Rd.,* 889 F.2d at 1267, such expert affidavits must be "based upon specific facts", *Estate of Detwiler v. Offenbecher,* 728 F.Supp. 103, 140 (S.D.N.Y.1989), and must involve more than "mere speculation or idiosyncratic opinion", *In re "Agent Orange" Product Liability Litigation MDL No. 381,* 818 F.2d 187, 193 (2d Cir.1987), *cert. denied,* 487 U.S. 1234 (1988), in order to defeat a motion for summary judgment.[6] In view of this Court's conclusion that the investigators' affidavits, at best, raise no more than probable cause that the money was involved in *some* illegal activity, but mere suspicion or speculation that it was specifically linked with drug sales, they are not sufficient to create an issue of fact and defeat the claimant's motion for summary judgment.

The claimant principally relies on two cases, both of which a claimant's motion for summary judgment was granted. Both cases involved vehicles, and in each case, the Government failed to establish probable cause for the belief that a substantial connection existed between the seized money and drug sales. It is interesting to compare the fact situations of each case with the case at bar.

In *$38,600.00 in U.S. Currency,* 784 F.2d at 696, the vehicle was stopped at a Border Patrol checkpoint on Interstate 10 near Sierra Blanca, Texas, being driven by one of the claimants. The odor of marijuana was emanating from inside of the car. A search of the vehicle revealed in the backseat, a blue nylon travel bag which contained a small pipe bearing marijuana residue, a package of cigarette papers, a small pair of scissors, and a small metal box. Upon removal of the bottom portion of the backseat, there were three large manila envelopes containing several rubber banded wrapped bundles of $20, $50, and $100 bills totalling approximately $38,600.00 in United States currency. Upon being questioned, the claimant first contended that the money belonged to him, then to an uncle in California, and finally at the trial, to his father, the coclaimant. A Special Agent of the Border Patrol testified at trial that, in his opinion, the money found in the vehicle was part of a narcotics transaction. He based his conclusions upon his drug enforcement experience, observations concerning "where [the money was coming from and where it was intended to go] as well as the denominations and being secured in rubber bands". *$38,600.00 in U.S. Currency,* at 696. Despite this fact situation and the expert opinion from the officer, the court reversed a judgment of the District Court and remanded for entry of judgment for the claimant. In reviewing the evidence, the court, agreeing with the claimant, stated that "The mere fact that [claimant] had a large sum of money and was headed east on Interstate 10, had a pipe with some marijuana residue in it ... [and] some rolling papers, and did not tell the truth about what he was doing in Texas, does not show more than a mere suspicion." *Id.* at 697. In conclusion, the Court held:

> *6 We find that the $38,000 discovered in (claimant's) car, even when considered in conjunction with the pipe and rolling papers and (claimant's) evasiveness concerning his destination and the money's owner, is insufficient to sustain the District Court's finding. As we have earlier suggested, this evidence may very well give rise to a reasonable belief that there exists a connection between money seized and *some* illegal activity; however, the evidence gives rise only to a suspicion of a connection between the money seized and its use in a transaction for a controlled substance.

*Id.* at 699, (emphasis in original).

Case 2:11-cv-03582-GW-SS   Document 101   Filed 07/31/13   Page 10 of 16   Page ID #:3411

U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)

In *United States v. One Hundred & Thirty-Four Thousand, Seven Hundred & Fifty-Two Dollars United States Currency*, 706 F.Supp. 1075 (S.D.N.Y.1989), two New York City Police officers observed two men in a 1976 vehicle counting and handling numerous $100 bills. The occupants failed to produce identification. Both offered contradictory versions as to the source of the money. The driver and claimant had a past record of criminal possession of controlled substance, and both occupants were linked to gambling and organized crime. Three vials of the type commonly used to hold cocaine were found on the floor/running board section of the vehicle. A further search of the vehicle turned up another cocaine vial and a black "billy club". Subsequent analysis of the vial showed they were empty except for a residue amount of cocaine. One of the officers stated that the large amounts of cash in relatively small denominations often appear on the site of street level drug manufacturing or dealing, so that its presence may be probative of guilt of a particular individual charged with a drug offense. Again, despite the above fact pattern and opinions from law enforcement officials, District Judge Haight granted the claimant's motion for summary judgment and directed that the money be turned over to the claimant. The Court stated:

> The legally relevant question is not whether [claimant] may have participated in illegal activity, but whether there is evidence linking the *res* to an exchange involving a controlled substance; and there the proof is much weaker.... [A]lthough the Government has presented evidence sufficient to support a reasonable belief there exists a connection between the $134,752.00 with *some* illegal activity, it has not provided evidence that gives rise to more than a suspicion of a connection between the money and a transaction involving a controlled substance.

*Id.* at 1083, 1084 (emphasis in original).

The case at bar has many similarities with each of the above cases. All three cases involve vehicles, large sums of money found under suspicious circumstances, and opinions by law enforcement officials that the money must be connected to drug activity. However, the facts in this case are much weaker for probable cause than either of the other two. The occupants, the vehicle, and its contents present almost no direct showing of any drug connection. No odor. No residue. No cocaine vials. No inconsistent stories. No past criminal records. No link to organized crime. Only one/half gram of cocaine.

*7 There is no evidence that the two occupants of the vehicle even knew the money was in the trunk. The only evidence was after it was found, they gave an explanation that it may have belonged to this unknown black male. The occupants cooperated, produced identification, and gave a consistent, if perhaps not true, version of where the money may have come from. In addition, the occupants, owner, and claimant have no criminal record or background of any kind, and the claimant was not even present in the vehicle. There is simply no reasonable grounds for a probable cause belief that a substantial connection exists between the money seized and the exchange of a controlled substance.

In contrast to the claimant, the Government has not submitted any cases involving such a weak fact pattern so as to justify forfeiture. As Judge Haight stated in the *$134,752.00* case:

> [In] cases in this circuit where drug-related forfeiture has been upheld, the evidence supporting forfeiture was far stronger than in the case at bar. *See e.g., United States v. One 1986 Mercedes Benz*, 660 F.Supp. 410 (S.D.N.Y.1987), *aff'd*, 846 F.2d 2 (2d Cir.1988) (per curiam) ($2,710 seized from car containing marijuana cigarette after subjects of an on-going drug investigation got into car after leaving house were DEA agents had earlier purchased a large quantity of heroin); *United States v. $2500 in United States Currency*, 689 F.2d 10 (2d Cir.1982), *cert. denied, sub nom, Aponte v. United States*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984) (defendant found with $2,500 cash, surveillance revealed no other apparent explanation, defendant recently sold DEA agents $16,000 worth of heroin and offered to sell more, money discovered with a note pad of recorded drug transactions).

*Id.* at 1084.

Case 2:11-cv-03582-GW-SS Document 101 Filed 07/31/13 Page 11 of 16 Page ID #:3412

U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)

A further review of the cases within the Second Circuit reveal that Judge Haight's observations continue to hold validity. *See e.g., $37,780 In U.S. Currency,* 920 F.2d at 163–164 (the DEA had determined the falsity of many of claimant's statements and had established to a *convincing* degree his *extensive* involvement in drug activities); *U.S. Currency in Amount of $228,536.00,* 895 F.2d at 913 (proof included tapes and eyewitness testimony detailing claimant's possession and sales of multi-kilo amounts of cocaine, drug records describing hundreds of thousands of dollars of cocaine transactions and claimant's federal tax returns); *S. Livonia Rd.,* 889 F.2d at 1261 (claimant was a known drug dealer who sold cocaine to a confidential informant, while a DEA agent was monitoring the transaction).

In examining the undisputed facts, the Court has a suspicion that this money may very well be the proceeds of drug sales. However, such a suspicion is not enough. The grounds must rise above mere suspicion, however strong, *Banco Cafetero,* at 1160, and the Government must show probable cause for the belief that a substantial connection exists between the money seized and the exchange of controlled substances.

**\*8** In essence, the Government is stating that if two adult males from the Dominican Republic are driving a gypsy taxi cab on the New York State Thruway between Schenectady and New York City, that any large sums of money found in the trunk wrapped in a plastic bag must be connected to the illegal sale of drugs and therefore subject to forfeiture. This cannot be the law. In our justifiable zeal to apprehend and prosecute drug dealers, there must be something more than this to establish the probable cause necessary to justify seizure and forfeiture, or even justify a search warrant. The Government has not produced a shred of factual evidence, other than mere conjecture and speculation, tending to establish probable cause that a "substantial connection" exists between the money seized and the exchange of a controlled substance.

**C. *Refusal of claimant to take lie detector test.***
In light of this Court's decision to grant summary judgment in favor of the claimant, the issue as to whether or not to allow into evidence the refusal of the claimant to submit to a lie detector test becomes moot.[7] However, the Court will render a few observations regarding its admissability.

On January 17, 1992, the Government offered the claimant a "no risk" proposition. A Spanish speaking FBI agent, trained in polygraphy would give the claimant a lie detector test in New York City. If, in the opinion of the agent, claimant passed the test, then all of the seized money would be returned to him. If, in the opinion of the agent, the claimant did not pass the test, or the results were equivocal, the Government would not offer the test results at trial, and there would be no obligation for the claimant to give up his claim or drop the lawsuit. Any statements or admissions made by the claimant at any time to the agent would not be offered by the Government at the time of trial.

The Government has not submitted any cases to this Court in which a District Court or a Circuit Court has allowed such evidence to be used against a claimant in a forfeiture case. This Court feels that it would have been inappropriate in this case. There is no statutory or other requirement that a claimant seeking the return of his money or property be required to submit to a lie detector test. The principal cases relied upon by the Government are *Underwood v. Colonial Penn Insurance Co.,* 888 F.2d 588 (8th Cir.1989), and *Murphy v. Cincinnati Insurance Co.,* 772 F.2d 273 (6th Cir.1985). However, both cases involve insurance claims between private parties, the insured and the insurer. The Government was not involved. This is a very important distinction because neither court was dealing with Governmental authority to force someone to choose between taking or not taking a lie detector test. This is particularly true in view of the fact that the Government has admitted that the lie detector test has been shown to be at least somewhat unreliable and is not generally admissible in evidence in courts of the United States. *Government's Memorandum of Law in Support of Motion to Admit into Evidence the Claimant's Refusal to Submit to a Lie Detector Test,* at 2–3; *United States v. Bando,* 244 F.2d 833 (2d Cir.1957). The Court feels that whether or not the Government should have this additional power in forfeiture cases, is something that should be addressed, if at all, by Congress.

**\*9** Perhaps most troubling, such power would be a weapon that could be used at the discretion of the Government. The Government could pick and choose its cases. In other words, if the Government has a weak case, such as this one, it could make such a demand upon the claimant with the knowledge that if the claimant accepted the offer and passed the test, it would just return the money or property with no real loss since it had little or no chance of succeeding at the time of trial. However, if the claimant refuses to take the test, it could then bring this information to the trier of the facts to bolster and perhaps save a weak case. On the other hand, if the Government has a strong case for forfeiture, it would never

Case 2:11-cv-03582-GW-SS   DOCUMENT 101   Filed 07/31/13   Page 12 of 16   Page ID #:3413

U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)

offer a claimant the opportunity to take such a test because the claimant might pass the test and the Government would then be required to return the money or property. In such cases, the Government would refuse any requests by the claimant to take a lie detector test and proceed to trial with the strong assurance of victory.

If such an idea is feasible at all, it must be required in *all* cases, or at the very least, at the option of either party. As presently proposed by the Government, it would be essentially "no risk" for the Government, and "no choice" for the claimant. This Court feels that it is best left for the Government and the claimants on an individual case basis to determine whether or not lie detector tests should be given in order to resolve the issues without trial. However, all such information should be viewed simply as an effort to reach a settlement, and not part of the evidence to be presented to the trier of fact. The trier of fact should not know whether the Government offered the claimant the option to take a lie detector test, whether or not the claimant requested a lie detector test, or unless stipulated upon in advance by both parties, *See United States v. Piccinonna,* 885 F.2d 1529, 1536 (11th Cir.1989), the results of any tests which may have been administered. The lie detector test should be principally a settlement tool to be used by both sides.

The forfeiture laws are already very strong, giving the Government every benefit in establishing probable cause and then shifting the ultimate burden to the claimant at the time of trial. The Government does not need additional forfeiture weapons in its arsenal against drug trafficking.

### IV. *CONCLUSION.*

In view of the Government having failed to make a showing of probable cause, it is

ORDERED, that the claimant's motion for summary judgment be granted; and it is further

ORDERED, that the Clerk of the Court is directed to enter judgment dismissing the complaint with prejudice for lack of probable cause; and it is further

ORDERED, that the Government is directed to return the *res* and any accrued interest over to the claimant no later than five (5) days after the time for filing an appeal of this decision has expired; and it is further

**\*10** ORDERED, that if an appeal is timely filed, the operation of this order be stayed pending a decision by the Court of Appeals; and it is further.

ORDERED, that the Government's motion to admit evidence of the claimant's refusal to take a lie detector test is denied.

IT IS SO ORDERED.

Footnotes
1   This is the designation for a vehicle used to transport people for hire, but not registered with a taxi medallion.
2   He is an undercover agent, and this is not his real name.
3   The Government claims the claimant may be acting for others and that this is typical of drug traffickers.
4   Although the possession of large amounts of unexplained cash may implicitly create a rebuttable presumption of evidence of illegal activity, *See $37,780 in U.S. Currency,* 920 F.2d at 162, it must be "in connection with evidence of narcotics trafficking or. a large scale", *Id.,* in order to be legally seized pursuant to 21 U.S.C. § 881(a)(6) and (b)(4).
5   The Government may rely on hearsay to carry its initial burden. *United States v. 228 Acres of Land,* 916 F.2d 808, 814 (2d Cir.1990), *cert. denied,* 111 S.Ct. 972 (1991).
6   Although the Government need not link the money to any particular narcotics transaction in order to prove probable cause, *Banco Cafetero,* 797 F.2d at 1160, it cannot, as the affidavits seek to do, link the money seized to alleged narcotics transactions from other forfeitures, regardless of a common modus operandi. The Government must have probable cause to connect the money seized with the exchange of a controlled substance that may have involved the forfeited money. The Government has not connected this money with *any* exchange of a controlled substance.
7   The Government seeks to offer claimant's failure to take a lie detector test as circumstantial evidence to establish probable cause. Assuming its admissability, claimant's refusal to submit to a lie detector test does not necessarily show that he is not telling the truth or has "something to hide". There may be 101 reasons why the claimant refused to take such a test which would not be connected with drugs.

**U.S. v. $31,990.00 in U.S. Currency, Not Reported in F.Supp. (1992)**

End of Document © 2013 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

```
 1  PAUL L. GABBERT, SBN 74430
    2115 Main Street
 2  Santa Monica, CA  90405
    310/399-3259 (telephone)
 3  310/392-9029 (facsimile)
    PLGabbert@aol.com
 4  CHARLES L. LINDNER, SBN 61908
    2801 Ocean Park Blvd., Ste. 247
 5  Santa Monica, CA  90401
    Telephone:  310/826-5548
 6  DAVID B. SMITH, VASBN 25930
    English & Smith
 7  526 King Street, Ste. 213
    Alexandria, VA  22314
 8  Telephone:  703/548-8911
    Telecopier: 703-548-8935
 9
    Attorneys for Claimant
10  United Medical Caregivers Clinic
```

FILED
CLERK U.S. DISTRICT COURT
MAY 1 4 2010
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6 ✓
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CV 05-6703-SVW(SHx) |
| Plaintiff, | **JUDGMENT** |
| vs. | |
| $186,416.00 U.S. CURRENCY, | |
| Defendant. | |
| UNITED MEDICAL CAREGIVERS CLINIC, | |
| Claimant. | |

Pursuant to the Ninth Circuit's January 7, 2010 Order Amending Opinion and Denying Rehearing and Amended Opinion, 590 F.3d 942, 955 (9th Cir. 2010), reversing the District Court's denial of UMCC's motion for summary judgment and ordering the District Court to enter judgment for UMCC, judgment is entered for UMCC.

The res, together with all accrued interest, is ordered returned to claimant

EXHIBIT C-1-
Page 11

1 | not later than forty-five (45) days from the date of the entry of this judgment by
2 | electronic transfer directly into the account entitled "Paul L. Gabbert, Client Trust
3 | Account."
4 |     IT IS SO ORDERED.
5 |
6 | Dated: May 13, 2010     _____
7 |                                                    UNITED STATES DISTRICT JUDGE

11 | PRESENTED BY:

13 | /s/ Paul L. Gabbert
14 | PAUL L. GABBERT
    Attorney for UMCC