1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Duane R. Lyons (Bar No. 125091)
2    duanelyons@quinnemanuel.com
   Brian M. Wheeler (Bar No. 266661)
3    brianwheeler@quinnemanuel.com
  865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
  Telephone:  (213) 443-3000
5  Facsimile:   (213) 443-3100

6  FOREMAN DEGEURIN & DEGEURIN
   Mike DeGeurin (*Admitted Pro Hac Vice*)
7    mdegeurin@foremandegeurin.com
  300 Main Street, Third Floor
8  Houston, Texas 77002
  Telephone:  (713) 655-9000
9  Facsimile:   (713) 655-1812

FISHER & KREKORIAN
   Kevin Fisher (Bar No. 131455)
   rkf@fkslaw.net
  2121 Park Drive
Los Angeles, California 90026
Telephone:  (310) 862-1225
Facsimile:   (310) 388-0805

10  Attorneys for Claimants Vice President
Teodoro Nguema Obiang Mangue
11  and Sweetwater Malibu, LLC

12            UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14               WESTERN DIVISION

| | |
|---|---|
| 15 UNITED STATES OF AMERICA, | CASE NO. 2:11-03582-GW-SS |
| 16       Plaintiff, | Hon. George H. Wu |
| 17    vs. | CLAIMANTS' RESPONSE TO THE GOVERNMENT'S STATEMENT OF |
| 18 ONE WHITE CRYSTAL-COVERED | FACTS SUPPORTING PROBABLE CAUSE |
| "BAD TOUR" GLOVE AND OTHER | |
| 19 MICHAEL JACKSON MEMORABILIA; REAL PROPERTY | |
| 20 LOCATED ON SWEETWATER MESA ROAD IN MALIBU, | Hearing Date: August 19, 2013 |
| 21 CALIFORNIA; ONE 2011 FERRARI 599 GTO, | Time: 8:30 a.m. Place: Courtroom No. 10 |
| 22 | |
|       Defendants. | |
| 23 | |

## SEPARATE STATEMENT RESPONSE

Claimants have set forth responses to the government's facts, below. Claimants' responses to the government's separate statement, however, do not purport to address the accuracy of the government's alleged facts.  Instead, Claimants' responses address whether the government possessed the information at the time it instituted the action and whether, at that time, its reliance thereon supported probable cause for the forfeiture of the Defendant Assets.

Where a Fact is disputed, Claimants do not necessarily dispute the accuracy or truth of the alleged fact, but rather contend that the government either (i) did not actually possess the alleged fact or (ii) that the government did not have reliable evidence to support a belief in the fact at the time it instituted the forfeiture proceeding, which is necessary to support probable cause.

Where Claimants identify a fact as Immaterial, Claimants concede for purposes of this motion only that the government possessed the information, but denies that the information supports probable cause.  Claimants are not accepting the government's characterization of the evidence, only that the government possessed the information and that they may rely on it.

## I.   CLAIMANTS' RESPONSES TO THE GOVERNMENT'S ALLEGED FACTS IN SUPPORT OF PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 1.   Teodoro Nguema Obiang Mangue (Nguema) is the oldest son of Brigadier General Teodoro Nguema Obiang Mbasogo, the President of Equatorial Guinea (EG).<br><br>**Government's Evidentiary Support:** | **Undisputed But Immaterial.**<br><br>This alleged fact does not support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, |

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Manzanares Decl., Ex. 2[1] at Senate-PSI-124607; Ex. 3[2] at DOJ_ 169<br><br>Graf Decl. Ex. 13[3] at DOJ_843; Ex. 16[4] at DOJ_1051 | the specified unlawful activity - violations of foreign law - giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 2.      President Obiang, Nguema's father, assumed the presidency in 1979 after launching a coup against his uncle Francisco Macias Nguema, who was executed soon thereafter.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[5] at Senate-PSI-124606; Ex. 3[6] at DOJ_168 | **Undisputed But Immaterial.**<br><br>Undisputed that President Obiang became president of E.G. in 1979.<br><br>However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 3.      Nguema has served in his father's | **Disputed But Immaterial.** |

---

[1]   *See* Manzanares Decl., ¶ 4.
[2]   *See* Manzanares Decl., ¶ 5.
[3]   *See* Graf Decl., ¶ 19.
[4]   *See* Graf Decl., ¶ 22.
[5]   *See* Manzanares Decl., ¶ 4.
[6]   *See* Manzanares Decl., ¶ 5.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| cabinet since 1998 (when he was 29 years old), holding various portfolios within the regime, including Forestry, Infrastructure, Fisheries and Agriculture.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[7] at Senate-PSI-124607; Ex. 3[8] at DOJ_ 171;<br><br>Graf Decl. Ex. 16[9] at DOJ_1051; Ex. 27[10] at DOJ_840 | Undisputed to the extent Claimant has served in the Minister of Agriculture and Forestry since approximately 1998 and became Minister in approximately 2001.  However, disputed to the extent the government has cited no evidence that supports the alleged supporting fact that Claimant held "various portfolios within the regime, including . . . Infrastructure [and] Fisheries. . . ."<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 4.      As a public official in EG, Nguema's legitimate salary is approximately $6,799 per month, or less than $100,000 per year | **Undisputed But Immaterial.**<br><br>Claimant does not dispute that the government possessed the cited documents at the time the original complaint was filed and that the |

---

[7]    *See* Manzanares Decl., ¶ 4.
[8]    *See* Manzanares Decl., ¶ 5.
[9]    *See* Graf Decl., ¶ 22.
[10]   *See* Graf Decl., ¶ 34.

-3-
CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[11] at SENATE-PSI-124607; Ex. 4[12] at DOJ_397 | documents state that Claimant's salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| **NGUEMA MISAPPROPRIATED PUBLIC FUNDS THROUGH GENERAL WORK, S.A. (GW), AND EUROPEAN BANK ACCOUNTS** | |
| 5.      General Work, S.A., (GW), an | **Undisputed But Immaterial.** |

---

[11]   *See* Manzanares Decl., ¶ 4.
[12]   *See* Manzanares Decl., ¶ 6.

-4-

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| infrastructure construction firm, has been active in EG since 2003<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 24[13] at DOJ_317; Ex. 25A[14] at DOJ_3856-3858 | Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 6.      While Nguema was EG's Infrastructure Minister, the EG Government awarded GW several large-scale government infrastructure projects<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 24[15] at DOJ_317; Ex. 25A[16] at DOJ_3856-3858 | **Disputed But Immaterial.**<br><br>The government has cited no evidence for the alleged fact that Claimant served as "EG's Infrastructure Minister," nor the dates during which such service allegedly occurred that would correspond with the GW contract awards.<br><br>Moreover, the Government's factual allegations regarding GW are not based on reliable evidence.   See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor |

---

[13]    *See* Manzanares Decl., ¶ 28.
[14]    *See* Manzanares Decl., ¶ 30.
[15]    *See* Manzanares Decl., ¶ 28.
[16]    *See* Manzanares Decl., ¶ 30.

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 7.      In 2009, Italian law enforcement authorities, including officers of the Guardia di Finanzia (Italy), Italy's financial police with specialized training in investigating financial crimes, including money laundering, informed the United States that they believed that Nguema controlled a network of European bank accounts (European Accounts) that were opened by GW's director Igor Celotti.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 24[17] at DOJ_317; Ex. 25A[18] at DOJ_3856-3858; Ex.26[19] at DOJ_415; Ex. 27[20] at DOJ_420 | **Undisputed that the cited document makes this statement.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>The Government's factual allegations regarding GW are not based on reliable evidence, and the government has not accurately characterized the information it received from the GdF. See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor |

---

[17]   *See* Manzanares Decl., ¶ 28.
[18]   *See* Manzanares Decl., ¶ 30.
[19]   *See* Manzanares Decl., ¶ 31.
[20]   *See* Manzanares Decl., ¶ 32.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the alleged bank accounts are not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit. |
| 8.     According to Italy, these European Accounts were "funded with government revenues stolen by [President Obiang] and [Nguema]."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 26[21] at DOJ_415; Ex. 27[22] at DOJ_419-420 | **Undisputed that the cited document makes this statement.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>The Government's factual allegations regarding GW are not based on reliable evidence, and the government has not accurately characterized the information it received from the GdF. See GW Section of Claimants' |

[21]   *See* Manzanares Decl., ¶ 31.
[22]   *See* Manzanares Decl., ¶ 32.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the alleged European bank accounts are not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.  Further, there is no evidence to support the additional claim that those accounts were "funded with government revenues stolen by [President Obiang] and [Nguema]."[23] |

---

[23]   Not only did the GdF fail to identify any amount of money in these accounts, but Exhibit 27 does not identify a single payment or kickback to Claimant or anyone else.  Thus, there is no basis to assume that these accounts contained the proceeds of any illegal activity, let alone the proceeds of foreign corruption.  Rather, Exhibit 27 simply identifies a number of companies in which Celotti owned shares, which were allegedly taken over by the "Obiang family" after his death.  (Ex. 27 at 420.)  The government cites no reliable evidentiary support for this alleged takeover, nor has it
       (footnote continued)

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 9.      GW was originally formed by two Italian nationals Giulio Cistaro and Giuseppe Vona in 2001 and managed by Vona, Andrew Mannarino and Igor Celotti.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex.24[24] at DOJ_317; Ex. 25A[25] at DOJ_3855; Ex. 27[26] at DOJ_419 | **Undisputed But Immaterial.**<br><br>The government mischaracterizes the evidence, which merely lists these individuals as co-CEOs.<br><br>Moreover, the Government's factual allegations regarding GW are not based on reliable evidence.   See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

ever even contended that Claimant violated EG law by allegedly assuming 45% control of GW after Celottis's death.  Further, the newspaper report and the uncorroborated testimony of two unidentified businessmen are conclusory and lack support for their allegations.  Moreover, even if their claims were credible, there is no indication that any funds from the alleged control of GW in 2007 were used to acquire the Defendant Assets.

[24]   *See* Manzanares Decl., ¶ 28.
[25]   *See* Manzanares Decl., ¶ 30.
[26]   *See* Manzanares Decl., ¶ 32.

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| 10.    Because of Celotti's close relationship to President Obiang, GW was awarded major government infrastructure contracts in EG beginning in the early 2000s<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex.24[27] at DOJ_317; Ex. 25A[28] at DOJ_3856-3858 | **Disputed But Immaterial.**<br><br>Undisputed that GW was awarded contracts in E.G., but disputed that the cited documents state that GW was awarded these contracts solely because of Celotti's relationship with President Obiang.<br><br>Moreover, the Government's factual allegations regarding GW are not based on reliable evidence.  See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 11.    In 2009, Italy informed the United States that it had identified a network of bank accounts in Switzerland, Italy, Austria, Spain, Monte Carlo, Dubai, San | **Undisputed But Immaterial.**<br><br>Undisputed that the cited document |

---

[27]   *See* Manzanares Decl., ¶ 28.
[28]   *See* Manzanares Decl., ¶ 30.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Marino and Luxembourg controlled by Nguema and his father through several off-shore shell companies created by Celotti.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 24[29] at DOJ_317; Ex. 25A[30] at DOJ-3909-3912; Ex. 26[31] at DOJ_415; Ex. 27[32] at DOJ_419-420 | makes this statement.<br><br>The Government's factual allegations regarding GW are not based on reliable evidence.  <u>See</u> GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the alleged European bank accounts are not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.  Further, there is no evidence to support the additional claim that those accounts were "funded with government revenues stolen by |

[29]   *See* Manzanares Decl., ¶ 23.
[30]   *See* Manzanares Decl., ¶ 30.
[31]   *See* Manzanares Decl., ¶ 31.
[32]   *See* Manzanares Decl., ¶ 32.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | [President Obiang] and [Nguema]." <br> <u>See</u> n.23. |
| 12.    After Celotti died in EG in 2007, Italy conducted an extensive investigation into GW and Celotti's financial affairs. In connection with this investigation, Italy interviewed former GW employees and associates. In addition, they performed a search of Celotti's residence in Italy, and obtained Celotti's financial and banking records. <br><br> **Government's Evidentiary Support:** <br><br> Manzanares Decl., Ex. 24[33] at DOJ_317; Ex. 27[34] at DOJ_419-420 | **<u>Disputed But Immaterial.</u>** <br><br> This alleged fact does not accurately reflect the cited evidence, which does not state that they interviewed former GW employees and associates. <br><br> The Government's factual allegations regarding GW are not based on reliable evidence.  <u>See</u> GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16. <br><br> Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 13.    Cistaro and Vona informed Italy that Nguema's family fraudulently assumed control of GW after Celotti's | **<u>Disputed But Immaterial.</u>** <br><br> The report of investigation states that |

---

[33]  *See* Manzanares Decl., ¶ 28.
[34]  *See* Manzanares Decl., ¶ 32.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| death in 2007<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 27[35] at DOJ_419 | this information came from unidentified individuals.<br><br>The Government's factual allegations regarding GW are not based on reliable evidence.  Moreover, the government has not accurately characterized the information it received from the GdF. See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 14.    According to Italy, based upon their investigation, including an analysis of Celotti's financial and banking records, the network of bank accounts controlled by Nguema and President Obiang possess the "markers of money laundering"<br><br>**Government's Evidentiary Support:** | **Undisputed But Immaterial.**<br><br>Undisputed that the cited document makes this statement and attributes it to the Italians, but the evidence is silent as to what those alleged "markers" were, or what the basis was for that conclusion by the Italians. |

---

[35]   *See* Manzanares Decl., ¶ 32.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Manzanares Decl., Ex. 26[36] at DOJ_415; Ex. 27[37] at DOJ_420 | The Government's factual allegations regarding GW are not based on reliable evidence.  Moreover, the government has not accurately characterized the information it received from the GdF. See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the alleged European bank accounts are not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.  Further, there is no evidence to support the additional claim that those accounts were "funded with government revenues stolen by [President Obiang] and [Nguema]." |

---

[36]   See Manzanares Decl., ¶ 31.
[37]   See Manzanares Decl., ¶ 32.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | See n.23. |
| 15.   Celotti opened these bank accounts in the names of 22 different shell companies<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 24[38] at DOJ_318; Ex. 25A[39] at DOJ_3892-3905 | **Disputed But Immaterial.**<br><br>The cited evidence does not support the alleged fact.  The documents do not state that Celotti opened bank accounts in the names of the companies listed in the documents.<br><br>The Government's factual allegations regarding GW are not based on reliable evidence.  Moreover, the government has not accurately characterized the information it received from the GdF.  See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

[38]   *See* Manzanares Decl., ¶ 28.
[39]   *See* Manzanares Decl., ¶ 30.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Significantly, the alleged European bank accounts are not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.  Further, there is no evidence to support the additional claim that those accounts were "funded with government revenues stolen by [President Obiang] and [Nguema]." <u>See</u> n.23. |
| 16.    These shell companies were formed using the names of nearly 20 different nominees<br><br>**<u>Government's Evidentiary Support:</u>**<br><br>Manzanares Decl., Ex. 24[40] at DOJ_318 | **<u>Disputed But Immaterial.</u>**<br><br>The cited evidence does not support the alleged fact.  The documents do not state that the companies listed in the document were formed by nearly 20 different nominees.<br><br>The Government's factual allegations regarding GW are not based on reliable evidence.  Moreover, the government has not accurately characterized the information it received from the GdF. <u>See</u> GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, |

---

[40]    *See* Manzanares Decl., ¶ 28.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the alleged European bank accounts are not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.  Further, there is no evidence to support the additional claim that those accounts were "funded with government revenues stolen by [President Obiang] and [Nguema]." <u>See</u> n.23. |
| 17.    Based upon its investigation, Italy informed the United States that it believed that 45 percent of the revenue earned by GW in EG was kicked-back to Nguema, who was EG's Infrastructure Minister.<br><br>**<u>Government's Evidentiary Support:</u>**<br><br>Manzanares Decl., Ex. 24[41] at DOJ_317 | **<u>Disputed.</u>**<br><br>The Government's factual allegations regarding GW are not based on reliable evidence.  Moreover, the government has not accurately characterized the information it received from the GdF. <u>See</u> GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>The actual report of investigation simply reads: "GDF *speculates* that OBIANG received forty-five percent of |

---

[41]    *See* Manzanares Decl., ¶ 28.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | all general contracting projects which were preformed [*sic*] by GW," (Ex. 24 at DOJ_000317 (emphasis added).) and no support for the payment of a "kickback" is found in the underlying evidence.  <u>See</u> n.23.<br><br>Further, the government has cited no evidence for the alleged fact that Claimant served as "EG's Infrastructure Minister," nor the dates during which such service allegedly occurred that would correspond with the GW allegations.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 18.    Celotti opened these European Accounts for Nguema in 2006, the same year Nguema acquired his $30 million Malibu estate (Sweetwater) | <u>**Disputed But Immaterial.**</u><br><br>The cited evidence does not support the alleged fact.  The document does not state that Celotti opened bank accounts in the names of the companies listed in |

-18-

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 24[42] at DOJ_317 | the document.  Although the document states that "Celotti had over twenty-two sub-corporations which were formed established in 2006," the document is silent as to any alleged bank accounts.<br><br>The Government's factual allegations regarding GW are not based on reliable evidence.  Moreover, the government has not accurately characterized the information it received from the GdF. See GW Section of Claimants' Supplemental Brief at 4-7 and Reply Memorandum at 13-16.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the alleged European bank accounts are not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks |

---

[42]   *See* Manzanares Decl., ¶ 28.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | to forfeit. |
| 19.    Further underscoring the nexus between Sweetwater and GW is that fact that when Nguema was negotiating the purchase of Sweetwater in 2006, he sent and received faxes regarding this real estate transaction from Celotti's office in EG. For instance, in or around April 2, 2006, Nguema signed and faxed a copy of the Residential Lease After Sale pertaining to the purchase of Sweetwater to George Nagler, Nguema's California real estate lawyer, from a fax number in EG. The faxed document indicates at the top that this number belongs to "IGOR CELOTTI."

**Government's Evidentiary Support:**

Manzanares Decl., Ex. 57[43] at Senate-PSI-93971-93974, 94047, 97840 | **Undisputed But Immaterial.**

Undisputed to the extent that Exhibit 57 contains faxed documents pertaining to the Sweetwater Property that contain Nguema's signature and bear stamps with the names of Igor Coletti and George Nagler.

However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.

Significantly, the only source of alleged funds the government's evidence could possibly suggest Claimant may have derived through GW could not have been realized until 2007 at the earliest—after the purchase of the defendant real property.[44] |

[43]   *See* Manzanares Decl., ¶ 62.
[44]   As discussed in footnote 23, the only alleged conduct of Claimant relating to GW in the government's documentary evidence is the allegation that Celotti's
      (footnote continued)

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| 20.   Nguema also faxed a copy of the Addendum to the Residential Lease After Sale pertaining to the purchase of Sweetwater to Nagler from Celotti's number. Again, the faxed document indicates at the top that this number belongs to "IGOR CELOTTI." <br><br> **Government's Evidentiary Support:** <br><br> Manzanares Decl., Ex. 57[45] at Senate-PSI-93976 | **Undisputed But Immaterial.** <br><br> Undisputed to the extent that Exhibit 57 contains faxed documents pertaining to the Sweetwater Property that contain Nguema's signature and bear stamps with the names of Igor Coletti and George Nagler. <br><br> However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

---

interest in GW was allegedly taken over by the "Obiang family" after his death in 2007.  (Ex. 27 at 420.)  There is no indication that any funds from an alleged takeover of GW in 2007 were used to purchase the Defendant Assets.  Inasmuch as Claimant purchased the Malibu estate in 2006, while Celotti was alive, there is absolutely no basis to claim that the defendant real property is the proceeds of that alleged takeover.  Likewise although the government claims that a nexus exists between Celotti and Claimant because Claimant sent communications relating to Sweetwater's acquisition from Celotti's office in 2006, the government must concede that those communications took place while Celotti was alive and therefore before the alleged takeover, which is the only source of alleged funds its evidence could possibly suggest Claimant may have derived through GW.

[45]   *See* Manzanares Decl., ¶ 62.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Significantly, the only source of alleged funds the government's evidence could possibly suggest Claimant may have derived through GW could not have been realized until 2007 at the earliest—after the purchase of the defendant real property.  See n.44. |
| 21.    Nguema also faxed a copy of the Supplemental Escrow Instructions pertaining to the purchase of Sweetwater to Nagler from Celotti's number. Again, the faxed document indicates at the top that this number belongs to "IGOR CELOTTI."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 57[46] at Senate-PSI-94046 | **Undisputed But Immaterial.**<br><br>Undisputed to the extent that Exhibit 57 contains faxed documents pertaining to the Sweetwater Property that contain Nguema's signature and bear stamps with the names of Igor Coletti and George Nagler.<br><br>However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the only source of alleged funds the government's evidence could possibly suggest Claimant may have |

---

[46]   *See* Manzanares Decl., ¶ 62.

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | derived through GW could not have been realized until 2007 at the earliest—after the purchase of the defendant real property.  <u>See</u> n.44. |
| 22.    Furthermore, in connection with wiring funds from EG into the United States to support the maintenance and upkeep of Sweetwater, Michael Berger, Nguema's associate, faxed a letter in or around January 20, 2008, to Celotti's fax line in EG, stating, "Here is the information that you need to wire transfer money to Unlimited Horizon, Inc., account at Commercial Capital Bank." In this same letter, Berger detailed Unlimited Horizon's bank account information, the address of Commercial Capital Bank in Beverly Hills and the bank's telephone number and routing number.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 58[47] at Senate-PSI-90696 | <u>**Undisputed But Immaterial.**</u><br><br>Claimant does not dispute that the government possessed this document at the time the original complaint was filed.<br><br>However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| <u>**NGUEMA ATTEMPTED TO MISAPPROPRIATE $40 MILLION IN PUBLIC FUNDS TO ACQUIRE A GULFSTREAM JET IN 2004**</u> | |
| 23.    In 2004, two years before Nguema acquired Sweetwater, Nguema contacted Gulfstream Aerospace Corporation (GAC) and expressed interest in purchasing a $40 | <u>**Undisputed But Immaterial.**</u><br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had |

---

[47]   *See* Manzanares Decl., ¶ 63.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| million aircraft from GAC.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 28[48] at DOJ_390<br><br>Graf Decl., Ex. 5[49] at DOJ_121-122; Ex. 6 at DOJ_114-115; Ex. 6A at DOJ_130; Ex. 6B at DOJ_131 | probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 24.     Stephen Arnold Fuller, GAC's regional vice president for Sub-Saharan Africa, recalled that Nguema informed GAC that he intended to finance the purchase of this aircraft by diverting $40 million in public funds from the EG Government through an American oil company.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 28[50] at DOJ_390-91<br><br>Graf Decl., Ex. 5[51] at DOJ_125-126; Ex. 6A[52] at DOJ_130; Ex. 6B at DOJ_131 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses(which are simply counsel's own self-serving characterizations of documents, rather than  based on the personal knowledge of the verifying agent).  The government cannot defeat summary judgment by simply relying on its own characterization of the evidence, but must identify and attach the specific evidence that it relied on to support the alleged fact.[53] |

---

[48]   *See* Manzanares Decl., ¶ 33.
[49]   *See* Graf Decl., ¶ 7.
[50]   *See* Manzanares Decl., ¶ 33.
[51]   *See* Graf Decl., ¶ 7.
[52]   *See* Graf Decl., ¶ 9.
[53]   See Greene v. FedEx Kinko's Inc., 2007 WL 2915436, at *1 (9th Cir. Oct. 4, 2007) (holding party's reliance on his own interrogatory responses could not be considered at the summary judgment stage where the party lacked personal
       (footnote continued)

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | The exhibits cited by the government do not support the allegation that Nguema intended to misappropriate public funds from E.G.[54] |

knowledge of the evidence); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986) ("[S]ummary judgment is appropriate when a party challenged by motion fails to offer *evidence* supporting an element of a claim on which that party bears the burden of proof at trial.") (emphasis added); <u>cf.</u> <u>Coca-Cola Co. v. Overland, Inc.</u>, 692 F.2d 1250, 1255 (9th 3 Cir. 1982) (before affidavits opposing a motion for summary judgment can be given any weight, Rule 56(e) requires that they "(1) be made on personal knowledge, (2) set forth such facts as would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify on the matters stated therein.").

[54]    According to the government's evidence, Mr. Fuller stated that the funds due were successfully transferred to Gulfstream, without any alleged involvement of an American oil company or any evidence of misappropriation of public funds, and that he "concluded the transfer was a legitimate transaction and nothing in the transaction [gave] him any cause for alarm."  Graf Decl. Ex. 5 at DOJ_0000125.

   During Claimant's negotiations to purchase the airplane, he had several conversations with Mr. Fuller who prepared a letter regarding an April 20, 2004 conversation (Ex. 6A) and an email regarding a conversation that occurred on April 25, 2004  (Ex. 6B).  According to the April 25 email, which Fuller described as containing the latest information, Claimant stated that he wanted to solve the payment issue by transferring the money through "traditional means."  Claimant then suggested a "back-up" proposal to expedite payment wherein "he could pay [one of the American oil company that have a CFA account] and they in turn could pay [Gulfstream]."  Graf Decl. Ex. 6B at  DOJ_0000131.  Thus, the latest information on this issue belies any intention of Claimant to misappropriate public funds— Claimant allegedly suggested that he (not the E.G. government treasury) could first give a company which has an account in his native currency the money for the plane in such currency and have that company thereafter pay those funds to Gulfstream (presumably in U.S. dollars) to expedite the payment.  Mr. Fuller does not describe any intention for Claimant to misappropriate any public funds in such a suggested transaction.  In fact, Mr. Fuller stated that he believed Claimant was "reacting to Gulfstream's pressure and was grasping for a solution on the payment."  Indeed, the
         (footnote continued)

04579.23529/5425050.2

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 25.    Nguema told Mr. Fuller that he could and would pay for the $40 million aircraft with public funds by having an "American oil company" initially pay GAC for the aircraft. EG would then, according to Nguema, "repay the American oil company through credits to the company's local account in EG."<br><br>**Government's Evidentiary Support:** | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.<br><br>The exhibits cited by the government do not support the allegation that Nguema intended to misappropriate public funds from E.G.  See n.54. |

_____

Court too observed that the oil company was never contacted or used to purchase the jet, and that the Gulfstream executive "'concluded the transfer was a legitimate transaction and nothing in the transaction has given him any cause for alarm.'"  TR at 10.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Manzanares Decl., Ex. 1 at 63-64,<br><br>Graf Decl., Ex. 5[55] at DOJ_125-126; Ex. 6[56] at DOJ_116-117; Ex. 6A[57] at DOJ_130; Ex. 6B[58] at DOJ_131 | Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 26.     In a letter dated April 20, 2004, Fuller confirmed that Nguema was proposing to purchase from GAC a Gulfstream 550 with misappropriated public funds. Mr. Fuller stated in that letter:<br><br>[Nguema] is suggesting that [GAC] contact the Chairman of Ocean Energy in Houston, Texas with regard to the Gulfstream 550. There may be an advantage in assigning the Sales Agreement to Ocean Energy and having that company assume the payment obligations for the Gulfstream 550. In return, the Government [of EG] would issue a Credit Memorandum to | **Disputed But Immaterial.**<br><br>The exhibit cited by the Government does not support the allegation that Nguema intended to misappropriate public funds from E.G.  See n.54.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified |

---

[55]   See Graf Decl., ¶ 7.
[56]   See Graf Decl., ¶ 8.
[57]   See Graf Decl., ¶ 9.
[58]   See Graf Decl., ¶ 10.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Ocean Energy for amounts payable in connection with oil production.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 6A[59] at DOJ_130 | unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 27.    Raymond Banoun, managing partner of Cadwalader, Wickersham & Taft, LLP, a New York-based law firm, served as an attorney for GAC in connection with this transaction. Like Mr. Fuller, Mr. Banoun recalled that in 2004, Nguema represented to GAC that he would misappropriate EG public funds by (i) having Ocean Energy, an American oil company, purchase the $40 million aircraft and "assume the payments on his behalf" and then (ii) "in return" have the "Equatorial Guinea government [] issue a credit memo to Ocean Energy for monies connected with oil production in Equatorial Guinea."<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 6[60] at DOJ_116-117; Ex. 6A[61] at DOJ_130; Ex. 6B[62] at DOJ_131 | **Disputed But Immaterial.**<br><br>The exhibits cited by the government do not support the allegation that Nguema intended to misappropriate public funds from E.G.  See n.54.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 28.    Baynoun also told federal agents that although Gulfstream knew that the intended recipient and owner of the | **Disputed But Immaterial.**<br><br>The exhibits cited by the government |

[59]    *See* Graf Decl., ¶ 9.
[60]    *See* Graf Decl., ¶ 8.
[61]    *See* Graf Decl., ¶ 9.
[62]    *See* Graf Decl., ¶ 10.

04579.23529/5425050.2
CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| aircraft was going to be Nguema (not the EG Government), "it was difficult for Gulfstream to determine if the money for the aircraft's purchase was [Nguema's] or Equatorial Guinea's money."<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl. Ex. 6[63] at DOJ_117 | do not support the allegation that Nguema intended to misappropriate public funds from E.G.  See n.54.<br><br>Moreover, the government takes this quote out of context.  The government's quotation to the exhibit omits the explanation that this alleged difficulty was because Gulfstream reportedly "had sought the backing for the purchase of the aircraft from [President Obiang] because [Claimant] was not dependable" as a result of the observation that he "travels quite often" and "is very difficult to contact:" "OBIANG is very difficult to contact and this is one of the reasons it was difficult for GULFSTREAM to determine if the money for the aircraft purchase was OBIANG's or Equatorial Guinea's money.   Ex. 6 at DOJ_0000117.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could |

[63]   *See* Graf Decl., ¶ 8.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | be derived. |
| 29.    According to Fuller, Gulfstream's general counsel was very concerned about the company's "criminal exposure with respect to this transaction. | **Disputed But Immaterial.** |
| | The exhibit cited by the Government does not support the alleged fact for which it is cited.  Indeed, the report does not state that Fuller attributed the general counsel's alleged concerns to potential criminal liability.  Instead, the report states "FULLER claimed that GULFSTREAM'S General Counsel was very concerned about this pending deal and despite receiving letters from the Department of Justice (DOJ) reassuring GULFSTREAM that they did not have any criminal exposure, the deal fell apart." |
| **Government's Evidentiary Support:** | |
| Manzanares Decl., Ex. 28[64] at DOJ_391 | |
| | Further, the exhibit cited by the government does not support the allegation that Nguema intended to misappropriate public funds from E.G. See n.54. |
| | Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified |

---

[64]    *See* Manzanares Decl., ¶ 33.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
|  | unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 30.    Indeed, according to Fuller, ultimately the "deal fell apart."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 28[65] at DOJ_391 | **Undisputed But Immaterial.**<br><br>Undisputed that the government had this document and that it states the "deal fell apart."<br><br>However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 31.    Nguema's proposal to use a U.S. oil company to assist him with paying for personal expenses is consistent with his past behavior. In 1991, Walter International, a Texas oil company, paid for Nguema's Pepperdine University tuition as well as $50,000 in expenses | **Disputed But Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – |

---

[65]   *See* Manzanares Decl., ¶ 33.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 4[66] at DOJ_397<br><br>Graf Decl., Ex. 16[67] at DOJ_158 | violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Moreover, the allegation is stale inasmuch as 20 years have elapsed between the time that Claimant attended Pepperdine and the government instituted the action renders this allegation stale.  See TR at 11 (citing <u>United States v. Grant</u>, 682 F.3d 827, 835 (9th Cir. 2012) (no probable cause on staleness grounds where nine-month gap between offense and warrant application failed to show "the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant.")). |
| **NGUEMA ATTEMPTED TO EXTORT A U.K. FIRM IN 2003** | |
| 32.    In or around 2003, a British company sought permission to build a Sheraton hotel in Malabo, EG's capital. Nguema refused to permit the British company to build the Malabo hotel unless | **Disputed But Immaterial.**<br><br>The government's cited evidence, which it mischaracterizes, does not |

---

[66]  *See* Manzanares Decl., ¶ 6.
[67]  *See* Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| its executives agreed to provide him with 55 percent of the hotel's equity.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7 at DOJ_83-84 | support the alleged fact, nor the inference the government suggests.[68]<br><br>Thus, this evidence does not even amount to an attempt.  Even if it did, as the Court's tentative makes clear, such conduct would not support probable cause.<br><br>Further, the government omits significant facts that raise serious question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7.[69] |

---

[68]   The government has again misconstrued the actual report of investigation.  Contrary to the government's assertion that Claimant attempted to extort money for himself from the hotel, the report  clearly states that Claimant was negotiating ***on behalf of the government*** and that the 55% share he allegedly demanded was for the government because the government was not getting enough of the share:

> [Claimant] was the point person from the EG government in the dealings with the British company.  In 2003, Kareri went with a delegation from the British company to Obiang's home in Los Angeles, California.  Obiang said the British company could not build the hotel as the **EG government was not getting enough of the share**.  Obiang demanded a fifty-five percent share of the hotel, and the company declined to build the hotel. Kareri does not remember the name of the British company that wanted to build the hotel.
> Graf. Ex. 7 at 83-84 (emphasis added).

[69]   The government fails to disclose that following their theft of $100,000 from Claimant and subsequent attempt to fraudulently conceal the theft, Simon Kareri and his wife, Ndeye Fall, were arrested, charged, and pleaded guilty.  Indeed, at the time of the interviews, they were incarcerated and Kareri was awaiting sentencing.  The government similarly fails to disclose to the Court that Riggs bank accused Kareri of stealing $700,000 or more from the E.G. accounts at Riggs Bank and terminated his
(footnote continued)

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 33.    When the British company refused, their hotel project was not allowed to go forward<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7 at DOJ_83-84 | **Undisputed But Immaterial.**<br><br>Claimants do not dispute that the cited evidence states that the project did not go forward after the British company rejected the E.G. government's required interest in the property.<br><br>However, the government's cited evidence does not support the inference the government's mischaracterization of the evidence might suggest.  See n.68. |

_____

employment.  Although the government possesses and reviewed reports of investigations that include all of these facts raising serious questions regarding the veracity and reliability of these witnesses and their bias against Claimant and E.G., they fail to cite these reports or alert the Court to their existence.  Instead, the government hand-picks more sanitized interview reports of Kareri and Fall that omit many of these facts.  See Supplemental Declaration of Brian Wheeler ("Supp. Wheeler Decl."), Ex. 1 (DOJ_0000038-49), Ex. 2 (DOJ_0000088-94).

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | Further, the government omits significant facts that raise serious question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7. <u>See</u> n.69.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 34.    This conversation, which took place in Los Angeles, was witnessed by Simon Kareri, a vice president of Riggs National Bank (Riggs)<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7 at DOJ_83-84 | **<u>Undisputed But Immaterial.</u>**<br><br>Claimants do not dispute that the cited evidence states that Mr. Kareri claimed he witnessed the alleged conversation between Claimant and the representative of the British company in Los Angeles.<br><br>However, the government's cited evidence does not support the inference the government's mischaracterization of the evidence might suggest.  <u>See</u> n.68.<br><br>Further, the government omits |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | significant facts that raise serious question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7.  See n.69. |
| | Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| **NGUEMA EXTORTED AND RECEIVED BRIBES FROM COMPANIES IN EG** | |
| 35.    In April 2011, <u>Foreign Policy Magazine</u> quoted a timber executive who worked in EG as stating, "[Nguema] would call emergency meetings of all the logging company heads in which he would announce some new so-called tax on logging operations." | **Undisputed that the cited document makes this statement.** **Disputed that this fact is based on reliable evidence.** **Immaterial.** This factual allegation is based solely |

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 27[70] at DOJ_840 | on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  <u>See</u> Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Further, the government has failed to corroborate the allegations attributed to, or the reliability of, this unidentifiable alleged "timber executive."  <u>See</u>, <u>e.g.</u>, TR at 11, n.9.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 36.     According to this executive, Nguema charged timber companies an extra so-called "tax" that they were forced to pay him personally for wood harvested in EG. Nguema purportedly charged timber companies directly per cubic meter | **<u>Undisputed that the cited document makes this statement.</u>**<br><br>**<u>Disputed that this fact is based on reliable evidence.</u>** |

---

[70]   *See* Graf Decl., ¶ 34.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| of timber harvested by that company.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 27[71] at DOJ_840 | **Immaterial.**<br><br>This factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  <u>See</u> Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Further, the government has failed to corroborate the allegations attributed to, or the reliability of, this unidentifiable alleged "timber executive."  <u>See</u>, <u>e.g.</u>, TR at 11, n.9.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 37.    Similarly, a French timber executive, identified as "Jean Michel" in this same <u>Foreign Policy Magazine</u> | **<u>Undisputed that the cited document makes this statement.</u>** |

---

[71]    *See* Graf Decl., ¶ 34.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| article, reported that Nguema seized the French logging company he worked for in EG.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 27[72] at DOJ_840-841 | **Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>This factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Further, the government has failed to corroborate the allegations attributed to, or the reliability of, "Jean Michel." See, e.g., TR at 11, n.9.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 38.     It was impossible, according to Jean | **Undisputed that the cited document** |

[72]   *See* Graf Decl., ¶ 34.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Michel, for timber companies to do business in EG without paying bribes to Nguema. Although Jean Michel's company initially paid Nguema the bribes that he demanded, his company's operations were shut down after it refused to make any further bribe payments to Nguema.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 27[73] at DOJ_840-841 | **makes this statement.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>This factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  <u>See</u> Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Further, the government has failed to corroborate the allegations attributed to, or the reliability of, "Jean Michel." <u>See</u>, <u>e.g.</u>, TR at 11, n.9.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could |

---

[73]   *See* Graf Decl., ¶ 34.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | be derived. |
| 39.    Similarly, a former United States intelligence official, who was familiar with EG, reported to Global Witness, a U.K. NGO, that Nguema solicits and accepts bribes from Malaysian, North Korean and Chinese timber companies. According to this intelligence official, "There were Malaysian, North Korean, and Chinese logging camps on the mainland [of EG], and [Nguema] collected cash from them . . . for logging operations, much of it involving valuable hardwood." **Government's Evidentiary Support:** Graf Decl., Ex. 16[74] at DOJ_1058 | **Undisputed that the cited document makes this statement.** **Disputed that this fact is based on reliable evidence.** **Immaterial.** This factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13. Further, the government has failed to corroborate the allegations attributed to, or the reliability of, this unidentifiable alleged "former intelligence official." See, e.g., TR at 11, n.9. Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified |

---

[74]   *See* Graf Decl., ¶ 22.

-41-

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 40.      Indeed, Nguema confirmed to U.S. diplomats at the U.S. Embassy in EG in 2009 that he permitted a Malaysian company to deploy 40 teams of well-equipped lumberjacks to "clear cut" a "large tract of pristine continental jungle" that was "granted" to him by the EG Government.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 15[75] at DOJ_586 | **Undisputed But Immaterial.**<br><br>This alleged fact is immaterial because the cable further states that this activity was lawful at the time, and that a new law was passed to restrict this type of harvesting after this event.  (Ex. 15 at DOJ 586).<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 41.      In addition, in November 2009, Global Witness reported that Nguema received corrupt payments from Elf-Acquitaine, a French oil and gas company. In 2004, thirty senior executives of Elf Acquitaine were charged and | **Disputed But Immaterial.**<br><br>The evidence cited by the government does not support this alleged fact. Rather, the actual document, a Global Witness article, claims that "the French |

---

[75]  *See* Graf Decl., ¶ 21.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| convicted in France of distributing bribes and kickbacks in Africa over a period of several decades.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 16[76] at DOJ_1059 | government courted and developed [Claimant] to be its man in charge after his father died." (Ex. 16 at 1059.) The article continues by stating that "French agents out of Gabon paid money to [Claimant], as did Elf-Aquitaine. The French state oil company, later bought by Total, became famous for bribing foreign leaders, although [Claimant] *was not among those identified by the 2003 Elf investigation and trial in France*." (Id. (emphasis added).)<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| **NGUEMA ENGAGED IN COMMERCIAL ACTIVITIES RELATING TO HIS OFFICIAL DUTIES AND JURISDICTION IN VIOLATION OF EG'S ANTI-CORRUPTION LAWS** | |
| 42.    In 2006, Nguema filed an affidavit with the Cape Town High Court in South Africa. | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the |

---

[76]   *See* Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 53[77] at DOJ_557-560, 569-571 | evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 43.    In that affidavit, Nguema acknowledged that he, while serving as a cabinet minister, bids on and benefits from obtaining government infrastructure contracts in EG. That affidavit stated:<br><br>Cabinet Ministers and public servants in Equatorial Guinea are by law allowed to [own] companies that, in consortium with a foreign company, can bid for government contracts and should the company be successful, then what percentage of the total cost of the contract the company gets, will depend on the terms negotiated between the parties.<br><br>But, in any event, it means that a cabinet minister ends up with a sizeable part of the contract price in his bank account. | **Undisputed that the government possessed this affidavit.**<br><br>**Disputed that the government has accurately characterized the document.**<br><br>The affidavit speaks for itself and the government's preamble, including the reference to infrastructure contracts in E.G., is not included in the document.<br><br>The evidence cited by the government notes that such conduct is legal in EG. (Ex. 53; see also Graf Decl., Ex. 15 at DOJ_000585-86).<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific |

[77]    *See* Manzanares Decl., ¶ 58.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| *       *        * <br><br> One of the companies that I own is SOCIEDAD DE CARRETERAS DE GUINEA ECUATORIAL ("SOCAGE"), with a bank account at the CCEI BANK GE, in BATA, the commercial capital of [EG]. <br><br> **Government's Evidentiary Support:** <br><br> Manzanares Decl., Ex. 53[78] at DOJ_569-570 | Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 44.    Similarly, in 2009, Nguema told a U.S. diplomat that his timber firm, which he still owns, worked with a Malaysian timber company to deploy 40 teams of well-equipped lumberjacks to "clear cut" a "large tract of pristine continental jungle" that was "granted" to him by the EG Government. As a result of these operations, Nguema purportedly earned a "large windfall" by exporting this raw timber to Asia. <br><br> **Government's Evidentiary Support:** <br><br> Graf Decl., Ex. 15[79] at DOJ_586 | **Disputed But Immaterial.** <br><br> Disputed to the extent that such conduct is legal in EG and the Government fails to note the context of the quotation. The State Department cable states that "[Nguema] explains that during the time of the 'skinny cows,' the government 'granted' him a concession to lumber a large tract of pristine continental jungle." (Graf. Decl., Ex. 15 at DOJ_0000586). <br><br> The cable further states that this activity was lawful at the time, and that a new law was passed to restrict this type of harvesting after this event. (Ex. 15 at DOJ 586). <br><br> Neither this alleged fact, nor the |

---

[78] *See* Manzanares Decl., ¶ 58.
[79] *See* Graf Decl., ¶ 21.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 45.    Indeed, according to Global Witness, a non-governmental organization, Nguema "collected cash" from timber companies in exchange for allowing them to engage in logging operations in EG<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 16[80] at DOJ_1058 | **Undisputed that the cited document makes this statement.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>This factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Further, the government has failed to corroborate the allegations attributed to, or the reliability of, this unidentifiable alleged "former intelligence official." |

[80]    See Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | See, e.g., TR at 11, n.9.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 46.    In 2011, Nguema changed his story yet again. This time Nguema claimed to Ambassador Alberto Fernandez, the United States' then Ambassador to EG, that his personal wealth was derived from government infrastructure contracts.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 14[81] at DOJ_590-591 | **Disputed But Immaterial.**<br><br>Claimant has not provided "inconsistent stories;" as the government's own evidence plainly shows.  Rather, on separate occasions, Claimant denied that he engaged in corruption and that his business interests were legitimate.   In neither instance was Claimant asked for an exhaustive list as to the sources of his wealth.  See Reply Memo at 18.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as |

[81]    See Graf Decl., ¶ 20.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

## IN ADDITION TO ITALY, NGUEMA IS ALSO THE SUBJECT OF AN INVESTIGATION IN FRANCE

| | |
|---|---|
| 47.    Nguema is the subject of a criminal investigation in France.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[82] at SENATE-PSI 124611-124612; Ex. 32[83] at DOJ_452<br><br>Graf Decl., Ex. 16[84] at DOJ_1061-1062 | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 48.    In March 2007, three French NGOs—Sherpa, Serpie, and the Federation of the Congolese Diaspora— | **Undisputed But Immaterial.**<br><br>The allegations by these NGOs are not |

---

[82]   *See* Manzanares Decl., ¶ 4.
[83]   *See* Manzanares Decl., ¶ 37.
[84]   *See* Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| filed a criminal complaint with French prosecutors, alleging that Nguema's family acquired substantial assets with stolen public monies.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[85] at SENATE-PSI 124611-124612<br><br>Graf Decl., Ex. 16[86] at DOJ_1061-1062 | evidence and the government has not identified any evidence which would support their claims.<br><br>Further, the government does not identify any effort it made to demonstrate that these NGOs are reliable or that it otherwise corroborated their claims.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  <u>See</u> Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 49.    On July 9, 2008, Transparency International France, a French NGO, also filed a criminal complaint with French prosecutors requesting that they | **Undisputed But Immaterial.**<br><br>The allegations by these NGOs are not evidence and the government has not |

---

[85]    *See* Manzanares Decl., ¶ 4.
[86]    *See* Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| investigate whether Nguema's family used stolen public monies from EG to acquire assets in France.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[87] at SENATE-PSI 124611-124612<br><br>Graf Decl., Ex. 16[88] at DOJ_1061-1062 | identified any evidence which would support their claims.<br><br>Further, the government does not identify any effort it made to demonstrate that these NGOs are reliable or that it otherwise corroborated their claims. The State Department warned the government on two separate occasions about the unreliability of NGOs. See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 50.     According to French court documents filed on June 2007, an investigation by French police "confirmed most of the allegations" in the criminal complaint | **Disputed But Immaterial.**<br><br>The evidence cited by the government does not support the alleged fact that the French police confirmed the |

[87]   See Manzanares Decl., ¶ 4.
[88]   See Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[89] at SENATE-PSI 124611 | allegations in the complaint.[90]<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 51.     United States law enforcement authorities met with the French Judicial Police in September 2007 to discuss the | **Undisputed But Immaterial.** |

---

[89]   *See* Manzanares Decl., ¶ 4.

[90]   The government attempts to mislead this court by suggesting that Claimant was the subject of a French criminal investigation and that "French police 'confirmed most of the allegations' in the criminal complaint."  However, the evidence reveals no such thing.  The PSI simply notes that three NGOs filed a lawsuit (in France) claiming that the ruling families of several African states had allegedly amassed millions of dollars worth of properties in France "that could not be the fruits of their official salaries . . . but would have likely required the use of stolen public assets."  (Ex. 2 at -124611.)  Later, the NGOs filed a legal memorandum in which *the NGOs claimed* that the French police had corroborated most of the allegations and uncovered additional luxury assets.  Thus, contrary to the government's suggestion, there is no evidence that the French police confirmed any of the NGOs claims.  Rather, the NGOs filed a brief which contained that self-serving statement.  Significantly, the PSI did not identify a single document from the French Police stating that they had corroborated the NGOs claims or otherwise establishing that those assets were the proceeds of foreign corruption.  Ex. 2 PSI at 124611 n.78.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| French investigation.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 101 | The government does not identify any of the evidence underlying the French investigation.  The mere existence of the investigation without more does not support probable cause.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 52.   Since that time, United States law enforcement authorities have continued to have communications with French law enforcement authorities regarding their investigation, including on March 19, 2011, when an ICE representative met with the head of the French National Police's money laundering unit. France's criminal investigation of Nguema remains active. | **Undisputed But Immaterial.**<br><br>The government does not identify any of the evidence underlying the French investigation.  The mere existence of the investigation without more does not support probable cause.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 32[91] at DOJ_452 | Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 53.     Based upon these investigations, the United States Senate Permanent Subcommittee on Investigations (PSI) concluded in their 2010 report "Keeping Foreign Corruption Out of the United States: Four Case Histories," that "substantial public concerns [exist] about the Obiang family in general and [Nguema] in particular, and suggest that the funds in their possession should be viewed as suspect"<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[92] at SENATE-PSI-124614 | **Undisputed that the cited document makes this statement.**<br><br>**Disputed to the extent this is a conclusion and not a fact.**<br><br>**Immaterial.**<br><br>Claimants do not dispute that the government possessed the cited document at the time it instituted this action, and that the document makes this conclusion based on foreign complaints and press articles.<br><br>However, this alleged fact is a conclusion and not a fact.  Moreover, the government fails to cite the underlying evidence upon which this conclusion was allegedly based.<br><br>Neither this alleged fact, nor the evidence cited, support the |

---

[91]   *See* Manzanares Decl., ¶ 37.
[92]   *See* Manzanares Decl., ¶ 4.

-53-

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

## NGUEMA USED STATE FUNDS TO RENOVATE SOUTH AFRICAN HOME

| | |
|---|---|
| 54.    In South Africa, George Ehlers, a South African businessman, filed a lawsuit in the Cape Town High Court against the EG Government.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[93] at Senate-PSI-124610; Ex. 53 at DOJ_557-559; Ex. 1 at 65-67 | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 55.    In that litigation which was filed in or around July 2005, less than one year prior to Nguema's acquisition of | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim |

---

[93]    *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Sweetwater, Ehlers alleged that EG's Infrastructure Ministry, which Nguema supervised as its Minister, was in breach of a $7.8 million government infrastructure contract with his company, Engineering Design and Construction Company<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[94] at Senate-PSI-124610; Ex. 1 at 65-67 | quotation from Exhibit 1, the government's own interrogatory responses.  <u>See</u> n.53.<br><br>Further, the government has cited no evidence for the alleged fact that Claimant served as "EG's Infrastructure Minister," nor the dates during which such service allegedly occurred that would correspond with the South Africa allegations.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 56.    Nguema owned two "luxury" homes in Cape Town that was worth in or around $7 million<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[95] at Senate-PSI- | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, |

---

[94]   *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 124610; Ex. 53[96] at DOJ_560<br><br>Graf Decl., Ex. 16[97] at DOJ_1062 | the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 57.    Ehlers alleged that Nguema used funds misappropriated from the EG Government to acquire and renovate these properties.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[98] at Senate-PSI-124610 | **Undisputed that the government possessed the cited document.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>Ehlers's allegations in unrelated litigation before a South African tribunal is not evidence.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance |

---

[95]    *See* Manzanares Decl., ¶ 4.
[96]    *See* Manzanares Decl., ¶ 58.
[97]    *See* Graf Decl., ¶ 22.
[98]    *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 58.    The funds used to purchase these properties were wired into South Africa in 2004 from an account at CCEI Bank in EG held in the name of SOCAGE.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[99] at Senate-PSI-124610; Ex. 53[100] at DOJ_571 | **Undisputed But Immaterial.**<br><br>Undisputed to the extent Exhibit 53, which appears to be the affidavit of Nguema submitted in conjunction with a court proceeding in South Africa, states that Nguema, under the laws of EG, legally owned Sociedad de Carreteras de Guinea Ecuatorial ("Socage") and that funds from a Socage account at CCEI Bank were transferred to the account of William Inglis Inc. with the Standard Bank of South Africa.  (Manzanares, Ex. 53 at 7-8).<br><br>However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

[99]    *See* Manzanares Decl., ¶ 4.
[100]    *See* Manzanares Decl., ¶ 58.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 59.  In support of his lawsuit, Ehlers filed an affidavit executed by Patricia Fuller. Ms. Fuller recalled that she spoke with Peter McNamara, a contractor hired to renovate Nguema's property in Constantia<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 52[101] at 1902-1904 | **Undisputed But Immaterial.**<br><br>Undisputed that the government had this document at the time it instituted the action.<br><br>However, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

---

[101]  *See* Manzanares Decl., ¶ 57.

-58-
CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| McNamara advised Ms. Fuller that he had never heard of Nguema and that he was communicating with the EG Government directly about how to renovate the property. Furthermore, McNamara claimed that he was under the impression that the property belonged to the EG Government<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 65-67; Ex. 52[102] at 1903-1904 | **Undisputed that the cited document makes this statement.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>This factual allegation is not based on reliable evidence and the government has not corroborated the source of this information.  Even if it had done so, the subjective belief of contractors working on a house in South Africa is insufficient to support probable cause that the Defendant Assets were the proceeds of specified unlawful activity.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 60.     McNamara submitted an invoice for in or around R 3,144,524 (approximately | **Disputed But Immaterial.** |

---

[102]   *See* Manzanares Decl., ¶ 57.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| $359,532) to Jacques Levy, an interior decorator in Switzerland, for his services relating to Nguema's house in Constantia. As McNamara had no knowledge of Nguema, and was receiving his instructions from the EG Government regarding the home's renovations, Ehlers alleged that the funds used to acquire and renovate these properties were misappropriated from the EG Government. Although Ehlers prevailed against Nguema before the trial court, an appellate court reversed that decision on other grounds.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 65-67 | This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, Ehlers uncorroborated and unproven allegations are not evidence, but rather nothing more than his own speculation.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

**NGUEMA'S ACQUISITION OF MORE THAN $100 MILLION IN NET WORTH WHILE EARNING LESS THAN $100,000 PER YEAR AS A PUBLIC OFFICIAL**

| | |
|---|---|
| 61.     During a period of three months in 2006, Nguema spent $68 million on two assets in the United States: the $30 million Sweetwater Property and a $38 million Gulfstream G-V jet aircraft, an amount equivalent to more than 6,800 times his annual official income. | **Undisputed But Immaterial.**<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant acquired these assets and that his salary as a government official was reportedly less than $100,000. |

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[103] at Senate-PSI-124601- 124602; Ex. 3[104] at DOJ_ 171; Ex. 42[105] at DOJ_219; Ex. 43[106] at DOJ_213; Ex. 43 at DOJ_216<br><br>Graf Decl., Ex. 16[107] at DOJ_1064 | However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |

---

[103]   *See* Manzanares Decl., ¶ 4.
[104]   *See* Manzanares Decl., ¶ 5.
[105]   *See* Manzanares Decl., ¶ 47.
[106]   *See* Manzanares Decl., ¶ 48.
[107]   *See* Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 62.     In addition, Nguema acquired 26 luxury automobiles and motorcycles valued at in or around $12 million, including a 2006 Aston Martin, five Bentley automobiles, two Bugatti Veyron vehicles, seven Ferrari sports cars, a Lamborghini, a Maserati, two Mercedes automobiles, a Porsche Carrera GT, four Rolls Royces, five Harley-Davidson motorcycles, and two Toiks Choppers<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 41[108] at DOJ_238-239; Ex. 42 at DOJ_219-223; Ex. 55 at DOJ_179-80 | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Moreover, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the defendant assets. |
| 63.     Similarly, in 2004, Nguema spent more than $80 million (more than 880 times Nguema's official annual income) to acquire his Parisian home on Avenue Foch valued at approximately $80 million (worth more than 800 times his public salary).<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 18; Ex. 2[109] at SENATE-PSI-124611-124612 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  The cited documentary evidence does not support the alleged fact.<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that |

---

[108]  *See* Manzanares Decl., ¶ 46.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Claimant's salary as a government official was reportedly less than $100,000, but Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586). |
| | Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| | Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 64.     In 2001, Nguema acquired a $6 million home in Bel Air, California (worth | **Undisputed But Immaterial.** |

---

[109]   *See* Manzanares Decl., ¶ 4.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| more than 60 times Nguema's public salary)<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[110] at SENATE-PSI-124683 | Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant acquired these assets and that his salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.  (See Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are irrelevant to a determination of |

---

[110]   *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | probable cause to forfeit the Defendant Assets. |
| 65.    Nguema acquired two 50-foot racing boats for over $2 million in 2005 (worth more than 20 times Nguema's annual public salary)<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 42[111] at DOJ_219; Ex. 55[112] at DOJ_180 | **Undisputed But Immaterial.**<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant acquired these assets and that his salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance |

---

[111]   _See_ Manzanares Decl., ¶ 47.
[112]   _See_ Manzanares Decl., ¶ 60.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 66.    Nguema spent $2,270,187.50 on various Michael Jackson memorabilia in 2010 (worth more than 22 times Nguema's annual public salary)<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 11-12; Ex. 40[113] at DOJ_6350, 3838, 3840 | **Undisputed But Immaterial.**<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant acquired these assets and that his salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, |

[113]    *See* Manzanares Decl., ¶ 45.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 67.    Nguema spent $494,700 on additional Michael Jackson memorabilia in 2011 (worth nearly 5 times Nguema's annual public salary)<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 11-12 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant's salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.  (See |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 68.    Between May and September 2009, Nguema wired $609,300 to Yachtzoo, a company in Ft. Lauderdale, Florida, in connection with a luxury yacht rental (the equivalent of more than six times his public salary)<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 14 | **<u>Disputed But Immaterial.</u>**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  <u>See</u> n.53.  No supporting documentation is cited.<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant's salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586). |
| | Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| | Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 69.     Similarly, during the Christmas holiday in 2005, Nguema spent in or around $600,000 to rent a luxury yacht called the Tatoosh (the equivalent of six times his public salary) | **Undisputed But Immaterial.** |
| | Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant reportedly rented a yacht and that his salary as a government official |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[114] at Senate-PSI-124607, fn. 63 | was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 70.     In South Africa, Nguema purchased two pieces of real estate for approximately | **Undisputed But Immaterial.** |

---

[114]  *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| $7.8 million (more than 70 times his annual public salary).<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[115] at Senate-PSI-124610<br><br>Graf Decl., Ex. 16[116] at DOJ_ 1062 | Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant acquired these assets and that his salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586).<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are |

---

[115] *See* Manzanares Decl., ¶ 4.
[116] *See* Graf Decl., ¶ 22.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 71.    Nguema purchased luxury vehicles in South Africa, including two Bentley automobiles for approximately $970,000 and a white 2005 6-litre Lamborghini Murcielago for approximately $440,000. <br><br>**Government's Evidentiary Support:** <br><br>Manzanares Decl., Ex. 2[117] at Senate-PSI-124607, fn. 63 | **Undisputed But Immaterial.** <br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant acquired these assets and that his salary as a government official was reportedly less than $100,000. <br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586). <br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance |

---

[117]    *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets. |
| 72.   On or about March 12, 2009, the City of London Police Economic Crimes Division informed the United States that Nguema was attempting to open a bank account in the United Kingdom. The bank account, according to the City of London Police, was to receive and hold $350 million. These funds were expected to be transferred from an account in Spain, that was opened by a third-party nominee of Nguema. The City of London Police also reported that these funds were purportedly obtained through illegal means.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 15 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the funds and bank account identified in this alleged fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets.<br><br>Moreover, Nguema's spending habits |

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | are irrelevant to a determination of probable cause to forfeit the defendant assets. |
| 73.    In or around June 2008, Nguema retained Kusch Yacht Projekte GmbH Am Hafen (Kusch) in Germany to design and build a $380 million yacht (equivalent to more than 380 times his public salary). Nguema paid the company €200,000 in three segments on July 30, 2008; October 2, 2008; and October 31, 2008, for work completed in relation to the pre-design of this yacht.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 15-16 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that Claimant's salary as a government official was reportedly less than $100,000.<br><br>However, Claimants object to the government's characterization of this evidence to the extent the government alleges this represents the entirety of his earnings.  Significantly, the government fails to acknowledge that Claimant had other undisputed sources of substantial, legitimate income, including, for example, his timber concessions.   (See Graf Ex. 15 at DOJ_0000586).<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific |

-74-

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| **NGUEMA'S FORMATION OF MULTIPLE SHELL COMPANIES TO OPEN BANK ACCOUNTS AT AMERICAN FINANCIAL INSTITUTIONS** | |
| 74.    As far back as March 2004, Nguema formed a company called TNO Entertainment to open bank accounts at Riggs National Bank (Riggs) and City National Bank. TNO Entertainment was formed in California and listed Adam Siegler as its registered agent.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[118] at SENATE-PSI-124649-124650; Ex. 42[119] at DOJ_223 | **Disputed But Immaterial.**<br><br>The government's cited evidence does not support the alleged fact that this company was formed for the express purpose "to open bank accounts" at these institutions.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds |

---

[118]   *See* Manzanares Decl., ¶ 4.
[119]   *See* Manzanares Decl., ¶ 47.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | from which the Defendant Assets could be derived.<br><br>Significantly, the bank account and entity identified in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks to forfeit. |
| 75.    Also, in 2004, Nguema used Beautiful Vision, Inc., another shell company, to open bank accounts at Bank of America (BOA). Beautiful Vision did not engage in legitimate economic or commercial activity of any kind. Its only function was to conceal Nguema's association with this account from BOA. Beautiful Vision, Inc. was formed in California and listed Berger as its registered agent. Between November 1, 2004, and November 2005, at least $1 million in funds originating from EG were funneled into Beautiful Vision's accounts at BOA.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[120] at SENATE-PSI-124615-124616; 124626-124629; Ex. 42[121] at DOJ_224; Ex. 43[122] at DOJ_214-215 | **Disputed But Immaterial.**<br><br>The cited documents do not state that Beautiful Vision, Inc. did not engage in legitimate economic or commercial activity.  Indeed, the documents state that the accounts in the name of this entity were used to pay certain bills and expenses.<br><br>Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise |

---

[120]   *See* Manzanares Decl., ¶ 4.
[121]   *See* Manzanares Decl., ¶ 47.
[122]   *See* Manzanares Decl., ¶ 48.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| | Significantly, the bank account and entity identified in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks to forfeit. |
| 76.    Nguema formed Sweet Pink, Inc. in 2005 and used it to open a bank account at Union Bank of California (UBOC) in September 2005. Sweet Pink was incorporated in California and listed Nagler as its registered agent. Sweet Pink engaged in no economic or commercial activity of any kind. Its only function was to conceal Nguema's association with this account from UBOC. Nguema wired $29,947.50 into Sweet Pink's account from an EG bank account in the name of Somagui in or around October 19, 2005.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2 at SENATE-PSI-124620-124621; Ex. 42[123] at DOJ_224; Ex. 43[124] at DOJ_213-214; Ex. 62[125] at Senate-PSI-120253-120254 | **Disputed But Immaterial.**<br><br>The cited documents do not state that Sweet Pink, Inc. did not engage in legitimate economic or commercial activity.  Indeed, the documents state that this entity was used to "handle payroll and other matters related to the employment of those individuals."  (Ex. 62 at -120253.)<br><br>Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific |

---

[123]   *See* Manzanares Decl., ¶ 47.
[124]   *See* Manzanares Decl., ¶ 48.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the bank account and entity identified in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks to forfeit. |
| 77.   In 2005, Christine Nguyen, Nagler's assistant, filed a false application with the Internal Revenue Service (IRS) to obtain a tax identification number (TIN) for Sweet Pink, Inc. In so doing, she identified herself as the company's principal officer, general partner, grantor, owner, or trustor.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 47. | **Immaterial.**<br><br>This allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Further, this alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had |

---

[125]   *See* Manzanares Decl., ¶ 67.

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 78.    Indeed, contrary to the false representations on the IRS application, when faced with a Congressional subpoena, Nagler explained in written responses provided to the staff of the Senate Permanent Subcommittee on Investigations (PSI), that Nguema—not Nguyen— was Sweet Pink's "sole owner."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 62[126] at Senate-PSI-120253-120254 | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

---

[126]   *See* Manzanares Decl., ¶ 67.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 79.     Nguema formed Sweetwater Management, Inc., in 2006 and used it to open three bank accounts at California National Bank in 2006. Sweetwater Management, Inc. was incorporated in California and listed Nagler as its registered agent. Sweetwater Management did not engage in any economic or commercial activity. Its only function was to conceal Nguema's association with this account from an American financial institution. This shell company was used to hire personnel to care for Sweetwater's maintenance and upkeep and to open an account, whose funds would be used for the maintenance and upkeep of Sweetwater.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[127] at SENATE-PSI-124644-124648; Ex. 42[128] at DOJ_223; Ex. 43[129] at DOJ_215; Ex. 62[130] at Senate-PSI-120252-120253. | **Disputed But Immaterial.**<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that this entity was incorporated in California and listed Nagler as its registered agent, but the cited evidence does not support the alleged fact, which is a legal conclusion and an improper characterization of the evidence.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

---

[127]  *See* Manzanares Decl., ¶ 4.
[128]  *See* Manzanares Decl., ¶ 47.
[129]  *See* Manzanares Decl., ¶ 48.
[130]  *See* Manzanares Decl., ¶ 67.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Significantly, the bank account and entity identified in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks to forfeit. |
| 80.     On or about May 23, 2006, Melinda DeHaven, Nguema's personal assistant, filed a false TIN application with the IRS for Sweetwater Management, Inc., claiming that she was the company's principal officer, general partner, grantor, owner, or trustor.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 47 | **Immaterial.**<br><br>This allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Further, this alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Unnumbered Fact.[131]  In response to a Congressional subpoena, Nagler explained in written responses provided to the PSI staff, that Nguema—not DeHaven—served as the corporation's "sole director, President, Secretary and Chief Financial Officer." The funds wired to this shell company's account at California National Bank were used for the maintenance and upkeep of Sweetwater.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 62[132] at Senate-PSI-120252-120253 | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Further, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the bank account and entity referenced in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks |

---

[131] This alleged fact was not numbered in the government's statement of facts.

[132] *See* Manzanares Decl., ¶ 67.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | to forfeit. |
| 81.    Between 2006 and 2008, Nguema formed and used Unlimited Horizon, Inc. to open bank accounts. Unlimited Horizon is incorporated in California and lists Berger as its registered agent. Unlimited Horizon did not engage in any economic or commercial activity. Its only function was to conceal Nguema's association with this account from American financial institutions. It also served as a receptacle for Nguema and Michael Berger to funnel money through layered transactions.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[133] at SENATE-PSI-124616; Ex. 2 at SENATE-PSI-124621-124624; Ex. 42[134] at DOJ_223; Ex. 43[135] at DOJ_213-214; Ex. 44[136] at DOJ_253-256 | **Disputed But Immaterial.**<br><br>Claimants do not dispute that the government possessed evidence at the time it instituted this action that this entity was incorporated in California and listed Berger as its registered agent, but the cited evidence does not support the alleged fact, which is a legal conclusion and an improper characterization of the evidence.<br><br>Moreover, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Further, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could |

---

[133]   *See* Manzanares Decl., ¶ 4.
[134]   *See* Manzanares Decl., ¶ 47.
[135]   *See* Manzanares Decl., ¶ 48.
[136]   *See* Manzanares Decl., ¶ 49.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | be derived.<br><br>Significantly, the bank account and entity referenced in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks to forfeit. |
| 82.     Unlimited Horizon's Commercial Capital Bank account received the following three wires from EG: (i) a wire for $19,946.25 from Somagui on or about February 16, 2006; (ii) a wire for $49,945 from Somagui on or about March 23, 2006; and (iii) a wire for $39,944.81 from SOCAGE on or about June 16, 2006.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 41-42 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Moreover, Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 83.     Between November 24, 2006 and June 6, 2007, Unlimited Horizon's UBOC | **Immaterial.** |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| account was the ultimate destination of eight wires from Nguema, which were funneled through accounts controlled by Berger at UBOC and Somagui at CCEI Bank in EG, amounting cumulatively to approximately $1,599,419<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[137] at SENATE-PSI-124619-124620; Ex. 2 at SENATE-PSI-124621-124624; Ex. 43[138] at DOJ_213; Ex. 44[139] at DOJ_253 | Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 84.    A special agent of U.S. Customs and Immigration (ICE) analyzed documents from UBOC and concluded that, "Analysis of the records provided by UBOC indicates that the UBOC accounts held by Michael Berger and [UH], have the appearance of being opened and utilized for the transfer, concealment, layering, integration and ultimate use of [Nguema's] funds from [EG]." | **Undisputed But Immaterial.**<br><br>Claimants do not dispute that the government possessed the cited document at the time it instituted this action that the agent-author made the statement quoted in Fact No. 84, although the government does not cite or attach the actual evidentiary record allegedly analyzed from which the conclusions are drawn. |

---

[137]  *See* Manzanares Decl., ¶ 4.
[138]  *See* Manzanares Decl., ¶ 48.
[139]  *See* Manzanares Decl., ¶ 49.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 44[140] at 253 | Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 85.  Between July 27, 2007, and November 6, 2007, Nguema funneled over $1 million from EG through Berger's client trust account at BOA to Unlimited Horizon's account at Citibank. These funds were used for the maintenance and upkeep of Sweetwater.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 41-42; Ex. 2[141] at SENATE-PSI-124635-124638; Ex. 45[142] at DOJ_287-288; Ex. 46[143] at DOJ_292-294 | **Immaterial.**<br><br>Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified |

---

[140]   *See* Manzanares Decl., ¶ 49.
[141]   *See* Manzanares Decl., ¶ 4.
[142]   *See* Manzanares Decl., ¶ 50.
[143]   *See* Manzanares Decl., ¶ 51.

-86-

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 86.    In opening a bank account for Unlimited Horizon at Citibank in 2007, Berger claimed falsely to the bank that there were no "signer/owners (owning 25% or more)" who were not U.S. Citizens.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[144] at SENATE-PSI-124988 | **Immaterial.**<br><br>This allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the bank account and entity referenced in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks to forfeit. |

---

[144]   *See* Manzanares Decl., ¶ 4.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 87.    Similarly, in opening this Citibank account, Berger also misled the bank into believing that the account was not owned by a "Senior Public Figure (SPF)" or a "close associate/family member of an SPF"<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[145] at SENATE-PSI-124988 | **Immaterial.**<br><br>This allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the bank account and entity referenced in this fact are not alleged to have been used in connection with the acquisition of the named Defendant Assets the government seeks to forfeit. |
| **NGUEMA'S DECEPTIVE USE OF SHELL COMPANIES AND NOMINEES TO ACQUIRE AND MAINTAIN SWEETWATER** | |
| 88.    Nguema used a shell company called Sweetwater Malibu LLC (the LLC) | **Undisputed But Immaterial.** |

---

[145]   *See* Manzanares Decl., ¶ 4.

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| to acquire title to Sweetwater in 2006.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[146] at SENATE-PSI-124642-124644; Ex. 62[147] at Senate-PSI-120252<br><br>Graf Decl., Ex. 16[148] at DOJ_1063 | The fact Claimant took title in the name of an LLC is a "commonplace financial arrangement."  See ECF Doc. No. 47 at 6.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 89.   In obtaining a TIN for the LLC, Christine Nguyen, an employee of George Nagler, falsely identified herself to IRS as the LLC's principal officer, general partner, grantor, owner, or trustor.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 37[149], Box 7a, at Senate-PSI-94082 | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific |

---

[146]   *See* Manzanares Decl., ¶ 4.
[147]   *See* Manzanares Decl., ¶ 67.
[148]   *See* Graf Decl., ¶ 22.
[149]   *See* Manzanares Decl., ¶ 42.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 90.     In addition, Nguyen claimed falsely to the IRS that the LLC was a single member LLC and that she—rather than Nguema—was its sole member. The IRS confirmed to Nguyen in a letter addressed to her as:<br><br>SWEETWATER MALIBU LLC<br>CHRISTINE NGUYEN SOLE MBR<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 36[150] at Senate-PSI-85847 | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 91.     The LLC's articles of organization, | **Undisputed But Immaterial.** |

---

[150]   *See* Manzanares Decl., ¶ 41.

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| which were filed with the California Secretary of State on February 8, 2006, make no reference to Nguema anywhere in the document. Instead, Nagler is listed as the company's initial agent for service of process and an unrelated nominee signed the document as the company's purported "organizer." **Government's Evidentiary Support:** Manzanares Decl., Ex. 2[151] at Senate-PSI-124643; Ex. 34[152] at Senate-PSI-85865 | Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. Further, the government's citation to the document is incomplete. The document also states that after the filing of the articles, the Sweetwater Malibu, LLC operating agreement and the Statement of Information filed with the State of California identified Nguema as the sole member and manager of the limited liability corporation. See Ex. at Senate-PSI-00124643-44. |
| 92. Although the LLC was required under California law to file a Statement of Information disclosing publicly the name and address of its manager, the type of business it engages in, and the name and address of its chief executive officer, by May 7, 2006, no such statement was filed. Sweetwater Malibu did not disclose such | **Undisputed But Immaterial.** Claimants do not dispute that the government had evidence at the time it instituted the action that Claimants caused a Statement of Information to filed on or around September 25, 2006, which identified Nguema as the sole |

[151] *See* Manzanares Decl., ¶ 4.
[152] *See* Manzanares Decl., ¶ 39.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| information until September 25, 2006, after the transaction to purchase Sweetwater.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[153] at SENATE-PSI-124643-124644 | manager of the LLC, and that the Statement of Information was not required to be filed until after the date of close of escrow on the Defendant Real Property.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 93.    Nguema required his realtor Neal Baddin to enter into a confidentiality agreement, whereby Baddin was barred from discussing or disclosing Nguema's identity or details relating to the Sweetwater transaction to any third party.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[154] at Senate-PSI-124676-124677; 125021-125026 | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance |

---

[153]   *See* Manzanares Decl., ¶ 4.
[154]   *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 94.    In or around April 3, 2006, George Nagler, recommended that Nguema ask that the title company draft the deed so as to hide Nguema's connection with the transaction. Nagler advised Nguema to instruct the title company to "show [Nagler's] office address so that there is no tie in with [Nguema's current residential] address." Nagler reminded Nguema that, "The deed is a public document. The other closing documents should [also] go to my address."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 61[155] at Senate-PSI-100211 | **Undisputed But Immaterial.**<br><br>The fact Claimant took title in the name of an LLC is a "commonplace financial arrangement."  See ECF Doc. No. 47 at 6.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 95.    In or around April 4, 2006, Nguema responded to, and explicitly approved, Nagler's recommendation that Sweetwater's deed list Nagler's office address (rather than his own). Nguema signed the letter in his own handwriting and returned a copy to Nagler. | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>The fact Claimant took title in the name |

---

[155]   *See* Manzanares Decl., ¶ 66.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 10 | of an LLC is a "commonplace financial arrangement." <u>See</u> ECF Doc. No. 47 at 6.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| **NGUEMA'S DECEPTIVE USE OF ALIAS AND NOMINEES TO ACQUIRE MICHAEL JACKSON MEMORABILIA** | |
| 96.    In August 2010, Nguema used an intermediary to register and bid in a live auction of celebrity memorabilia (called the "Legends" auction), including various items of Michael Jackson memorabilia, taking place on October 9, 2010, in Macau, China (October 8, 2010, in California). The intermediary advised the auction house by email to "Please make sure that [Nguema's] name does not appear anywhere, he should be invisible," and to "please make sure that where a name needs to be, my name is there. This is very important."<br><br>**Government's Evidentiary Support:** | **<u>Undisputed that the government possessed the cited documents, but Immaterial.</u>**<br><br>Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Manzanares Decl., Ex. 38[156] at DOJ_3584; Ex. 64[157] at DOJ_3534 | to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 97.    At the "Legends" auction, the intermediary bid on various auction items by telephone from Los Angeles, for Nguema, and was the winning bidder on numerous items of Michael Jackson memorabilia. The auction house's invoice lists "Amadeo Oluy," Nguema's alias, as the purchase. The invoice was for $1,398,062.50 in purchases.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 40[158] at DOJ_6350 | **Disputed But Immaterial.**<br><br>Undisputed that the government possessed the cited document, but disputed to the extent the cited document does not support the alleged fact that "Amadeo Oluy" is Claimant's alias.<br><br>Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds |

---

[156]   *See* Manzanares Decl., ¶ 43.
[157]   *See* Manzanares Decl., ¶ 69.
[158]   *See* Manzanares Decl., ¶ 45.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | from which the Defendant Assets could be derived. |
| 98.     Indeed, one of Nguema's assistants instructed the auction house to indicate that the purchases to be billed using Nguema's alias, "Amadeo Oluy, Malabo, Guinea Equatorial."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 63[159] at DOJ_3616-3617; Ex. 65[160] at DOJ_3843 | **Disputed But Immaterial.**<br><br>Undisputed that the government possessed the cited document, but disputed to the extent the cited document does not support the alleged fact that "Amadeo Oluy" is Claimant's alias.<br><br>Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 99.     In an email to Nguema's assistant, an employee of the auction house | **Undisputed But Immaterial.** |

---

[159]  *See* Manzanares Decl., ¶ 68.
[160]  *See* Manzanares Decl., ¶ 70.

-96-

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| confirmed that, "I'm trying to straighten out my 'Wanda' story." Wanda is the name of Nguema's employee, who he used as an intermediary to bid at the auction. The auction house employee confirmed specifically,<br><br>    address to be printed on invoices:<br><br>    Amadeo Oluy<br>    Malabo<br>    Guinea Equatorial<br><br>Similarly, On August 19, 2010, in response to an email from Nguema's assistant, an auction house employee e-mailed his colleague, stating: "Please make sure that his name Teodoro Nguema Obiang dos not appear anywhere on our bidding or invoice/receipt process."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 65[161] at DOJ_3843; Ex. 64[162] at DOJ_3524 | Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 100.   In or around December 2010, Nguema used his personal assistant, Wanda Kelly, as an intermediary to attend and bid at an auction of celebrity memorabilia in Beverly Hills, California. Kelly successfully bid on several of the Jackson Memorabilia, listed on SAC Attachment A-1, including the white | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited. |

[161]   *See* Manzanares Decl., ¶ 70.
[162]   *See* Manzanares Decl., ¶ 69.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| crystal-covered "Bad Tour" glove.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 11-12 | Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 101.   Again, the auction house listed Amadeo Oluy, rather than Nguema, as the purchaser of the Jackson Memorabilia.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 11-12 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  <u>See</u> n.53.  No supporting documentation is cited.<br><br>Claimant's spending habits are irrelevant to a determination of probable cause to forfeit the Defendant Assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as |

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

## NGUEMA'S INABILITY TO EXPLAIN THE SOURCES OF HIS WEALTH

| | |
|---|---|
| 104.[163]   In 2004, City National Bank (CNB) in California requested Nguema identify the source of the funds that were held in his closed CNB account in California. Nguema provided no details other than to state that they were from one of two EG companies he owned—Somagui or Grupo Sofona (Sofona). Even when CNB refused to provide Nguema with $700,000 his funds and Nguema sued in California Superior Court, Nguema was still not able to provide any details or any financial data relating to his purported commercial activities and the source of his wealth.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[164] at SENATE-PSI-124653-124654; Ex. 56[165] at CNB4068 | **Immaterial.**<br><br>The alleged facts do not provide probable cause to believe that any of these funds were the proceeds of foreign corruption, which is the only specified unlawful activity that the government pleaded when it filed the original complaint.<br><br>Further, as the government is well aware, but nevertheless has omitted telling the court, Claimant successfully obtained a judgment against CNB for the full amount of the funds that it wrongfully withheld.  See Supp. Wheeler Decl. Ex. 3, ECF Doc No. 95, at 21-22. |

---

[163]   The government's fact numbering in its statement of facts allegedly in support of probable cause skipped and omitted numbers 102 and 103.

[164]   See Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 105.   Two years later in 2006—the same year that Nguema acquired Sweetwater—McAfee and Taft (MT), an Oklahoma-based law firm and escrow agent, repeatedly asked Nguema to provide details as to the source of his income in connection with his attempt to purchase a Gulfstream aircraft for $38.5 million. For instance, on March 19, 2006, MT asked Nguema's lawyer Eric Duret to "identify [] the source of funds" for the transaction."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[166] at SENATE-PSI-125028 | **Immaterial.**<br><br>This allegation does not relate to any Defendant Assets the government seeks to forfeit in this action.  Nor does it support probable cause that Claimant engaged in any conducting constituting specified unlawful activity giving rise to forfeiture.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 106.   After Nguema failed to identify the source of the funds as requested, Nguema's representatives were advised by an MT employee on March 30, 2006, "We are approaching the end of another week, and nothing has been done by you to enable compliance with the Patriot Act. I have sent you several emails on this matter and have not even had the courtesy | **Immaterial.**<br><br>This alleged fact does not relate to any Defendant Assets the government seeks to forfeit in this action.  Nor does it support probable cause that Claimant engaged in any conducting constituting specified unlawful activity giving rise |

---

[165]   *See* Manzanares Decl., ¶ 56.
[166]   *See* Manzanares Decl., ¶ 4.

-100-

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| of a reply." <br><br> **Government's Evidentiary Support:** <br><br> Manzanares Decl., Ex. 2[167] at SENATE-PSI-125033 | to forfeiture. <br><br> Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 107.   After Nguema failed yet again to identify the source of his funds as requested by MT, another MT lawyer advised Nguema's representatives on April 7, 2006, "I just want to make sure everyone is on the same page and aware that for us to continue to hold funds I must be provided with the Patriot Act due diligence by Monday Morning . . . ." <br><br> **Government's Evidentiary Support:** <br><br> Manzanares Decl., Ex. 2[168] at SENATE-PSI-125030 | **Immaterial.** <br><br> This alleged fact does not relate to any Defendant Assets the government seeks to forfeit in this action.  Nor does it support probable cause that Claimant engaged in any conducting constituting specified unlawful activity giving rise to forfeiture. <br><br> Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – |

[167] *See* Manzanares Decl., ¶ 4.
[168] *See* Manzanares Decl., ¶ 4.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 108.   Because of Nguema's inability to identify the source of his funds, MT ultimately declined to participate in the transaction and returned all of his funds. Nguema had to utilize another escrow company's United Kingdom account in order to avoid responding to these types of inquiries in connection with the purchase of his $38.5 million Gulfstream jet.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 21 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>This alleged fact does not relate to any Defendant Assets the government seeks to forfeit in this action.  Nor does it support probable cause that Claimant engaged in any conducting constituting specified unlawful activity giving rise to forfeiture.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 109.   Three years later in 2009, U.S. Senate investigators also contacted Nguema to obtain details as to the source of his income and wealth in connection with their 2010 report on foreign corruption. Despite being promised by Nguema's attorney that this information would be provided, the PSI staff received no such information.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[169] at SENATE-PSI-124609; Ex. 1 at 21 | **Immaterial.**<br><br>This alleged fact does not relate to any Defendant Assets the government seeks to forfeit in this action.  Nor does it support probable cause that Claimant engaged in any conducting constituting specified unlawful activity giving rise to forfeiture.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Further, this alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  The documentary evidence does not support the alleged fact. |
| 110.   Indeed, in light of the fact that at the time the PSI's 2010 report was published, the PSI continued to state that | **Immaterial.**<br><br>Claimants do not dispute that the |

---

[169]   *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Nguema's funds "should be viewed as suspect" and that Nguema's family "have long been suspected of misappropriating [EG's] oil and timber wealth for personal gain," these statements suggest strongly that Nguema provided insufficient information (if any) to the PSI to substantiate the source of his wealth.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 21; Ex. 2[170] at SENATE-PSI-124609, 124614 | government had the cited document at the time it instituted the action or that the document includes the quoted conclusions in the alleged fact, but the statements in this alleged fact are conclusions of opinion and not facts.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

## NGUEMA'S INCONSISTENT RESPONSES TO INQUIRES REGARDING THE SOURCES OF HIS WEALTH

| | |
|---|---|
| 111.   In 2007, Nguema's representative Anne Morse informed Comerica Bank in Los Angeles that Nguema was unemployed and that his income was derived from trading expensive automobiles and a family inheritance. In addition, Morse falsely informed Comerica Bank that Nguema was "Not Employed" | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Neither this alleged fact, nor the evidence cited, support the |

---

[170]   *See* Manzanares Decl., ¶ 4.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 33[171] at Senate-PSI-110285, 110287 | government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the bank account referenced in the alleged fact is not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.<br><br>Moreover, this alleged fact does not support the conclusion that Claimant has provided  "inconsistent responses to inquiries regarding the sources of his wealth."  <u>See</u> Reply Memo at 18; Claimants' Supplemental Brief at 13-14; TR at 13-14. |
| 112.   Similarly, in response to the question "Ha[s] [Nguema] ever performed important public functions in a foreign state (PEP)?"<br><br>Nguema's representative answered "No" | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets. |

[171]   *See* Manzanares Decl., ¶ 38.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 33[172] at Senate-PSI-110285 | Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the bank account referenced in the alleged fact is not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.<br><br>Moreover, this alleged fact does not support the conclusion that Claimant has provided  "inconsistent responses to inquiries regarding the sources of his wealth."  See Reply Memo at 18; Claimants' Supplemental Brief at 13-14; TR at 13-14. |
| 113.   In addition, in response to the question "Are any individuals above closely associated with person(s) who perform important public functions for a | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting |

---

[172]   *See* Manzanares Decl., ¶ 38.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| foreign country (PEP)?"<br><br>Again, Nguema's representative replied "No"<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 33[173] at Senate-PSI-110285 | specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, the bank account referenced in the alleged fact is not alleged to have been used in the acquisition of, or otherwise connected to, the specific Defendant Assets the government seeks to forfeit.<br><br>Moreover, this alleged fact does not support the conclusion that Claimant has provided "inconsistent responses to inquiries regarding the sources of his wealth." See Reply Memo at 18; Claimants' Supplemental Brief at 13-14; TR at 13-14. |
| 114.   Two years later in 2009, Nguema told officials at the United States Embassy | **Disputed But Immaterial.** |

---

[173]   *See* Manzanares Decl., ¶ 38.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| (Embassy) in EG that other than his income as a public official, the source of his wealth was commercial logging operations performed by a Malaysian company in EG. In addition, Nguema stated falsely that his Sweetwater property was worth in 2009 "twice what [he] paid for it" in 2006. Indeed, no evidence exists that the Sweetwater property was ever valued at anything close to $60 million— let alone in 2009.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 15[174] at DOJ_586<br><br>Manzanares Decl., Ex. 1, at 21 | This alleged fact does not support the conclusion that Claimant has provided "inconsistent responses to inquiries regarding the sources of his wealth." Rather, the government's evidence shows that Claimant, on separate occasions, denied that he engaged in corruption and reiterated the legitimacy of his business interests.  In neither instance was Claimant asked for an exhaustive list as to the sources of his wealth.  <u>See</u> Reply Memo at 18; Claimants' Supplemental Brief at 13-14; TR at 13-14.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 115.   Two years after that in 2011, Nguema changed his explanation yet again, claiming to Ambassador Alberto Fernandez, the United States' then Ambassador to EG, that his personal | **Disputed But Immaterial.**<br><br>This alleged fact does not support the conclusion that Claimant has provided "inconsistent responses to inquiries |

---

[174]   *See* Graf Decl., ¶ 21.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| wealth was derived from government infrastructure contracts.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 14[175] at DOJ_590-591 | regarding the sources of his wealth." Rather, the government's evidence shows that Claimant, on separate occasions, denied that he engaged in corruption and reiterated the legitimacy of his business interests.  In neither instance was Claimant asked for an exhaustive list as to the sources of his wealth.  See Reply Memo at 18; Claimants' Supplemental Brief at 13-14; TR at 13-14.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| **NGUEMA'S POSSESSION AND TRANSPORT OF MILLIONS OF DOLLARS IN BULK CASH** | |
| 116.    Several former employees of Nguema reported that Nguema and/or his employees carried a bag "stuffed with stacks of fresh $100 bills" when he travelled in and out of the United States. | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory |

---

[175]    *See* Graf Decl., ¶ 20.

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 55[176] at DOJ_179; Ex. 1 at 97-98 | responses.  <u>See</u> n.53.  The documentary evidence cited by the government does not contain the quotation referenced.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, as the Court has already recognized, the government has not shown that large quantities of cash is "probative of large-scale political corruption."  TR at 14.  Accordingly, the government has offered no support for the proposition that large quantities of cash is probative of probable cause to believe these Defendant Assets are subject to forfeiture. |
| 117.   A confidential source (CS 1), who was a former employee of Nguema in California, reported that two EG nationals employed by Nguema— Emmanuel Asamoah and Charles Annan—were | **<u>Undisputed that the government possessed the cited document.</u>**<br><br>**<u>Disputed that this fact is based on reliable evidence.</u>** |

---

[176]   *See* Manzanares Decl., ¶ 60.

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| responsible for carrying a Louis Vitton briefcase. This brief case, according to CS 1, is brought into the United States with Nguema and is filled with approximately $500,000 to pay for Nguema's bills and personal expenses.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 97-98; Ex. 55[177] at DOJ_179 | **Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, as the Court has already recognized, the government has not shown that large quantities of cash is "probative of large-scale political corruption." TR at 14. Accordingly, the government has offered no support for the proposition that large quantities of cash is probative of probable cause to believe these Defendant Assets are subject to forfeiture. |
| 118.   Another confidential source (CS 2), who was also a former employee of Nguema in California, recalled that two EG nationals Joseph Otbo and Moses Hilorsi were responsible for carrying a suitcase for Nguema that contained approximately $1 million in cash. | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses. See n.53.  No supporting |

---

[177]   *See* Manzanares Decl., ¶ 60.

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Nguema does not report this currency when he enters the United States, as is required by 31 U.S.C. § 5316.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 97-98 | documentation is cited.<br><br>Further, "the Government may not claim that currency reporting violations are SUAs that gives rise to forfeiture." TR at 18 n.12.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Significantly, as the Court has already recognized, the government has not shown that large quantities of cash is "probative of large-scale political corruption."  TR at 14.  Accordingly, the government has offered no support for the proposition that large quantities of cash is probative of probable cause to believe these Defendant Assets are subject to forfeiture. |

**NGUEMA'S CORRUPT RELATIONSHIP WITH EG'S STATE-OWNED OIL COMPANY**

| | |
|---|---|
| 119.   G. E. Petrol (GEP) is EG's state-owned oil company. | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the |

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7[178], DOJ_81-82 | evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 120.   Simon Kareri was a Riggs Bank Vice President responsible for the bank's relationship with Nguema, his family and Equatorial Guinea.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 8[179], DOJ_53-55 | **Undisputed But Immaterial.**<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 121.   GEP is "run by the First Family" of EG, according to Kareri. | **Undisputed that the government possessed the cited document.** |

---

[178]   *See* Graf Decl., ¶ 12.
[179]   *See* Graf Decl., ¶ 13.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7[180], DOJ_81 | **Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>Claimants do not dispute that the government had the cited report of investigation at the time it instituted this action, nor that document claims that Mr. Kareri "*believes*" GEP "is run by the First Family."<br><br>However, Mr. Kareri's belief, which the government has failed to corroborate, is not factual evidence.<br><br>Further, the government omits significant facts that raise serious question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7. <u>See</u> n.69.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds |

---

[180]   *See* Graf Decl., ¶ 12.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| **Government's Alleged Supporting Fact** | **Claimants' Response** |
|---|---|
| | from which the Defendant Assets could be derived. |
| 122.   Nguema said to Kareri that he was GEP's "*patron*." In Spanish, the word "*patron*" means "master" or "boss."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 74-75 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Claimants do not dispute that the government had the cited report of investigation at the time it instituted this action, nor that document claims that Mr. Kareri "*believes*" GEP "is run by the First Family."<br><br>However, Mr. Kareri's belief, which the government has failed to corroborate, is not factual evidence.<br><br>Further, the government omits significant facts that raise serious question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7.  See n.69.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified |

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
|  | unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 123.   Even though Nguema "flunked high school and does not know how to do anything," according to Kareri, Nguema controlled GEP as its "*patron*".<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7[181], DOJ_82<br><br>Manzanares Decl., Ex. 1 at 74-75 | **Undisputed that the government possessed the cited document.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>Claimants do not dispute that the government had the cited report of investigation at the time it instituted this action, nor that the document indicates that Mr. Kareri may have reported this opinion of Claimant to the interviewing agent.<br><br>However, Mr. Kareri's opinion of Claimant, which the government has failed to corroborate or confirm, is not factual evidence.<br><br>Further, the government omits significant facts that raise serious question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7.  See n.69.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the |

[181]   *See* Graf Decl., ¶ 12.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 124.   Kareri stated that "the big money from the [foreign] oil companies is being paid to the First Family through joint venture projects in EG" and that corrupt payments were disbursed by GEP to "so-called oil brokers" controlled by Nguema's family.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7[182], at DOJ_85 | **Undisputed that the government possessed the cited document.**<br><br>**Disputed that this fact is based on reliable evidence.**<br><br>**Immaterial.**<br><br>Claimants do not dispute that the government had the cited report of investigation at the time it instituted this action, nor that document claims that Mr. Kareri "*believes* the big money from oil companies is being paid to the First Family. . . ."<br><br>However, Mr. Kareri's beliefs, which the government has failed to corroborate, are not factual evidence.<br><br>Further, the government omits significant facts that raise serious |

---

[182]   *See* Graf Decl., ¶ 12.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7. <u>See</u> n.69.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 125.   On one occasion, Kareri recalled that a representative of GEP requested that Riggs divert directly approximately four percent of EG's oil revenue to an account controlled by GEP. Kareri refused.<br><br>**Government's Evidentiary Support:**<br><br>Graf Decl., Ex. 7[183] at DOJ_82 | **<u>Undisputed But Immaterial.</u>**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – |

[183]   *See* Graf Decl., ¶ 12.

04579.23529/5425050.2
CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived.<br><br>Moreover, the government omits significant facts that raise serious question about the veracity and reliability of Simon Kareri, the subject of the interview described in Graf Decl. Ex. 7. <u>See</u> n.69. |
| 126.   Kareri's representations are corroborated by the fact Nguema himself represented to Gulfstream that he possessed both the ability and the intent to misappropriate public funds from the EG treasury relating to oil production. Specifically, he claimed that he could provide an American oil company with a $40 million "credit memorandum" derived from public funds to acquire a personal asset for himself.<br><br>**<u>Government's Evidentiary Support:</u>**<br><br>Graf Decl., Ex. 5[184] at DOJ_125-126; Ex. 6A[185] at DOJ_130 | **<u>Disputed But Immaterial.</u>**<br><br>The exhibits cited by the government do not support the allegation that Nguema intended to misappropriate public funds from E.G.  <u>See</u> n.54.<br><br>Nor do the exhibits cited by the government corroborate Mr. Kareri's beliefs and opinions.  In fact, the government omits significant facts that raise serious question about the veracity and reliability of Simon Kareri.  <u>See</u> n.69.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific |

[184]   *See* Graf Decl., ¶ 7.
[185]   *See* Graf Decl., ¶ 9.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 127.   Likewise, a confidential source (CI 2), who spoke with federal agents and was a former employee of Nguema in Los Angeles in or around 2006, the same year that Nguema acquired Sweetwater, recalled that Nguema told him/her that the source of his wealth was related to EG's oil resources.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl.; Ex. 1 at 76 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 128.   CI 2 was an employee of Nguema who worked at Sweetwater. Even though Nguema holds no official position within the EG Government related to the oil industry, CI 2 recalls seeing three "oil | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory |

-120-

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| officials" meet with Nguema at the Sweetwater Property during the second week of November 2006.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl.; Ex. 1 at 76 | responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

**EG GOVERNMENT IS INTERNATIONALLY RECOGNIZED AS A KLEPTOCRACY, BENEFITTING NGUEMA'S FAMILY AND ASSOCIATES**

| | |
|---|---|
| 129.   Frank Ruddy, a former United States ambassador to EG during the Reagan administration, told the <u>Los Angeles Times</u> that, "[President] Obiang is a thief and he heads a government of thieves."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 97-98 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
|  | unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 130.   Similarly, Ambassador Bennett described Equatorial Guinea as "the world's finest example of a country privatized by a kleptomaniac without a scintilla of social consciousness." <br><br> **Government's Evidentiary Support:** <br><br> Manzanares Decl., Ex. 1 at 99-100 | **Disputed But Immaterial.** <br><br> This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  <u>See</u> n.53.  No supporting documentation is cited. <br><br> Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 131.   The State Department's annual human rights reports on EG, which are published by the Bureau of Democracy, Human Rights and Labor online at http://www.state.gov/j/drl/rls/hrrpt, has commented repeatedly that public corruption, as well as the use of torture, is widespread within the EG Government. <br><br> **Government's Evidentiary Support:** | **Disputed But Immaterial.** <br><br> This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  <u>See</u> n.53.  No supporting documentation is cited. <br><br> The government references annual reports purportedly published on the Bureau of Democracy, Human Rights |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Manzanares Decl., Ex. 1 at 100 | and Labor Web site and claim that the Department has "commented" on corruption in E.G.  However, the government does not attach or cite a single such report.  The government provides the general URL for the Department Web site, but that site includes links to 14 years of reports.  As the Court explained in its tentative, such a practice by the government "does not come close to meeting its burden on summary judgment," as it is "the Government's job to explain [the evidence] to the Court."  TR at 9.  Indeed, as the Court repeatedly stated, "The Court is not required to 'scour the record' to analyze any other evidence."  Id. at 9 n.7.

Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 132.   In 2006, the same year that Nguema acquired the $30 million Sweetwater Property, the State Department concluded that "All branches of government [in EG] are dominated by President [Obiang] and | **Disputed But Immaterial.**

This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| his inner circle" and that "[o]fficial corruption in all branches of the government remained a serious problem."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 100 | responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 133.   In 2008, the State Department described how anti-corruption laws were not enforced in EG against public officials and that "[EG] officials frequently engaged in corrupt practices with impunity."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 100 | **<u>Disputed But Immaterial.</u>**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | be derived. |
| 134.   In 2009, the State Department confirmed that "[President Obiang] and members of his inner circle continued to amass huge personal profits from the oil windfall" and that EG public officials continued to "frequently engage[] in corrupt practices with impunity."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 100 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 135.   When the World Bank Institute graded corruption on a scale of 0.0 (being the most severe) to 1.0 (being the least corrupt), the World Bank noted that several organizations ranked EG as being amongst the most corrupt states in the world.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 102-103 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 136.   The Economist Intelligence Unit scored EG zero points on the World Bank's corruption scale for the years 1996, 1998, 2000, and 2002 through 2011.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 103 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 137.   The African Development Bank gave EG 0.2 points (on a scale of 0.0 to 1.0) for the years 2005 through 2010.<br><br>**Government's Evidentiary Support:** | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Manzanares Decl., Ex. 1 at 103 | documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 138.   The International Fund for Agricultural Development gave EG 0.2 points for 2004 and 0.4 points for 2010 and 2011 (on a scale of 0.0 to 1.0).<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 103 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could |

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
|  | be derived. |
| 139.   The World Meteorological Organization gave EG 0.13 points for the years 1996, 1998, 2000, 2002, 2003 and 2005; 0.21 points for 2004; and 0.25 points for the years 2006 through 2011 (on a scale of 0.0 to 1.0).<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 103 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 140.   The United Nations Special Rapporteur on the Right to Freedom of Opinion and Expression reported to the United Nations General Assembly in 2009 that "[t]he scourge of corruption and the overwhelming lack of morality affecting [public] officials" in EG impacted negatively the civil and political liberties of the EG people.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 103 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 141.   Transparency International (TI), an international NGO focusing specifically on corruption, ranked EG as the eighth most corrupt country in the world.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 103 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, this factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | be derived. |
| 142.   Human Rights Watch in 2009 explained that, "Perhaps the most brazen and troubling examples of corruption [in EG] are repeated instances involving the president's eldest son, [Nguema], whose globetrotting and extravagant lifestyle is filled with purchases of multimillion-dollar houses and exotic sports cars throughout the world." <br><br>**Government's Evidentiary Support:** <br><br> Manzanares Decl., Ex. 1 at 103-104 | **Disputed But Immaterial.** <br><br> This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited. <br><br> Further, this factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13. <br><br> Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 143.   Global Witness reported in 2009 that "When it comes to profligate public consumption by the Obiang clan, [Nguema] . . . is Exhibit A." | **Disputed But Immaterial.** <br><br> This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory |

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 104 | responses.  <u>See</u> n.53.  No supporting documentation is cited.<br><br>Further, this factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  <u>See</u> Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 144.   The Open Society Institute in 2010 concluded that, "By controlling [EG's] political, economic, and legal systems—and using that control to enrich themselves—the Nguema/Mongomo group has created a nearly perfect kleptocracy [in EG]. Rarely have so few stolen so much so brazenly."<br><br>**Government's Evidentiary Support:** | **<u>Disputed But Immaterial.</u>**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  <u>See</u> n.53.  No supporting documentation is cited.<br><br>Further, this factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

  
| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| Manzanares Decl., Ex. 1 at 104 | government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 145.   The International Bar Association in 2003 noted that "serious concerns were raised to [their delegation to EG] about the levels of corruption which is seemingly endemic in all sectors of [EG] society [] particularly with respect to the money from oil revenues."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 104 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, this factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 146.   Freedom House confirmed that "Equatorial Guinea is considered one of the most corrupt countries in the world and [President] Obiang and members of his inner circle continue to amass huge personal profits from the country's oil windfall."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 104 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, this factual allegation is based solely on the claims of an NGO that the government has not corroborated.  The State Department warned the government on two separate occasions about the unreliability of NGOs.  See Claimants' Supplemental Brief at 9-10 and Reply Memorandum at 13.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

### NGUEMA FAMILY'S CORRUPT USE OF RIGGS NATIONAL BANK

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 147.   Between 1995 and 2004, the EG Government and Nguema's family, including Nguema, maintained personal bank accounts at Riggs National Bank (Riggs) in Washington, D.C.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[186] at Senate-PSI-124607; 124610<br><br>Graf Decl., Ex. 6C[187] at DOJ_129 | **Undisputed But Immaterial.**<br><br>This alleged fact does not support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity - violations of foreign law - giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 148.   In 2004, the PSI published its report on "Money Laundering and Foreign Corruption: Enforcement and Effectiveness of the Patriot Act." In that report, the PSI staff concluded that Riggs "turned a blind eye to evidence [,] suggesting the bank was handling the proceeds of foreign corruption." | **Undisputed But Immaterial.**<br><br>This alleged fact does not support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity - violations of foreign law - giving rise to forfeiture under the statute invoked, nor |

---

[186]   *See* Manzanares Decl., ¶ 4.
[187]   *See* Graf Decl., ¶ 11.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[188] at Senate-PSI-124610 | that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 149.   Riggs Bank records show that $35 million was transferred from EG oil revenue accounts at Riggs to offshore shell companies associated with EG public officials, including President Obiang.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[189] at Senate-PSI-124610 | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 150.   Riggs Bank records also showed that large amounts of bulk cash were deposited into accounts controlled by President Obiang and Constancia Obiang, Nguema's mother. Between 2000 and | **Immaterial.**<br><br>This allegation does not relate to conduct by Claimant, nor does it allege any conduct by Claimant constituting |

---

[188]   *See* Manzanares Decl., ¶ 4.
[189]   *See* Manzanares Decl., ¶ 4.

04579.23529/5425050.2

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| 2002, nearly $13 million in cash deposits were made into these accounts<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 2[190] at Senate-PSI-124610 | specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| **PAYMENTS BY OIL COMPANIES TO NGUEMA'S FAMILY** | |
| 151.   In approximately 1998 or 1999, Mobil Oil provided a check to Nguema's mother Constancia Obiang for approximately $200,000 or $250,000 with the caption "business development."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 110 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, this allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor |

---

[190]   *See* Manzanares Decl., ¶ 4.

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 152.   In or around 2003, Marathon Oil paid Teodoro Byogo Nsue, Nguema's uncle and EG's ambassador to the United States, in or around $12,000 per month. These payments were off-the-book payments not documented in EG's public records and books.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 110 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  <u>See</u> n.53.  No supporting documentation is cited.<br><br>Further, this allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance |

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 153.   Exxon Mobil provided free shipping services for EG public officials to ship merchandise, including automobiles, from the United States to EG.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 110 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, this allegation does not allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 154.   After Exxon and Mobil merged, that company's executives met with President Obiang at the Willard Hotel in Washington, D.C. The executives provided and left a briefcase full of money with President Obiang. | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| **Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 110 | documentation is cited.<br><br>Further, this allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 155.   American oil companies paid senior EG officials for "consulting" fees. Kareri characterized these payments as "suspicious" and felt that these officials may have tried to conceal these payments by depositing the money in banks other than Riggs.<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 111 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, this allegation does not specifically relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance that in fact generated criminal proceeds from which the Defendant Assets could be derived. |
| 156.   CMS/Triton and Marathon Oil made cash payments to Constancia Obiang's relatives who were students in the United States. The company also helped these students secure housing in "fancy apartments."<br><br>**Government's Evidentiary Support:**<br><br>Manzanares Decl., Ex. 1 at 111 | **Disputed But Immaterial.**<br><br>This alleged fact is simply a verbatim quotation from Exhibit 1, the government's own interrogatory responses.  See n.53.  No supporting documentation is cited.<br><br>Further, this allegation does not relate to Claimant, nor does it allege any conduct by Claimant constituting specified unlawful activity giving rise to forfeiture of the defendant assets.<br><br>Moreover, neither this alleged fact, nor the evidence cited, support the government's burden to show it had probable cause to believe the specific Defendant Assets were forfeitable as proceeds of, or property involved in, the specified unlawful activity – violations of foreign law – giving rise to forfeiture under the statute invoked, nor that Claimant engaged in specified unlawful activity in the first instance |

CLAIMANTS' RESPONSE TO THE GOVERNMENT'S ALLEGED FACTS SUPPORTING PROBABLE CAUSE

04579.23529/5425050.2

| Government's Alleged Supporting Fact | Claimants' Response |
|---|---|
| | that in fact generated criminal proceeds from which the Defendant Assets could be derived. |

DATED:  July 31, 2013            QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                 By  /s/ Duane R. Lyons
                                    Duane R. Lyons
                                    Brian M. Wheeler
                                    Attorneys for Claimants Vice President
                                    Teodoro Nguema Obiang Mangue and
                                    Sweetwater Malibu, LLC